# EXHIBIT E

To Stecher Affidavit

filed

May 19, 2006

in

Civil Action 04-40219 FDS

PATENT APPLICATION

OF

ROBERT E. RAFFERTY

FOR

METER BOX LOCK ASSEMBLY

1. For use in combination with an electric meter box or other like enclosure having a bottom, a side wall, and a cover which may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the side wall, a lock assembly for maintaining the cover in its closed position, said lock assembly comprising:

a bracket having first and second mutually spaced flanges integrally joined by an intermediate web;

a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges, said bracket being configured for removable mounting on said side wall, with said intermediate web interposed between said cover and the upper edge of said side wall, and with said first flange and said jaw respectively located adjacent exterior and interior surfaces of said side wall;

force exerting means for urging said jaw towards said first flange to thereby clamp said side wall therebetween;

a cap having a lip configured and dimensioned to overlap said cover; and

interlocking means for securing said cap to said bracket.

2. The lock assembly of claim 1 wherein the side wall of said box is provided with an interior ledge spaced below said upper edge, and wherein said jaw engages said side wall beneath said ledge.

3. The lock assembly of claims 1 or 2 wherein said jaw includes at least one tooth engageable with said side wall.

4. The lock assembly of claim 1 wherein said force exerting means comprises a screw threaded through said second flange.

5. The lock assembly of claim 4 wherein said jaw includes a plurality of teeth engageable with said side wall, said teeth being arranged on opposite sides of the axis of rotation of said screw.

6. The lock assembly of claim 1 wherein said jaw is pivotally connected to said second flange.

7. The lock assembly as claimed in claim 1 wherein said second flange is inclined at an acute angle with respect to said first flange.

8. The lock assembly as claimed in claim 1 wherein said bracket is provided with a third flange projecting from said first flange, and wherein said interlocking means engages said third flange.

## DETAILED ACTION

### *Claim Rejections - 35 USC § 112*

1. The following is a quotation of the second paragraph of 35 U.S.C. 112:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

2. Claims 1-8 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

3. Regarding claim 1, the phrase "or the like" in line 1 renders the claim(s) indefinite because the claim(s) include(s) elements not actually disclosed (those encompassed by "or the like"), thereby rendering the scope of the claim(s) unascertainable. See MPEP § 2173.05(d).

4. Regarding claim 5, an axis of rotation has an indefinite number of sides making it uncertain as to where the teeth are arranged therefore claim 5 is indefinite.

### *Claim Rejections - 35 USC § 103*

5. The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

6. Claims 1,2,4,7 and 8 are rejected under 35 U.S.C. 103(a) as being unpatentable over Nielsen, Jr., U.S.P. 4,080,811 in view of Nielsen, Jr. et al., U.S.P. 4,414,829.

Regarding claims 1,2,4,7 and 8, Nielsen 811 discloses an electric meter box having a bottom and side walls 1, a top cover 3 which overlaps an upper edge of a side

wall (Fig. 4) and a lock assembly (Figs2-6) comprising a bracket 21, a first and second flanges 23 and 38 integrally joined by an intermediate web (Figs. 4 and 5) where intermediate web is interposed between the cover 3 and the upper edge of the side wall 1 (Fig. 3) and the second flange is at an acute angle with respect to the first flange (Figs. 4 and 5), a force exerting means 25 comprising a screw threaded through the second flange 23, a cap 27 having a lip 29, an interlocking means 50 and 35 and the bracket 21 having a third flange 33 projecting from the fist flange 38 wherein the interlocking means 50 and 35 engage the third flange 33 however Nielsen 811 does not disclose a jaw mechanically interengaged with and carried by a bracket or a jaw engaging a box side wall below a ledge in the side wall.

Regarding claims 1,2,4,7 and 8, Nielsen 829 teaches a jaw 56 mechanically interengaged with and carried by a bracket 52.

It would have been obvious to one having ordinary skill in the art at the time the invention was made to provide the lock of Nielsen 811, with a jaw mechanically interengaged with and carried by a bracket as taught by Nielsen 829, in order to more securely clamp the bracket to the box side wall.

Regarding claim 2, Nielsen 829 teaches a jaw 56 engaging a box sidewall 16 below a ledge 58 in the sidewall.

It would have been obvious to one having ordinary skill in the art at the time the invention was made to provide the lock of Nielsen 811, with a jaw engaging a box side wall below a ledge in the side wall as taught by Nielsen 829, in order to more securely

clamp the bracket to the box side wall whereby the ledge deters the jaw from sliding up and off the wall.

7. Claims 3 and 5 are rejected under 35 U.S.C. 103(a) as being unpatentable over Nielsen, Jr., U.S.P. 4,080,811 in view of Nielsen, Jr. et al., U.S.P. 4,414,829 as applied to claims 1,2,4,7 and 8 above, and further in view of Collier, U.S.P. 3,938,839.

Nielsen 811 and Nielsen 829 are discussed above however, they do not disclose teeth on a jaw.

Regarding claims 3 and 5, Collier teaches teeth 10 and 11 on a jaw 5.

It would have been obvious to one having ordinary skill in the art at the time the invention was made to provide the lock of Nielsen 811 as modified by Nielsen 829 with a jaw having teeth as taught by Collier, in order to allow the jaw to secure to the sidewall of the box more securely.

8. Claim 6 is rejected under 35 U.S.C. 103(a) as being unpatentable over Nielsen, Jr., U.S.P. 4,080,811 in view of Nielsen, Jr. et al., U.S.P. 4,414,829 as applied to claims 1,2,4,7 and 8 above, and further in view of Michelman et al., U.S.P. 4,120,182.

Nielsen 811 and Nielsen 829 are discussed above however, they do not disclose a jaw pivotally to a second flange.

Regarding claim 6, Michelman teaches a jaw 120 pivotable to a second flange 124.

It would have been obvious to one having ordinary skill in the art at the time the invention was made to provide the lock of Nielsen 811 as modified by Nielsen 829 with

a jaw pivotable to a second flange as taught by Michelman, in order to allow the jaw to move rather than the bracket when turning the force exerting means.

***Conclusion***

9. The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to William S. Fee whose telephone number is (703) 305-3131. The examiner can normally be reached on Monday through Friday from 7:00 AM to 3:30 PM.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, J. J. Swann, can be reached on (703) 306-4115. The fax phone number for the organization where this application or proceeding is assigned is (703) 872-9326.

Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the receptionist whose telephone number is (703) 308-1113.

William S. Fee
Examiner
Art Unit 3677

J. J. SWANN
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 3600

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

**APPLICANT:** Robert E. Rafferty **GROUP:** 3677

**SERIAL NO:** 09/795,701 **EXAMINER:** William S. Fee

**FILED:** 02/28/01

**FOR:** METER BOX LOCK ASSEMBLY

**Box Amendment**
**Assistant Commissioner of Patents**
**Washington, D.C. 20231**

**Sir:**

**AMENDMENT**

In response to the Office Action mailed on 05/08/2002, please amend the above-identified application as follows:

IN THE CLAIMS:

Amend the claims 1 and 5 as follows:

1. (Amended) For use in combination with a utility box having a bottom, a side wall, and a cover which may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the side wall, a lock assembly for maintaining the cover in its closed position, said lock assembly comprising:

a bracket having first and second mutually spaced flanges integrally joined by an intermediate web;

a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges, said bracket being configured for removable mounting on said side wall, with said intermediate web interposed between said cover and the upper edge of said side wall, and with said first flange and said jaw respectively located adjacent exterior and interior surfaces of said side wall;

force exerting means for urging said jaw towards said first flange to thereby clamp said side wall therebetween;

a cap having a lip configured and dimensioned to overlap said cover; and interlocking means for securing said cap to said bracket.

5. (Amended) The lock assembly of claim 4 wherein said jaw includes a plurality of teeth engageable with said side wall.

## REMARKS

Claims 1 and 5 have been amended to obviate the Examiner's '112 rejections.

The Examiner's rejections under 35 U.S.C. §103 are respectfully traversed for the following reasons:

The Examiner's attempt to supplement the disclosure in Nielsen '811 with that of Neilsen '829 is fatally flawed. The component 56 in Neilsen '829 is nothing more than a reinforcing block fixed to a leg 58 of a back plate 52.

IT 00057

As such, it is not movable with respect to the back plate, and its function is merely to coact in threaded engagement with the cap screw 56 while strengthening the relatively thin side wall 16. Attaching the block 56 of Neilsen '829 to either of the flanges 23, 38 of Neilsen '811 would serve no useful purpose other than perhaps to add strength. It certainly would not serve as a jaw mounted for movement between the flanges. In sum, therefore, the block 56 of Neilsen '829 is not a jaw within the meaning of claim 1, and there is no suggestion in either Neilsen '811 or Neilsen '829 of using it as a movable jaw between the flanges 23, 38 of Neilsen '811.

The Examiner's assessment of the disclosure in Collier is also off the mark. In Collier, the teeth 10, 11, and 16 are designed to engage one another, and not to engage and bite into a side wall. This teaching is totally opposite to that of the present invention.

Finally, with respect to Michelman, the plate 120 is again nothing more than a fixed strengthening element, held in place by a clip 118.

The Examiner appears to be misconstruing the term "jaw". In the mechanical context, the most appropriate definition for this term is

> "either of two mechanical parts that open and close to grip or crush something, as in a monkey wrench or vise"
> (See enclosed excerpt from Webster's New World Dictionary, Second College Edition, 1976)

It is respectfully submitted that there is absolutely nothing in any of the secondary references that would suggest modifying the clamp in Neilsen '811 to include a jaw, as that term is properly construed.

Attached hereto is a marked up version of the changes made to claims 1 and 5.

Reconsideration and allowance is respectfully requested.

Respectfully submitted,

Maurice E. Gauthier
Registration No. 20,798
Samuels, Gauthier & Stevens
225 Franklin Street, Suite 3300
Boston, Massachusetts 02110
Telephone: (617) 426-9180, Ext. 113

VERSION WITH MARKINGS TO SHOW CHANGES MADE

1. (Amended) For use in combination with [an electric meter box or other like enclosure] a utility box having a bottom, a side wall, and a cover which may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the side wall, a lock assembly for maintaining the cover in its closed position, said lock assembly comprising:

a bracket having first and second mutually spaced flanges integrally joined by an intermediate web;

a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges, said bracket being configured for removable mounting on said side wall, with said intermediate web interposed between said cover and the upper edge of said side wall, and with said first flange and said jaw respectively located adjacent exterior and interior surfaces of said side wall;

force exerting means for urging said jaw towards said first flange to thereby clamp said side wall therebetween;

a cap having a lip configured and dimensioned to overlap said cover; and

interlocking means for securing said cap to said bracket.

5. (Amended) The lock assembly of claim 4 wherein said jaw includes a plurality of teeth engageable with said side wall [, said teeth being arranged on opposite sides of the axis of rotation of said screw].

SECOND COLLEGE EDITION



# WEBSTER'S NEW WORLD DICTIONARY

OF THE AMERICAN LANGUAGE

DAVID B. GURALNIK, *Editor in Chief*

WILLIAM COLLINS + WORLD PUBLISHING CO., INC.

IT 00061

WEBSTER'S NEW WORLD DICTIONARY, Second College Edition

Copyright © 1976 and 1974 by
WILLIAM COLLINS + WORLD PUBLISHING CO., INC.
2080 West 117th Street, Cleveland, Ohio 44111
Copyright © 1972 and 1970 by
THE WORLD PUBLISHING COMPANY

Copyright under the Universal Copyright Convention; the International Copyright Union; Pan-American Conventions of Montevideo, Mexico, Rio de Janeiro, Buenos Aires and Havana

Previous edition Copyright © 1953, 1954, 1955, 1956, 1957, 1958, 1959, 1960, 1962, 1964, 1966, 1968 by
THE WORLD PUBLISHING COMPANY

Library of Congress Catalog Card Number: 75-39572
ISBN 608 0-529-05324-1
ISBN 60BI 0-529-05326-8

PRINTED IN THE UNITED STATES OF AMERICA

nth) of Janus, to whom it
the year, having 31 days:
rched passageway < IE.
ce YEAR] Rom. Myth. the
and patron of beginnings
ng two faces, one in front,
ced; deceiving
try in the Pacific, off the
kaido, Honshu, Kyushu,
is: 142,726 sq. mi.; pop.
a of, arm of the Pacific,
000 sq. mi.
Japan] 1. a lacquer or
nish 2. a liquid mixture
decorated and lacquered
ed', -pan'ning to varnish
(Lespedeza striata) of the
d forage in the SW U.S.
rrent flowing from the
northeast past Japan
pan, its people, language,
native of Japan 2. the
m'ə də) [cf. ANDROMEDA]
ica) of the heath family,
aped, white flowers
nd-brown beetle (Popillia
h eats leaves, fruits, and
ll, beardless irises with
is kaempferi) commonly
SE LANTERN
le oyster (Ostrea gigas),
the Puget Sound region
siatic persimmon (Dios-
edible, red or orange-
m tree (Prunus salicina)
ive to China
t (Chaenomeles lagenaria)
r red flowers and hard,
the fruit
reen plant (Pachysandra
ed as a ground cover
f Japanese style
tained from the fruit of
codendron verniciflua and
cashew family, used in
japen] 1. to joke; jest
re] 1. to make fun of;
-n. 1. a joke or jest 2.
l. -er·ies
r.(Ec.) < Heb. yepheth,
Bible the youngest of
or from Japheth 2. a
., fem. of Japonicus, of
pon] a popular name for
Colombia & NW Brazil,
n: c. 1,500 mi.
l] a cynically philosoph-
s You Like It
), É·mile (ā mēl') 1865–
eurythmics
echoic] 1. to make a
to have a harsh, irritat-
vibrate from a sudden
arrel sharply —vt. 1. to
impact 2. to cause to
3. to jolt or shock —n.
2. a vibration due to a
4. a sharp clash, dis-
Sp. jarra < Ar. jarrah,
ontainer made of glass,
lindrical, with a large
ave handles 2. as much
l')
turn: now only in the
n
dē nyer') n. [Fr. jar-
of jardinier, gardener <
bowl, pot, or stand for
neats, of different kinds
c.) < Heb. yeredh, lit.,
name
a chattering (of birds):
speech; gibberish 2. a
one so that it seems

incomprehensible or outlandish 3. a mixed or hybrid language or dialect; esp., pidgin 4. the specialized vocabulary and idioms of those in the same work, profession, etc., as of sports writers or social workers: a somewhat derogatory term, often implying unintelligibility: see SLANG[1] 5. speech or writing full of long, unfamiliar, or roundabout words or phrases —*vi.* *same as* JARGONIZE —*SYN.* see DIALECT —jar'gon·is'tic *adj.*

**jar·gon**[2] (jär'gän) *n.* [Fr. < It. *giargone* < Ar. *zarqūn* < Per. *zargūn:* see ZIRCON] a colorless or smoky variety of zircon: also **jar·goon'** (-gōōn')

**jar·gon·ize** (jär'gə nīz') *vi.* -ized', -iz'ing to talk or write in jargon —*vt.* to express in jargon

**jarl** (yärl) *n.* [ON., akin to OE. *eorl:* see EARL] a Scandinavian chieftain or nobleman in earlier times

**jar·o·vize** (yär'ə vīz') *vt.* -vized', -viz'ing [< Russ. *yar'*, spring grain + -IZE] *same as* VERNALIZE

**Jar·vis** (jär'vis) [older *Gervas* < Norm. var. of Fr. *Gervais* < LL. *Gervasius*, name of an early Christian saint and martyr] a masculine name

**Jas.** James

**ja·sey** (jā'zē) *n.* [altered < JERSEY] [Brit.] formerly, a wig, esp. one made of worsted

**jas·mine, jas·min** (jaz'min; *chiefly Brit.*, jas'-) *n.* [Fr. *jasmin* < Ar. *yās(a)mīn* < Per. *yāsamīn*] 1. any of various tropical and subtropical plants (genus *Jasminum*) of the olive family, with fragrant flowers of yellow, red, or white, used in perfumes or for scenting tea 2. any of several other similar plants with fragrant flowers, as YELLOW JASMINE 3. pale yellow

**Ja·son** (jās'n) [L. *Iāson* < Gr. *Iāson*, lit., healer] 1. a masculine name 2. *Gr. Myth.* a prince who led the Argonauts, and, with Medea's help, got the Golden Fleece

**Jas·per** (jas'pər) [OFr. *Jaspar* < ?] a masculine name: equiv. Fr. *Gaspard*, G. *Kaspar*, Sp. *Gaspar*

**jas·per** (jas'pər) *n.* [ME. *jaspre* < MFr. < L. *iaspis* < Gr. *iaspis*, a green precious stone, prob. akin to Heb. *yāšpeh*] 1. an opaque variety of colored, cryptocrystalline quartz, usually reddish, yellow, or brown 2. *Bible* a precious stone, probably an opaque green quartz 3. a kind of porcelain developed by Wedgwood, having a dull surface in green, blue, etc., with raised designs, usually in white

**Jasper National Park** Canadian national park in SW Alberta, in the E Rockies: 4,200 sq. mi.

**Jas·pers** (yäs'pərz), **Karl** 1883–1969; Ger. philosopher

**jas·pil·ite** (jas'pə līt') *n.* [< Gr. *jaspis*, JASPER + -LITE] a rock consisting primarily of alternate bands of red jasper and black iron ore

**jas·sid** (jas'id) *n.* [< ModL. *Jassidae* < *Jassus*, name of the type genus < L. *Iassus*, ancient town on the coast of Caria + ModL. *-idae*, -IDAE] any of a large family (Jassidae) of leafhoppers that feed on plants

**Jas·sy** (yä'sē) *same as* IAŞI

**Jat** (jät, jôt) *n.* [Hind.] a member of an Indian people of the Vale of Kashmir, the Punjab, and Rajputana

**ja·to, JA·TO** (jā'tō) *n.* [*j(et)-a(ssisted) t(ake)o(ff)*] an airplane takeoff assisted by a jet-producing unit or units, usually small, solid-propellant rockets

**jaun·dice** (jôn'dis, jän'-) *n.* [ME. *jaundis* < OFr. *jaunisse* < *jaune*, yellow < L. *galbinus*, greenish yellow < *galbus*, yellow, prob. via Celt. **galbos* < IE. base **ghel-*, YELLOW] 1. *a)* a condition in which the eyeballs, the skin, and the urine become abnormally yellow as a result of bile pigments in the blood *b)* popularly, a disease causing this condition, as hepatitis 2. a bitter or prejudiced state of mind, caused by jealousy, envy, etc. —*vt.* -diced, -dic·ing 1. to cause to have jaundice 2. to make bitter or prejudiced through jealousy, envy, etc.

**jaunt** (jônt, jänt) *vi.* [< ?] to take a short trip for pleasure —*n.* such a trip; excursion —*SYN.* see TRIP

**jaunting car** a light, topless, two-wheeled cart used in Ireland, with seats on both sides

**jaun·ty** (-ē) *adj.* -ti·er, -ti·est [earlier *janty*, *genty* < Fr. *gentil*, genteel] 1. in fashion; stylish; chic 2. having an easy confidence; gay and carefree; sprightly; perky —jaun'ti·ly *adv.* —jaun'ti·ness *n.*

**Jau·rès** (zhō res'), **Jean Lé·on** (zhän lā ōn') 1859–1914; Fr. Socialist leader & journalist: assassinated

**Jav.** Javanese

**Ja·va** (jä'və, jav'ə) large island of Indonesia, southeast of Sumatra: 48,842 sq. mi.; pop. (with Madura) 63,000,000 —*n.* ☆1. any of a breed of chickens with black or mottled black plumage ☆2. a kind of coffee grown on Java and nearby islands ☆3. [*often* j-] [Slang] any coffee

**Java man** a type of primitive man (*Homo erectus erectus*) known from fossil remains found in Java

**Jav·a·nese** (jav'ə nēz', -nēs') *adj.* of Java, its people, their language, or culture —*n.* 1. *pl.* -nese' a native or inhabitant of Java; esp., a member of a group of tribes occupying the main part of Java 2. the Indonesian language of these tribes

**Java Sea** part of the Pacific, between Java & Borneo: c. 600 mi. long

**Java sparrow** a white, pink, and gray finch (*Padda oryzivora*) of SE Asia, widely kept as a cage bird

**jav·e·lin** (jav'lin, jav'ə lin) *n.* [MFr. *javeline*, fem. dim. < *javelot*, a spear, prob. < Gaul. **gabalaccos* < IE. base **ghabh(o)lo-*, forked branch, fork, whence OE. *gafol*, G. *gabel*] 1. a light spear for throwing 2. *a)* a pointed wooden or metal shaft, about 8 1/2 ft. long, thrown for distance as a test of strength and skill *b)* the throwing of the javelin as a field event in track and field meets: in full, **javelin throw**

☆**jav·e·li·na** (hä'və lē'nə) *n.* [Sp. *jabalina*, wild sow, fem. of *jabalí*, boar < Ar. (*ḥinzīr*) *g'abalī*, lit., mountain (pig) < *g'abal*, mountain] *same as* PECCARY

**Ja·velle** (or **Ja·vel**) **water** (zhə vel') [after *Javel*, former Fr. village (now part of Paris), where it was made] a solution of sodium hypochlorite, NaOCl, in water, used as a bleaching agent or disinfectant

**jaw** (jô) *n.* [ME. *jowe* < ? OFr. *joue*, cheek] 1. either of the two bones or bony parts that hold the teeth and frame the mouth in most vertebrates: the **lower jaw** (*mandible*) is usually hinged and movable, the **upper jaw** (*maxilla*) is usually not; often, specif., the lower jaw 2. any of various analogous biting structures of invertebrates 3. [*pl.*] the mouth 4. either of two mechanical parts that open and close to grip or crush something, as in a monkey wrench or vise 5. [*pl.*] the narrow entrance of (a canyon, valley, strait, etc.) 6. [*pl.*] something grasping or imminent [the *jaws* of death] 7. [Slang] talk; esp., abusive or boring talk —*vi.* [Slang] to talk, esp. in a boring or abusive way —*vt.* [Slang] to scold or reprove, esp. repeatedly

**jaw·bone** (-bōn') *n.* a bone of a jaw, esp. of the lower jaw —☆*vt.*, *vi.* -boned', -bon'ing to attempt to persuade by using one's high office or position to apply pressure, as the President might in proposing price and wage controls to business and labor

**jaw·break·er** (-brā'kər) *n.* 1. a machine with jaws for crushing rocks, ore, etc. ☆2. a hard, usually round candy 3. [Slang] a word that is hard to pronounce

**Jax·ar·tes** (jak sär'tēz) *ancient name of* SYR DARYA

**jay** (jā) *n.* [ME. < OFr. *gai* < LL. *gaius*, a jay, prob. echoic, but sp. infl. by the L. proper name *Gaius*] 1. any of several birds of the crow family, usually strikingly colored, as the **European jay** (*Garrulus glandarius*) 2. *same as* BLUE JAY 3. [Colloq.] a foolish or talkative person

**Jay** (jā), **John** 1745–1829; Am. statesman & jurist: 1st chief justice of the U.S. (1789–95)

**jay·bird** (jā'burd') *n. dial. var. of* JAY

☆**Jay·cee** (jā'sē') *n.* [< *j(unior) c(hamber)*] any member of a junior chamber of commerce

☆**jay·hawk·er** (jā'hô'kər) *n.* [< ?] 1. [Slang] an abolitionist guerrilla of Missouri and Kansas in Civil War days 2. a robber, raider, or plunderer 3. [J-] [Colloq.] *a nickname for* a Kansan: also **Jay'hawk'**

☆**jay·walk** (jā'wôk') *vi.* [JAY, 3 + WALK] [Colloq.] to walk in or across a street carelessly without obeying traffic rules and signals, esp. at other than proper crossing places —jay'walk'er *n.* —jay'walk'ing *n.*

☆**jazz** (jaz) *n.* [etym. unc.: < ? Creole patois *jass*, sexual term applied to the Congo dances (New Orleans)] 1. a kind of music, originally improvised but now also arranged, characterized by syncopation, rubato, usually heavily accented rhythms, dissonances, individualized melodic variations, and unusual tonal effects on the saxophone, clarinet, trumpet, trombone, etc.: it originated among New Orleans, esp. Negro, musicians: see also SWING, BOP[2] 2. loosely, any popular dance music 3. [Slang] a quality reminiscent of jazz music; lively spirit 4. [Slang] remarks, acts, concepts, etc. regarded as hypocritical, tiresome, trite, pretentious, etc. —*adj.* of, in, like, or having to do with jazz —*vt.* 1. to play or arrange as jazz 2. to speed up 3. [Slang] to fill with jazz qualities; make exciting or elaborate; enliven or embellish (usually with *up*) —*vi.* [Slang] to move or behave in a lively or carefree way

☆**jazz·man** (jaz'man') *n.*, *pl.* -men' a jazz musician

☆**jazz·y** (-ē) *adj.* jazz'i·er, jazz'i·est 1. characterized by the qualities of jazz music 2. [Slang] lively, gay, showy, etc. —jazz'i·ly *adv.* —jazz'i·ness *n.*

**J.C.** 1. Jesus Christ 2. Julius Caesar 3. jurisconsult

**J.C.D.** 1. [L. *Juris Canonici Doctor*] Doctor of Canon Law 2. [L. *Juris Civilis Doctor*] Doctor of Civil Law

**jct.** junction

**JD** juvenile delinquency (or delinquent)

**J.D.** [L. *Jurum Doctor*] Doctor of Laws

**Je.** June

**jeal·ous** (jel'əs) *adj.* [ME. *jelous* < OFr. *gelos* < ML. *zelosus:* see ZEAL] 1. very watchful or careful in guarding or keeping [*jealous* of one's rights] 2. *a)* resentfully suspicious of a rival or a rival's influence [a husband *jealous* of other men] *b)* resentfully envious *c)* resulting from such feelings [a *jealous* rage] 3. [Now Rare] requiring exclusive loyalty [the Lord is a *jealous* God] —jeal'ous·ly *adv.* —jeal'ous·ness *n.*

**jeal·ous·y** (-ē) *n.*, *pl.* -ous·ies [ME. *jalousie* < OFr. *gelosie* < *gelos:* see prec.] 1. the quality or condition of being jealous 2. an instance of this: jealous feeling

**Jean** (jēn) 1. a masculine name: see JOHN 2. a feminine name: see JOANNA

IT 00063

## DETAILED ACTION

### *Election/Restrictions*

1. Applicant's election of Species I in Paper No. 8 is acknowledged. Because applicant did not distinctly and specifically point out the supposed errors in the restriction requirement, the election has been treated as an election without traverse (MPEP § 818.03(a)).

### *Claim Rejections - 35 USC § 103*

2. The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

3. Claims 1, 2 and 6-8 are rejected under 35 U.S.C. 103(a) as being unpatentable over Nielsen, JR (US 4,080,811) in view of Redmayne (US 4,202,574).

Nielsen discloses for use in combination a locking assembly (23,25,27,35,50) with a utility box (1,3) having a bottom, side wall (1) and a cover (3) that may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the sidewall. The lock assembly maintains the cover in its closed position. The lock assembly comprises a bracket (23) having a first and second mutually spaced flanges integrally joined by an intermediate web (Figs. 4 and 5). The bracket being configured for removably mounting on the side wall with the intermediate web interposed between the cover and the upper edge of the side wall (Fig. 4). The

first flange and the jaw respectively located adjacent exterior and interior surfaces of the side wall (Figs. 4). A force exerting means urges one of the flanges of the bracket toward the sidewall to thereby clamp the sidewall therebetween (Fig. 4). A cap (41,27) having a lip (27) configured and dimensioned to overlap the cover and interlocking means (27,33,50) for securing the cap to the bracket (Fig. 4). Nielsen fails to disclose that the lock assembly has a jaw mechanically interengaged with and carried by the bracket that clamps the first flange of the bracket against the side wall. However, Redmayne teaches a lock assembly (26) comprising a bracket (18,20) and a jaw (32,38). The bracket has first (18) and second (20) mutually spaced flanges integrally joined by an intermediate web (Fig. 1 and 2). The jaw mechanically interengages with the bracket and is carried by the bracket for movement between the first and second flanges (Fig. 2). The bracket is configured to be removably mounted on a side wall (Figs. 1 and 2). Force exerting means (28, 34) urges the jaw towards the first flange to clamp the sidewall (Figs. 1 and 2). The force exerting means urges the jaw towards the clamping position and maintains that position by resiliency of one of the force exerting means (C. 2, L. 35-55). Therefore, it would have been obvious to one having ordinary skill in the art at the time the invention was made to have the jaw with the force exerting means taught by Redmayne in the lock assembly disclosed by Nielsen. Doing so, will ensure proper clamping of the jaw and the sidewall since the resiliency of the other force exerting means (34) will provided added clamping force between the bracket and the side wall.

With the combination of Redmayne and Nielsen where Nielsen discloses that the side wall of the box is provided with an interior ledge spaced below the upper edge (Fig. 4), the jaw taught by Redmayne will engage the sidewall beneath the ledge (Fig. 2).

Redmayne discloses that the jaw is pivotally connected to the second flange (Figs. 1 and 2).

The second flange disclosed by Redmayne is inclined at an acute angle with respect the first flange (Figs. 1 and 2).

Nielsen discloses that the bracket is provided with a third flange (33) projecting from the first flange and wherein the interlocking means engages the second flange (Fig. 4).

### *Allowable Subject Matter*

4. Claims 3-5 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

The following is a statement of reasons for the indication of allowable subject matter: Regarding claims 3 and 5, Redmayne fails to disclose the use of at least one tooth or a plurality of teeth in the jaw to engage the side wall. Therefore, it would not have been obvious to one having ordinary skill in the art at the time the invention was made to have at least one tooth or a plurality of teeth in the jaw the engage the side wall when Nielsen is combined with Redmayne.

For claim 4, Redmayne discloses that the force exerting means comprises a screw threaded through the jaw. Redmayne fails to disclose that the force exerting means can be threaded through the second flange. Accordingly, it would not have been obvious to one having ordinary skill in the art at the time the invention was made to have the force exerting means threaded through the second flange when combining Nielsen and Redmayne.

*Response to Arguments*

5. Applicant's arguments with respect to claims 1-8 have been considered but are moot in view of the new ground(s) of rejection.

*Conclusion*

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Collier (US 3,938,839), Sharzynksi et al. (US 4,107,959), Michelman et al. (US 4,120,182), Nielsen, Jr. (US 4,144,729), Swisher (US 4,152,910), Finck, Jr. (US 4,254,647), Nielsen Jr. et al. (US 4,414,829), Mahaney (US 5,007,258) and Georgopoulos (US 5,315,849) are cited to show state of the art with respect to the combination of a lock assembly and an utility box.

Woodard (US 1,241,459), Holen (US 1,262,795) and Henrickson (US 2,121,386) are cited to show state of the art with respect to clamps having some of the features of the clamping device of the current invention.

Bates et al. (US 3,275,363) is cited to show state of the art with respect to cover holders having some of the features of the current application.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Ruth C Rodriguez whose telephone number is (703) 308-1881. The examiner can normally be reached on M-F 07:15 - 15:45.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, J. J. Swann can be reached on (703) 306-4115.

Submissions of your responses by facsimile transmission are encouraged. Technology center 3600's facsimile number for before final communications is (703) 872-9326. Technology center 3600's facsimile number for after final communications is (703) 872-9327. Recognizing the fact that reducing cycle time in the processing and examination of patent applications will effectively increase the patent's term, it is to your benefit to submit responses by facsimile transmission whenever permissible. Such submission will place the response directly in our examining group's hands and will eliminate Post Office processing and delivery time as well as PTO's mailroom processing and delivery time. For a complete list of correspondence **not** permitted by facsimile transmission, see MPEP § 502.01. In general, most responses and/or amendments not requiring a fee, as well as those requiring a fee but charging such fee to a deposit account, can be submitted by facsimile transmission. Responses requiring a fee that the applicant is paying by check **should not be** submitted by facsimile transmission separately from the check.

Responses submitted by facsimile transmission should include a Certificate of Transmission (MPEP § 512). The following is an example of the format the certification might take:

I hereby certify that this correspondence is being facsimile transmitted to the Patent and Trademark Office (Fax No. (703) 872-9326) on ___(Date)__.

______________________________________
(Typed or printed name of person signing this certificate)

______________________________________
(Signature)

If your response is submitted by facsimile transmission, you are hereby reminded that the original should be retained as evidence of authenticity (37 CFR 1.4 and MPEP § 502.02). Please do not separately mail the original or another copy unless required by the Patent and Trademark Office. Submission of the original response or a follow-up copy of the response has been transmitted by facsimile will cause further unnecessary delays in the processing of your application, duplicate responses where fees are charged to a deposit account may result in those fees being charged twice.

Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the receptionist whose telephone number is (703) 308-1113.

Ruth C. Rodriguez
Patent Examiner
Art Unit 3677

RCR
rcr
January 27, 2003

J. J. Swann
SPE, AU 3677
TC 3700

Our File: 5578

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

**APPLICANT:** Robert E. Rafferty **GROUP:** 3677

**SERIAL NO:** 09/795,701 **EXAMINER:** Ruth C. Rodriguez

**FILED:** 02/28/01 **CONF. NO.:** 5950

**FOR:** METER BOX LOCK ASSEMBLY

**Assistant Commissioner of Patents**
**Washington, D.C. 20231**

**Sir:**

**RESPONSE**

This is in response to the Office Action mailed on February 3, 2003.

Claims 1, 2 and 6-8 stand reflected under 35 U.S.C. §103(a) as being unpatentable over Nielsen (4,080,811) in view of Redmayne (4,202,574).

The Examiner correctly recognizes that the bracket 21 in Nielsen lacks a jaw that clamps the first flange 38 against the side wall 1.

However, the Examiner is again entirely off the mark in attempting to supply this deficiency by referring to the disclosures in Redmayne. Contrary to the Examiner's assertion, the elements 18, 20 in Redmayne do not constitute a bracket. Rather, elements 18, 20 are integral parts of the lid. The bracket in Redmayne is the U-shaped element 26 with two mutually fixed legs 29, 32, neither of which carries a jaw.

---

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the Assistant Commissioner of Patents, Washington, D.C. 20231.

Donna M. Tomaso

Date: March 17, 2003

IT 00082

Moreover, Redmayne's elements 28, 34 are not "force exerting means" that force a jaw (non-existent) against the side wall 14. Rather, element 28 is a screw that merely serves to hold the bracket in an assembled position on the lid segment 20, and element 34 is a spring that urges the bracket 32 away from the lid segment 20.

There is absolutely nothing in Redmayne that could be combinable with Nielsen to produce something even remotely similar to the present invention. The Examiner's attempt to do so is nothing more than an exercise in improper hindsight.

This application was and is in condition for allowance.

Respectfully submitted,

Maurice E. Gauthier
Registration No. 20,798
Samuels, Gauthier & Stevens
225 Franklin Street, Suite 3300
Boston, Massachusetts 02110
Telephone: (617) 426-9180, Ext. 113

## DETAILED ACTION

### *Election/Restrictions*

1. Applicant's election of Species I in Paper No. 8 is acknowledged. Because applicant did not distinctly and specifically point out the supposed errors in the restriction requirement, the election has been treated as an election without traverse (MPEP § 818.03(a)).

### ***Claim Rejections - 35 USC § 103***

2. The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

3. Claims 1, 2 and 6-8 are rejected under 35 U.S.C. 103(a) as being unpatentable over Nielsen, JR (US 4,080,811) in view of Redmayne (US 4,202,574).

Nielsen discloses for use in combination a locking assembly (21,25,27,35,50) with a utility box (1,3) having a bottom, side wall (1) and a cover (3) that may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the sidewall. The lock assembly maintains the cover in its closed position (Figs. 3 and 4). The lock assembly comprises a bracket (23) having a first (38) and second (23) mutually spaced flanges integrally joined by an intermediate web (Figs. 4 and 5). The bracket being configured for removably mounting on the side wall with the intermediate web interposed between the cover and the upper edge of the side wall (Fig. 4). The first flange and the second flange respectively located adjacent exterior and interior surfaces of the side wall (Figs. 4). A force exerting means urges one of the flanges of the bracket toward the sidewall to thereby clamp the sidewall therebetween

(Fig. 4). A cap (41,27) having a lip (27) configured and dimensioned to overlap the cover and interlocking means (27,33,50) for securing the cap to the bracket (Fig. 4). Nielsen fails to disclose that the lock assembly has a jaw mechanically interengaged with and carried by the bracket that clamps the first flange of the bracket against the side wall. However, Redmayne teaches a lock assembly (26) comprising a lid (18,20) and a jaw (32,38). The lid has first (18) and second (20) mutually spaced flanges integrally joined by an intermediate web (Fig. 1 and 2). The jaw mechanically interengages with the lid and is carried by the lid for movement between the first and second flanges (Fig. 2). The lid is configured to be removably mounted on a side wall (Figs. 1 and 2). Force exerting means (28, 34) urges the jaw towards the first flange to clamp the sidewall (Figs. 1 and 2). The force exerting means urges the jaw towards the clamping position and maintains that position by resiliency of one of the force exerting means (C. 2, L. 35-55). Therefore, it would have been obvious to one having ordinary skill in the art at the time the invention was made to have the jaw with the force exerting means taught by Redmayne in the lock assembly disclosed by Nielsen such that a jaw as taught by Redmayne mechanically interengages with and carried by the bracket disclosed by Nielson whereby the jaw clamps the first flange of the bracket against the side wall. Doing so, will ensure proper clamping of the jaw and the sidewall since the resiliency of the other force exerting means (34) will provided added clamping force between the bracket and the side wall.

With the combination of Redmayne and Nielsen where Nielsen discloses that the side wall of the box is provided with an interior ledge spaced below the upper edge (Fig. 4), the jaw taught by Redmayne will engage the sidewall beneath the ledge (Fig. 2).

Redmayne discloses that the jaw is pivotally connected to the second flange (Figs. 1 and 2).

The second flange disclosed by Redmayne is inclined at an acute angle with respect the first flange (Figs. 1 and 2).

Nielsen discloses that the bracket is provided with a third flange (33) projecting from the first flange and wherein the interlocking means engages the second flange (Fig. 4).

***Allowable Subject Matter***

4. Claims 3-5 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

The following is a statement of reasons for the indication of allowable subject matter: Regarding claims 3 and 5, Redmayne fails to disclose the use of at least one tooth or a plurality of teeth in the jaw to engage the side wall. Therefore, it would not have been obvious to one having ordinary skill in the art at the time the invention was made to have at least one tooth or a plurality of teeth in the jaw the engage the side wall when Nielsen is combined with Redmayne.

For claim 4, Redmayne discloses that the force exerting means comprises a screw threaded through the jaw. Redmayne fails to disclose that the force exerting

means can be threaded through the second flange. Accordingly, it would not have been obvious to one having ordinary skill in the art at the time the invention was made to have the force exerting means threaded through the second flange when combining Nielsen and Redmayne.

***Response to Arguments***

5. Applicant's arguments filed 24 March 2003 have been fully considered but they are not persuasive.

6. The applicant argues that the U-shaped element 26 taught by Redmayne fails to carry a jaw. This argument fails to persuade. Although the Examiner acknowledges that the U-shaped element 26 fails to carry a jaw, the U-shaped element is not used as the bracket but as the jaw. When the U-shaped element 26 taught by Redmayne is mounted to the flange 23 of the bracket 21 disclosed by Nielsen, the leg 32 of the U-shaped element 26 will function as a jaw mechanically interengaged with and carried by the bracket that will clamp the first flange of the bracket against the side wall.

7. The other argument presented by the applicant is that the elements 28 and 34 are not "force exerting means". The Examiner fails to be persuaded by this argument. The Examiner acknowledges that the screw 28 is just used to connect the U-shaped element to a support. The Examiner cited the screw as part of the force exerting means because without the screw, the U-shaped element will not be attached to the bracket disclosed by Nielsen and the action of the spring 34 will not move the leg 32 toward the side wall to create a clamping force with the first flange. Therefore, the force exerting means (spring 34) relies in the screw (32) to mount it to the bracket and allows the force

exerting means to clamp the side wall between the leg 32 and the first flange by keeping the U-shaped element mounted to the bracket.

***Conclusion***

**THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of this final action.

The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Collier (US 3,938,839), Sharzynksi et al. (US 4,107,959), Michelman et al. (US 4,120,182), Nielsen, Jr. (US 4,144,729), Swisher (US 4,152,910), Finck, Jr. (US 4,254,647), Nielsen Jr. et al. (US 4,414,829), Mahaney (US 5,007,258) and Georgopoulos (US 5,315,849) are cited to show state of the art with respect to the combination of a lock assembly and an utility box.

Woodard (US 1,241,459), Holen (US 1,262,795) and Henrickson (US 2,121,386) are cited to show state of the art with respect to clamps having some of the features of the clamping device of the current invention.

Bates et al. (US 3,275,363) is cited to show state of the art with respect to cover holders having some of the features of the current application.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Ruth C. Rodriguez whose telephone number is (703) 308-1881. The examiner can normally be reached on M-F 07:15 - 15:45.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, J. J. Swann can be reached on (703) 306-4115.

Submissions of your responses by facsimile transmission are encouraged. Technology center 3600's facsimile number for before final communications is (703) 872-9326. Technology center 3600's facsimile number for after final communications is (703) 872-9327.

Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the receptionist whose telephone number is (703) 308-1113.

Ruth C. Rodriguez
Patent Examiner
Art Unit 3677

RCR
rcr
May 27, 2003

J. J. SWANN
SUPERVISORY PATENT EXAMINER
TECHNOLOGY CENTER 3600

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| **APPLICANT:** | Robert E. Rafferty | **GROUP:** | 3677 |
| **SERIAL NO.:** | 09/795,701 | **EXAMINER:** | Ruth C. Rodriguez |
| **FILED:** | February 28, 2001 | | |
| **FOR:** | METER BOX LOCK ASSEMBLY | | |

**Honorable Commissioner of**
**Patents and Trademarks**
**Mail Stop Appeal Briefs**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

**Sir:**

## APPEAL BRIEF

Pursuant to 35 U.S.C. §134 and 37 C.F.R. §§1.191, 1.192 and 1.196, Appellants' respectfully appeals to the Board of Patent Appeals and Interferences from the Examiner's final rejection of claims 1, 2 and 6-8.

### 1. REAL PARTY IN INTEREST

The real party in interest in the present case is the Assignee, Inner-Tite Corp.

### 2. RELATED APPEALS AND INTERFERENCES

The present application has no pending related appeals or interferences.

### 3. STATUS OF CLAIMS

Claims 1, 2 and 6-8 stand rejected under 35 U.S.C. 103(a) as being unpatentable over Nielson, JR (U.S. 4,080,811) in view of Redmayne (U.S. 4,202,574).

4. STATUS OF AMENDMENTS

No amendments after the final rejection have been filed.

5. SUMMARY OF THE INVENTION

In accordance with claim 1 and with reference for example to the embodiment illustrated in Figures 1-3, the present invention is directed to a lock assembly 26 for use with a utility box 10 having a bottom 12, a side wall 14 and a cover 16 which may be opened to gain access to the interior of the box. The lock assembly comprises a bracket 28 having first and second mutually spaced flanges 30, 32 integrally joined by an intermediate web 34. A jaw 38 is mechanically interengaged with and carried by the bracket for movement between the flanges 30, 32.

The bracket is configured for removable mounting on the box side wall 14, with the intermediate bracket web 34 interposed between the box cover 16 and the upper side wall edge, and with the first flange 30 and jaw 38 respectively located adjacent to exterior and interior surfaces of the box side wall.

A force exerting means 52 urges the jaw 38 towards the flange 30 to thereby clamp the box side wall 14 therebetween. A cap 54 has a lip 56 configured and dimensioned to overlap the cover 16, and an interlocking means 64 secures the cap to the bracket.

In accordance with claim 2, the box side wall is provided with an interior ledge 18 spaced below the upper wall edge, and the jaw 38 engages the side wall below the ledge 18.

In accordance with claim 6, and as shown for example in Figure 5A and 5B, the jaw is pivotally connected to the second flange.

In accordance with claim 7, the second flange 32 is inclined at an acute angle with respect to the first flange 30.

In accordance with claim 8, a third flange 36 projects from the first flange 30, and is engaged by the interlocking means 64.

## 6. ISSUES

The issue before the Board in this appeal is whether the Examiner was correct in rejecting claims 1, 2 and 6-8 under 35 U.S.C. 103(a) as being unpatentable over Nielson, JR in view of Redmayne.

## 7. GROUPING OF CLAIMS

For the purpose of this appeal, claims 1, 2 and 6-8 stand or fall together.

## 8. ARGUMENT

Applicant does not quarrel with the examiner's assessment of Nielson JR., which lacks a jaw or its equivalent carried by bracket 21 for movement between the flanges 23, 38.

The examiner attempts to remedy this deficiency by combining Nielson JR with Redmayne, and it is this attempted combination that applicant disputes.

To begin with, Redmayne's bracket 26 is mounted on a depending flange 20 of the lid, and thus is not configured for mounting on the container side wall 14, as called for by claim 1. The Redmayne bracket also lacks a jaw that is moveable between the bracket flanges 29, 32, and that is responsive to a force exerting means to exert a clamping force on the container side wall. To the contrary, the bracket flange 32 is merely urged into an abutting (as opposed to clamping) relationship with the container side wall.

By attempting to equate Redmayne's lid 18 and integral lid side wall 20 to applicant's bracket flanges, and by referring to Redmayne's bracket 26 as a jaw, the examiner is simply

misreading and distorting the reference into something other than what it is. It is respectfully submitted that it would not occur to one skilled in the art to somehow combine the teachings of Redmayne into the Nielson JR lock assembly, for any attempt to do so would require substantially redesigning one or the other of these references. Without the benefit of hindsight gained by first reading applicant's disclosure, any such combination would be unobvious, to say the least.

Thus, to summarize, Nielson JR discloses a bracket carried by and urged into a clamping relationship with a box side wall, but without the claimed jaw or its equivalent carried by one of the bracket flanges, and Redmayne discloses a bracket carried by the container lid and urged into an abutting relationship with the container side wall, again without the claimed jaw or its equivalent carried by one of the bracket flanges.

In light of the foregoing, applicant respectfully requests that the Board of Patent Appeals and Intereferences revise the Examiner's final rejection of claims 1, 2 and 6-8.

Respectfully submitted,

Maurice E. Gauthier
Registration No. 20,798
Samuels, Gauthier & Stevens
225 Franklin Street, Suite 3300
Boston, Massachusetts 02110
Telephone: (617) 426-9180, Ext. 113

9. APPENDIX

APPEALED CLAIMS

1. (Previously Amended) For use in combination with a utility box having a bottom, a side wall, and a cover which may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the side wall, a lock assembly for maintaining the cover in its closed portion, said lock assembly comprising:

a bracket having first and second mutually spaced flanges integrally joined by an intermediate web;

a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges, said bracket being configured for removable mounting on said side wall, with said intermediate web interposed between said cover and the upper edge of said side wall, and with said first flange and said jaw respectively located adjacent exterior and interior surfaces of said side wall;

force exerting means for urging said jaw towards said first flange to thereby clamp said side wall therebetween;

a cap having a lip configured and dimensioned to overlap said cover; and

interlocking means for securing said cap to said bracket.

2. (Original) The lock assembly of claim 1 wherein the side wall of said box is provided with an interior ledge spaced below said upper edge, and wherein said jaw engages said side wall beneath said ledge.

6. (Original) The lock assembly of claim 1 wherein said jaw is pivotally connected to said second flange.

7. (Original) The lock assembly as claimed in claim 1 wherein said second flange is inclined at an acute angle with respect to said first flange.

8. (Original) The lock assembly as claimed in claim 1 wherein said bracket is provided with a third flange projecting from said first flange, and wherein said interlocking means engages said third flange.



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

MAILED

OCT 08 2003

GROUP 3600

**BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES**

Paper No. 14

Application Number: 09/795,701
Filing Date: February 28, 2001
Appellant(s): RAFFERTY, ROBERT E.

Maurice E. Gauthier
For Appellant

**EXAMINER'S ANSWER**

This is in response to the appeal brief filed 17 September 2003.

*(1) Real Party in Interest*

A statement identifying the real party in interest is contained in the brief.

*(2) Related Appeals and Interferences*

A statement identifying the related appeals and interferences which will directly affect or be directly affected by or have a bearing on the decision in the pending appeal is contained in the brief.

*(3) Status of Claims*

Claims 3-5 are objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

*(4) Status of Amendments After Final*

The appellant's statement of the status of amendments after final rejection contained in the brief is correct.

*(5) Summary of Invention*

The summary of invention contained in the brief is correct.

*(6) Issues*

The appellant's statement of the issues in the brief is correct.

*(7) Grouping of Claims*

Appellant's brief includes a statement that claims 1, 2 and 6-8 do stand or fall together.

*(8) Claims Appealed*

The copy of the appealed claims contained in the Appendix to the brief is correct.

*(9) Prior Art of Record*

| | | |
|---|---|---|
| 4,080,811 | Nielsen, Jr. | 03-1978 |
| 4,202,574 | Redmayne | 05-1980 |

*(10) Grounds of Rejection*

The following ground(s) of rejection are applicable to the appealed claims:

Claims 1, 2 and 6-8 are rejected under 35 U.S.C. 103(a) as being unpatentable over Nielsen in view of Redmayne. This rejection is set forth in prior Office Action, Paper No. 11.

*(11) Response to Argument*

Findings

1. Nielsen discloses for use in combination a locking assembly (21,25,27,35,50) with a utility box (1,3).

2. Nielsen's utility box has a bottom, side wall (1) and a cover (3) that may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the sidewall.

3. Nielsen's lock assembly maintains the cover in its closed position (Figs. 3 and 4).

4. Nielsen's lock assembly comprises a bracket (23) having a first (38) and second (23) mutually spaced flanges integrally joined by an intermediate web (Figs. 4 and 5).

5. Nielsen's bracket is configured to be removably mounted on the side wall with the intermediate web interposed between the cover and the upper edge of the side wall (Fig. 4).

6. Nielsen's first flange and the second flange respectively located adjacent exterior and interior surfaces of the side wall (Figs. 4).

7. Nielsen's further discloses a force exerting means urges one of the flanges of the bracket toward the sidewall to thereby clamp the sidewall therebetween (Fig. 4).

8. A cap (41,27) disclosed by Nielsen has a lip (27) configured and dimensioned to overlap the cover and interlocking means (27,33,50) for securing the cap to the bracket (Fig. 4).

9. Redmayne discloses a lock assembly (26) comprising a lid (18,20) and a jaw (32,38).

10. Redmayne's lid has first (18) and second (20) mutually spaced flanges integrally joined by an intermediate web (Fig. 1 and 2).

11. Redmayne's jaw mechanically interengages with the lid and is carried by the lid for movement between the first and second flanges (Fig. 2).

12. Redmayne's lid is configured to be removably mounted on a side wall (Figs. 1 and 2).

13. Redmayne's force exerting means (28, 34) urges the jaw towards the first flange to clamp the sidewall (Figs. 1 and 2).

14. Redmayne's force exerting means urges the jaw towards the clamping position and maintains that position by resiliency of one of the force exerting means (C. 2, L. 35-55).

15. A jaw is the either of two or more opposable parts that open and closes for holding or crushing something between them.

Discussion

In response to remarks on the rejection of claims 1, 2 and 6-8 under 35 U.S.C. 103 (a):

Nielsen discloses the lock assembly and the utility box as set forth above in findings 1-8. However, Nielsen fails to disclose that the lock assembly has a jaw mechanically interengaged with and carried by the bracket that clamps the first flange of the bracket against the side wall. In light of the finding 14, it would have been obvious to one having ordinary skill in the art at the time the invention was made to have the jaw with the force exerting means taught by Redmayne in the lock assembly disclosed by Nielsen such that a jaw as taught by Redmayne mechanically interengages with and carried by the bracket disclosed by Nielson whereby the jaw clamps the first flange of the bracket against the side wall. Doing so, will ensure proper clamping of the jaw

and the sidewall since the resiliency of the other force exerting means (34) will provided added clamping force between the bracket and the side wall.

On page 3, lines 14-19, the appellants contend that the Redmayne's bracket is mounted on a dependent flange of the lid and thus is not configured for mounting on the container side wall as called for by the claim and that the bracket also lacks a jaw movable between the bracket flanges that exerts a clamping force on the container wall due to a force exerting means. The Examiner never stated that the lid had a bracket to be mounted on a flange of a container. The Examiner states the Redmayne's has a lid with first and second flanges. The Examiner states that a jaw mechanically engages with the lid and is carried by the lid for movement between the first and second flanges. The definition of jaw is included in finding 15. The element 32 is a jaw when taken in combination with the first flange 18 because the container is being held in between the first flange 18 and the jaw 32.

On page 3, lines 19 and 20 and on page 4, lines 1-5, the appellants discusses hindsight from the part of the Examiner that is misreading and distorting the references and also discusses bodily incorporation. The Examiner states that providing the jaw taught by Redmayne in the lock assembly, such that a jaw as taught by Redmayne mechanically interengages with and carried by the bracket disclosed by Nielson whereby the jaw clamps the first flange of the bracket against the side wall, will provide proper clamping of the jaw and the sidewall since the resiliency of the force exerting means will provide added clamping force between the bracket and the side wall. The test of obviousness is not whether the features of the secondary reference may be bodily incorporated into the structure of the primary reference, nor is it that the claimed

invention must be expressly suggested in any one or all the references. Rather, the test is what the combination teachings of the references would suggest to those of ordinary skill in the art. For the above reasons, it is believed that the rejections should be sustained.

Respectfully submitted,

Ruth C. Rodriguez
Patent Examiner
Art Unit 3677

RCR
rcr
October 3, 2003

Conferees
lb
js

Anthony Knight
Supervisory Patent Examiner
Group 3600

Samuels, Gauthier & Stevens LLP
Attn: Maurice E. Gauthier
Suite 3300
225 Franklin Street
Boston, MA 02110

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

**APPLICANT:** Robert E. Rafferty **GROUP:** 3677

**SERIAL:** 09/795,701 **EXAMINER:** Ruth C. Rodriguez

**FILED:** February 28, 2001

**FOR:** METER BOX LOCK ASSEMBLY

**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, VA 22313-1450**

**Sir:**

**REPLY TO EXAMINER'S ANSWER**

Pursuant to 37 C.F.R. §1.193(b)(1), Appellant's respectfully replies to the Examiner's Answer dated October 8, 2003.

35 U.S.C. 103(a) provides that a claimed invention is unpatentable if the differences between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." (emphasis added).

The underlined phrase guards against the "tempting but forbidden zone of hindsight" when analyzing the patentability of claims pursuant to that section. Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 873 (Fed. Cir. 1985), overruled on other grounds 141 F.3d 1059, (Fed. Cir. 1998).

Close adherence to this methodology is especially important in the case of less technologically complex inventions, where the very ease with which the invention can be understood may prompt one "to fall victim to the insidious effect of a hindsight syndrome wherein that which only the inventor taught is used against its teacher, W.L. Gore & Assoc., Inc. v. Garlock, Inc., 721 F.2d 1540, 1553, 313 (Fed. Cir. 1983).

Combining prior art references without evidence of such a suggestion, teaching, or motivation simply takes the inventor's disclosure as a blueprint for piecing together the prior art to defeat patentability—the essence of hindsight. See, e.g., Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1138, (Fed. Cir. 1985).

Evidence of a suggestion, teaching, or motivation to combine may flow from the prior art references themselves, the knowledge of one of ordinary skill in the art, or, in some cases, from the nature of the problem to be solved. In re Dembiczak, 175 F.3d 994 (Fed. Cir. 1999), reversed on other grounds, 203 F.3d 1305 (Fed. Cir. 2000). Broad conclusory statements regarding the teaching of multiple references, standing alone, are not "evidence". E.g., McElmurry v. Arkansas Power & Light Co., 995 F.2d 1576,1578 (Fed. Cir. 1993).

The examiner has failed to supply any of this requisite evidence, and instead has relied on the conclusory statement that it would have been:

> "obvious to one having ordinary skill in the art at the time the invention was made to have the jaw with the force exerting means taught by Redmayne in the lock assembly disclosed by Neilson such that a jaw as taught by Redmayne mechanically interengages with and carried by the bracket disclosed by Neilson whereby the jaw clamps the first flange of the bracket against the side wall."

For the reasons set forth in applicant's brief, it is respectfully submitted, that there is nothing in either Nielson or Redmayne that would motivate one skilled in the art to combine them. All the more so given the different problems that these references are dealing with. Nelson's objective is to provide a locking device for thwarting access to an electric meter box, whereas Redmayne is concerned with a refuse contain lid lock that can be readily disengaged to facilitate access to the container interior.

The examiner's final rejection of claims 1, 2 and 6-8 is not supported by the cited references, and should, therefore, be reversed.

Respectfully submitted,

Maurice E. Gauthier
Registration No. 20,798
Samuels, Gauthier & Stevens
225 Franklin Street, Suite 3300
Boston, Massachusetts 02110
Telephone: (617) 426-9180, Ext. 113

The opinion in support of the decision being entered today was not written for publication and is not binding precedent of the Board.

Paper No. 18

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES

MAILED

MAR 31 2004

U.S. PATENT AND TRADEMARK OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Ex parte ROBERT E. RAFFERTY

Appeal No. 2004-0827
Application No. 09/795,701

ON BRIEF

Before WALTZ, KRATZ and JEFFREY T. SMITH, Administrative Patent Judges.

WALTZ, Administrative Patent Judge.

**DECISION ON APPEAL**

This is a decision on an appeal from the primary examiner's final rejection of claims 1, 2 and 6 through 8. The remaining claims pending in this application are claims 3 through 5, which stand objected to by the examiner as depending on a rejected claim but would be allowable if rewritten in independent form (Answer, page 2, ¶(3)). We have jurisdiction pursuant to 35 U.S.C. § 134.

According to appellant, the invention is directed to a lock assembly for a utility box (Brief, page 2). Further details of the

invention may be seen from representative independent claim 1 which is reproduced below:

1. For use in combination with a utility box having a bottom, a side wall, and a cover which may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the side wall, a lock assembly for maintaining the cover in its closed position, said lock assembly comprising:

a bracket having first and second mutually spaced flanges integrally joined by an intermediate web;

a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges, said bracket being configured for removable mounting on said side wall, with said intermediate web interposed between said cover and the upper edge of said side wall, and with said first flange and said jaw respectively located adjacent exterior and interior surfaces of said side wall;

force exerting means for urging said jaw towards said first flange to thereby clamp said side wall therebetween;

a cap having a lip configured and dimensioned to overlap said cover; and interlocking means for securing said cap to said bracket.

The examiner has relied upon the following references as evidence of obviousness:

| | | |
|---|---|---|
| Nielsen, Jr. (Nielsen) | 4,080,811 | Mar. 28, 1978 |
| Redmayne | 4,202,574 | May 13, 1980 |

The claims on appeal stand rejected under 35 U.S.C. § 103(a) as unpatentable over Nielsen in view of Redmayne (Answer, page 3, referring to Paper No. 11). We *reverse* this rejection essentially

for the reasons stated in the Brief, Reply Brief, and those reasons set forth below.

**OPINION**

The examiner finds, and appellant does not contest, that Nielsen discloses a locking assembly for a utility box comprising every claimed limitation except that Nielsen fails to disclose or suggest that the lock assembly contains a jaw mechanically interengaged with and carried by the bracket that clamps the first flange against the side wall (Paper No. 11, pages 2-3; see also the Answer, page 3, Findings 1-8, and page 4; and the Brief, page 3, ¶8). The examiner further finds that Redmayne discloses a lock assembly comprising a lid and a jaw, including mechanical interengagement of the jaw and the lid and force exerting means urging the jaw towards the first flange to clamp the sidewall (Paper No. 11, page 3; Answer, page 4). From these findings, the examiner concludes that it would have been obvious to one of ordinary skill in the art "to have the jaw with the force exerting means taught by Redmayne in the lock assembly disclosed by Nielsen" to ensure proper clamping of the jaw and the sidewall (Paper No. 11, page 3; Answer, paragraph bridging pages 4-5). We disagree.

As correctly argued by appellant (Brief, page 4; Reply Brief, pages 1-2), the examiner has not identified any convincing reason

or suggestion for combining the references as proposed in the rejection on appeal. The examiner has only set forth a conclusory statement without identifying any convincing reasons or suggestions why one of ordinary skill in this art would have added the jaw of Redmayne to the locking assembly of Nielsen (see the Reply Brief, page 2). *See In re Dembiczak,* 175 F.3d 994, 999, 50 USPQ2d 1614, 1617 (Fed. Cir. 1999). "[W]hen determining the patentability of a claimed invention which combines two known elements, 'the question is whether there is something in the prior art as a whole to suggest the desirability, and thus the obviousness, of making the combination.' [Citations omitted]." *In re Rouffet,* 149 F.3d 1350, 1356, 47 USPQ2d 1453, 1456 (Fed. Cir. 1998). On the record before us, we determine that the examiner has not identified any convincing suggestion or reason for the desirability of adding the jaw of Redmayne to the lock assembly of Nielsen. The examiner has not explained why the locking assembly of Nielsen requires "proper clamping" which would be achieved by use of the jaw taught by Redmayne.

Additionally, as correctly argued by appellant (Brief, page 3), the "jaw" of Redmayne is mounted on a depending flange 20 of the lid of the refuse container. The U-shaped bracket disclosed by Redmayne is engaged with the undersurface of the lid bead 16 as

well as the lower beaded portion 24 (see the abstract; Figure 2; col. 1, ll. 32-34; and col. 2, ll. 35-38). The examiner has not established why one of ordinary skill in the art would have added this "jaw" or U-shaped locking assembly of Redmayne, unique to the shape and beaded portion of the refuse container lid, to the locking assembly for a utility box disclosed by Nielsen.

For the foregoing reasons and those stated in the Brief and Reply Brief, we determine that the examiner has not met the initial burden of establishing a *prima facie* case of obviousness in view of the reference evidence. Therefore we cannot sustain the rejection on appeal.

Appeal No. 2004-0827
Application No. 09/795,701

The decision of the examiner is reversed.

**REVERSED**

THOMAS A. WALTZ
Administrative Patent Judge

PETER F. KRATZ
Administrative Patent Judge

JEFFREY T. SMITH
Administrative Patent Judge

BOARD OF PATENT APPEALS AND INTERFERENCES

TAW/jrg

6

IT 00129