IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

INNER-TITE CORP.,      §
           §
     Plaintiff,     §
           §
V.            §   CIVIL ACTION NO. 04-40219 FDS
           §
DEWALCH TECHNOLOGIES, INC.,   §
           §
     Defendants.    §

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Denise W. DeFranco BBO# 558859
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
(617) 832-1202

Peter E. Mims
Texas Bar No. 14173275
VINSON & ELKINS, L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, TX 77002-6760
713-758-2732

ATTORNEYS FOR DEFENDANT,
DEWALCH TECHNOLOGIES, INC.

# TABLE OF CONTENTS

I.      BACKGROUND...................................................................................................... 1

II.     SUMMARY OF ARGUMENT .............................................................................. 1

III.    THE APPLICABLE LAW...................................................................................... 2

   A.   Generally ............................................................................................................ 2

   B.   Law of Claim Construction ................................................................................ 2

IV.     CLAIM CONSTRUCTION: THE DISPUTED ELEMENT OF CLAIM 1 OF THE '691

        PATENT.............................................................................................................. 3

   A.   Meaning of "Between" from the '691 Patent Claims and Specification............. 4

   B.   Meaning of "Between" in the Disputed Claim Limitation.................................. 5

V.      THE PROLOCK PRODUCTS .............................................................................. 7

   A.   ProLock Product 1.............................................................................................. 7

   B.   ProLock Product 2.............................................................................................. 9

VI.     THE PROLOCK PRODUCTS DO NOT INFRINGE CLAIM 1 OF THE '691 PATENT

        ............................................................................................................................ 10

   A.   No Literal Infringement:  The ProLock Products Lack a Jaw That is Interengaged with

        and Carried by said Bracket for "Movement Between said First and Second Flanges" ... 10

   B.   No Infringement Under the Doctrine of Equivalents ....................................... 10

      1.   Prosecution History Estoppel Precludes the ProLock Clamping Members from

           being Equivalents of a Jaw Mounted for Movement Between the Flanges. ......... 11

      2.   Claim Vitiation Doctrine Precludes Finding the Clamping Members of the

           ProLock Products to be Equivalents. ................................................................. 14

3.   The ProLock Clamping Members Operate in a Substantially Different Way from

a Jaw that is Interengaged with and carried by the mounting bracket for

Movement Between the Flanges. ........................................................................ 16

VII.   CONCLUSION ................................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**

*Cybor Corp. v. FAS Techs., Inc.,*
    138 F.3d 1448, 1454 (Fed. Cir. 1998)(*en banc*)................................................................ 6, 14, 15

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,*
    149 F.3d 1309 (Fed. Cir. 1998).................................................................................. 18

*Freedman Seating Co. v. American Seating Co.,*
    420 F.3d 1350 (Fed. Cir. 2005)................................................................................. 19

*Malta v. Schulmerich Carillons, Inc.,*
    952 F.2d 1320, 1327 (Fed. Cir. 1991)....................................................................... 14

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.,*
    415 F.3d 1335, 1344 (Fed. Cir. 2005)(citations omitted) ........................................... 6

*Phillips v. AWH Corp.,*
    415 F. 3d 1303, 1313 (Fed. Cir. 2005)(*en banc*)(internal citation omitted)................... 6

*Sage Prods., Inc. v. Devon Indus., Inc.,*
    126 F.3d 1420 (Fed. Cir. 1997)............................................................................ 18, 19

*Teleflex Inc. v. Ficosa North America Corp.,*
    299 F. 3d 1313, 1324 (Fed. Cir. 2002)........................................................................ 6

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.,*
    90 F.3d 1558, 1567 (Fed. Cir. 1996)........................................................................ 14

*Ultra-Tex Surfaces Inc. v. Hill Bros. Chem. Co.,*
    204 F.3d 1360, 1364 (Fed. Cir. 1998)...................................................................... 14

**Rules**

Fed. R. Civ. P. 56(c)................................................................................................ 6

## I.     BACKGROUND

Plaintiff Inner-Tite Corporation ("Inner-Tite") brought the present patent infringement action against Defendant DeWalch Technologies, Inc. ("DeWalch") alleging that DeWalch's utility box locking assemblies (the "ProLock Products") infringe claim 1 of U.S. Patent No. 6,763,691 (the '691 Patent).  DeWalch denies infringement.  The parties have narrowed the issues to the single issue of whether either or both of the ProLock Products, which are specifically described in the confidential DeWalch Drawing Numbers 601049-1, 601049-2, 601050, and 601051 and by the ProLock Products filed with this Motion, infringe the claim limitation "a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges" of claim 1 of the '691 Patent, either literally or under the doctrine of equivalents.

## II.     SUMMARY OF ARGUMENT

Neither of the ProLock Products infringes, either literally or under the doctrine of equivalents, the claim limitation of claim 1 of the '691 Patent of a "jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges."  Properly construed, this claim limitation requires a jaw that is interengaged with and carried by the mounting bracket for movement between, or "in or through the space that separates," the first flange and the second flange.  This space is the three-dimensional wedge-shaped space directly between the first and second flanges of the mounting bracket.  No part of the clamping member of either ProLock Product is located between the wedge-shaped space between the flanges. Rather, when the ProLock Product is assembled, the clamping member of the ProLock Products is outside of, and rotates outside of, the flanges of the mounting bracket. The clamping member never enters or crosses into the wedge-shaped space between the two flanges.

1

The clamping member of each of the ProLock Products also cannot be considered an equivalent of the jaw claimed in claim 1. First, file history estoppel precludes Inner-Tite from asserting a structure that is not mounted for movement between the two flanges is a jaw that is interengaged and carried by the mounting bracket for movement between the first and second flange infringes claim 1. Second, to find the clamping members are equivalent would require the Court to improperly "vitiate" the claim limitation regarding the location of the movement of the clamping member, namely, the claim language regarding "movement between" the two flanges of the mounting bracket. Finally, The clamping member of each of the ProLock Products does not perform the same function or operate in the same way as the jaw of claim 1.

## III.    THE APPLICABLE LAW

### A.    Generally

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A determination of patent infringement is a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted [and second,] the properly construed claims are compared to the allegedly infringing device." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998)(*en banc*). "Step one, claim construction, is a question of law . . . . Step two, comparison of the claims to the accused device, is a question of fact, and requires a determination that <u>every</u> claim limitation or its equivalent be found in the accused device" (emphasis added). *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1344 (Fed. Cir. 2005)(citations omitted).

### B.    Law of Claim Construction

In claim construction, "the words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1313 (Fed. Cir. 2005)(*en*

*banc*)(internal citation omitted).  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art."  *Id.*  In determining the meaning of disputed claim terms, a court must look primarily to the intrinsic evidence of record, examining the claim language itself, the specification, and the prosecution history, if in evidence. *Teleflex Inc. v. Ficosa North America Corp.*, 299 F. 3d 1313, 1324 (Fed. Cir. 2002).  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent . . . , and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  *Phillips*, at 1314.

## IV.    CLAIM CONSTRUCTION: THE DISPUTED ELEMENT OF CLAIM 1 OF THE '691 PATENT

Claim 1 of the '691 Patent is directed to a locking device used for utility boxes.  Claim 1 reads as follows:

1.      For use in combination with a utility box having a bottom, a side wall, and a cover which may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the side wall, a lock assembly for maintaining the cover in its closed position, said lock assembly comprising:

a bracket having first and second mutually spaced flanges integrally joined by an intermediate web;

<u>a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges</u>, said bracket being configured for removable mounting on said side wall, with said intermediate web interposed between said cover and the upper edge of said side wall, and with said first flange and said jaw respectively located adjacent exterior and interior surfaces of said side wall;

force exerting means for urging said jaw towards said first flange to thereby clamp said sidewall therebetween;

a cap having a lip configured and dimensioned to overlap said cover, and interlocking means for securing said cap to said bracket.

<u>'691 Patent</u>, col. 4, lns. 24-45 (emphasis added).  The parties have stipulated that the only disputed claim limitation of claim 1 is "a jaw mechanically interengaged with and carried by the

3

bracket for movement between said first and second flanges." This limitation will be referred to herein as the "disputed claim limitation."

### A.    Meaning of "Between" from the '691 Patent Claims and Specification

The "jaw" element is described in the specification of the '691 Patent. Portions of Figures 2 and 3 from the '691 Patent are reproduced below. These Figures show assembled and disassembled views with certain parts shown with color: first flange (green), second flange (blue), intermediate web (yellow), jaw (purple) and the space between the first and second flange (orange):



See Declaration of N. Binz DeWalch, 2-3 (hereafter "Declaration"). According to the '691 Patent, Figures 2 and 3 show "a mounting bracket 28 having first and second mutually spaced and angularly disposed flanges 30, 32 integrally joined by an intermediate web 34." '691 Patent, col. 2, lines 48-51. As can be seen in Figure 2, when assembled, the jaw 38 is "carried" in the space that is "between" the first and second flanges 30 and 32 of mounting bracket 28. The jaw 38 is described as "carried by the mounting bracket for movement between the first and second flanges." Id., col. 1, lines 60-62 (emphasis added).

4

The other Figures in the '691 Patent show a similar view of the wedge-shaped space between the first and second flanges:



All four types of utility box lock assemblies described in the '691 Patent differ from one another largely by the mechanism ("force exerting means") that is used to urge the jaw into engagement with the side wall of the meter box.  Declaration, at 4.  All of the examples shown in the '691 Patent, however, show a jaw interengaged with and carried by a mounting bracket for movement between the first and second flanges of the mounting bracket.  Id.  All jaws shown in the '691 Patent are located within the orange wedge-shaped space in the Figures.

### B.    Meaning of "Between" in the Disputed Claim Limitation

In this case, there is no dispute about the construction of the term "between," as it is used in the '691 Patent.  Plaintiff Inner-Tite has previously provided its claim construction of the term "between" as "in or through the space that separates."  *See Plaintiff's Memorandum of Support of Plaintiff's Motion for Partial Summary Judgment of Patent Claim Construction*, 13. Defendant's engineer, Mr. Binz DeWalch, agrees with Plaintiffs' proposed claim construction.  See Declaration, 2.

To construe the term "between" in light of this agreed definition, it is necessary to identify the "the space that separates" the first and second flanges of the mounting bracket.  The mounting bracket 28 has two flanges 30 and 32 and an intermediate web 34 between the two

flanges.  (There is also a third flange 36 that is separated by another intermediate web from the first flange.)  These elements are all shown with color-coding in the Figures above.  As noted in claim 1, the mounting bracket is configured for "removable mounting" on the side wall of the utility box.  When the locking assembly is installed, the intermediate web is interposed between the upper edge of the side wall of the box and the cover of the utility box.  The first flange is located outside the box ("said first flange . . . located adjacent exterior . . . surface[] of said side wall") and the second flange is located on the inside of the utility box.  The claim requires that the "jaw" be "located adjacent . . . interior surface of said side wall").  Thus, when the jaw is "between" the first and second flanges, the jaw is also located on the interior of the utility box.

For a jaw to be carried for  "movement between" the two flanges of the mounting bracket, the jaw has to be located between, or "in or through the space that separates," the two flanges of the mounting bracket.  <u>Declaration</u>, at 2.  This space is the three-dimensional wedge-shaped space between the first and second flanges.  <u>Id</u>., at 4-5.  In the drawings above, the orange indicates a side-view of this wedge-shaped space, which is bounded by the interior surfaces of the first and second flanges of the mounting bracket.  The drawing below provides a different view of the orange wedge-shaped space between the first and second flanges of the mounting bracket:



In other words, for a jaw to be "mechanically interengaged with and carried by said bracket for movement between said first and second flanges" as claimed in the '691 Patent, a jaw would have to be located in the orange wedge-shaped space between the first flange and the second flanges.

## V.      THE PROLOCK PRODUCTS

Each of the ProLock Products has three components: a bracket, a lever, and a clamping member.  At issue are two locking assemblies: ProLock Product 1 and ProLock Product 2.

### A.      ProLock Product 1

Each of the ProLock Products has a bracket, a clamping member, and a lever.  The components of the ProLock Product 1 are depicted in an external, isometric view of the ProLock Product 1, which is reproduced below with some annotation:



The ProLock Product 1 includes a bracket with a first and second flange that are located on either side of an intermediate web. Declaration, at 6. The clamping member rotates outside the mounting bracket and the lever handle is used to lock the clamping member into place. The following drawing shows an exploded view of the three parts of the ProLock Product 1:



When the ProLock Product is assembled, the clamping member of the ProLock Product is outside of, and rotates outside of, the flanges of the mounting bracket. See id. at 7. The

clamping member never enters or crosses into the orange wedge-shaped space between the two flanges.  See Declaration, at 7.

### B.    ProLock Product 2

The ProLock Product 2 is similar to the ProLock Product 1; however, it has been modified to incorporate a new feature.  A portion of the clamping member has been removed to provide material for secondary engagement tabs to better grip the utility box after installation for additional security.  See Declaration, 7.  The components of the ProLock Product 2 are depicted in an external, isometric view of the ProLock Product 2, which is reproduced below with some annotation:



removed portion

secondary engagement
tabs

It should be noted that with the removed portion and the secondary engagement tabs, the second ProLock Product is even farther from the wedge-shaped space between the two flanges of the mounting bracket.  Declaration, 8.  Thus, the clamping member of the ProLock Product 2 is outside of, and rotates outside of, the flanges of the mounting bracket.  The clamping member never enters or crosses into the orange wedge-shaped space between the two flanges.  Id.

9

## VI.    THE PROLOCK PRODUCTS DO NOT INFRINGE CLAIM 1 OF THE '691 PATENT

### A.    No Literal Infringement:  The ProLock Products Lack a Jaw That is Interengaged with and Carried by said Bracket for "Movement Between said First and Second Flanges"

The clamping member of each of the ProLock Products does not include a jaw[1] that is carried by the mounting bracket for "movement between" the first and second flanges of the bracket.  Instead, each of the ProLock clamping members is outside of, and rotates outside of, the flanges of the bracket and never cross into the wedge-shaped space between the two flanges.  Declaration, at 7-8.  For the clamping member to be "carried" for "movement between" the flanges the clamping member must be located in or through the wedge-shaped space that separates the flanges.  The clamping members of the ProLock Products are never physically located "between" the first and second flanges since they never are located in the wedge-shaped space that separates the flanges.  *Id.*  Therefore, the ProLock Products do not literally infringe the disputed limitation of claim 1 as neither Product has a jaw that is interengaged with and carried by the bracket for "movement between" the flanges.

### B.    No Infringement Under the Doctrine of Equivalents

"An accused device that does not literally infringe a claim may still infringe under the doctrine of equivalents if each limitation of the claim is met in the accused device either literally or equivalently." *Cybor*, *supra,* at 1459.  "[I]t is axiomatic that the patentee bears the burden of proving infringement."  *Ultra-Tex Surfaces Inc. v. Hill Bros. Chem. Co.,* 204 F.3d 1360, 1364 (Fed. Cir. 1998).  "Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice [to show infringement under the doctrine of equivalents]." *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567

---

[1] The '691 Patent claims a "jaw." Although Defendant does not agree that either of the clamping members of the ProLock Products is a "jaw" as defined in the '691 Patent and prosecution history, for purposes of this Motion only, Defendant does not dispute that its clamping member is a "jaw."

(Fed. Cir. 1996).  Rather, "a patentee must prove substantial identity as to each of the function, way and result prongs of the doctrine of equivalents."  *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1327 (Fed. Cir. 1991).

In the present case, the clamping members of the ProLock Products cannot be equivalents of the claimed jaw interengaged with and carried by the mounting bracket for movement between the first and second flanges.  First, the patentee expressly distinguished its claimed invention and the meaning of "between" when arguing over prior art that the invention claimed in the '691 Patent had to include a jaw that was interengaged with and carried by a mounting bracket <u>between</u> the first and second flanges of the mounting bracket.  Second, the doctrine of claim vitiation precludes reading the claim limitation broadly so as to find the clamping members to be equivalents to the jaw of claim 1.  Third, the clamping members of the ProLock Products do not function in the same way to achieve the same result as the jaw of claim 1.  Finally,

> 1.  <u>Prosecution History Estoppel Precludes the ProLock Clamping Members from being Equivalents of a Jaw Mounted for Movement Between the Flanges</u>.

"Prosecution history estoppel provides a legal limitation on the application of the doctrine of equivalents by excluding from the range of equivalents subject matter surrendered during prosecution of the application for the patent.  The estoppel may arise from matter surrendered as a result of amendments to overcome patentability rejections, <u>or as a result of argument made to secure allowance of a claim</u>."  *Cybor*, *supra*, at 1459 (emphasis added).

In this case, prosecution history estoppel arises because of an argument made by the patentee to secure allowance of claim 1.  During prosecution, the patent examiner issued an Office Action on May 5, 2002 (attached as <u>Exhibit 4</u> to the Declaration) rejecting claim 1 for obviousness over a combination of the Nielsen '811 patent (copy as <u>Exhibit 6</u> to the Declaration) and the Nielsen '829 patent (copy attached as <u>Exhibit 7</u> to the Declaration).  The Examiner considered the Nielsen '811 patent to show a locking assembly having

11

> . . . a bracket 21, [with] first and second flanges 23 and 38 integrally joined by an intermediate web (Figs. 4 and 5) where the intermediate web is interposed between the cover 3 and the upper edge of the side wall 1 . . . .

Declaration, Exhibit 6, at 3.  Figure 4 from the Nielsen '811 patent is reproduced below with the flanges and web of the bracket colored in yellow:



The Examiner admitted that the lock assembly in the Nielsen '811 patent did "not disclose a jaw mechanically interengaged with and carried by a bracket . . . ." but noted that "Nielsen 829 teaches a jaw 56 mechanically interengaged with and carried by bracket 52." *Id.* Figures 2 and 3 from the Nielsen '829 patent are reproduced below with the "jaw" component 56 colored in red and the bracket 52 colored in yellow:



Declaration, Exhibit 7, at 2.  The Examiner concluded that it would have been obvious to one of ordinary skill in the art "to provide the lock of Nielsen 811 with a jaw mechanically interengaged with and carried by a bracket as taught by Nielsen 829, in order to more securely clamp the bracket to the box side wall."  *Id.*

The patentee responded to the rejection by arguing that the component 56 in Nielsen '829 was different from a jaw mounted for movement between flanges of a bracket.  A copy of the response is attached at Exhibit 8 to the Declaration.  The patentee wrote:

> The component 56 in Nielsen '829 is nothing more than a reinforcing block fixed to a leg 58 of a back plate 52.
>
> As such, it is not moveable with respect to the back plate, and its function is merely to coact in threaded engagement with the cap screw 56 while strengthening the relatively thin side wall 16.  Attaching the block 56 of Nielsen '829 to either of the flanges 23, 38 of Nielsen '811 would serve no useful purpose other than perhaps to add strength.  It certainly would not serve as a jaw mounted for movement between the flanges.

Declaration, Exhibit 8, at 3 (emphasis in original).  By argument, the patentee distinguished structures that are not mounted for movement between the flanges from the claimed jaw element.

13

As a matter of law, the patentee should now be estopped from asserting that any structure that is not "mounted for movement between the two flanges" can be an equivalent. Because the clamping members of the ProLock Products are not mounted for movement between the flanges, but rather are located outside the flanges with the clamping member never crossing into the wedge-shaped space between the first and second flanges, the clamping members of the two ProLock Products are not equivalents of a jaw that is "mounted for movement between" the two flanges.

    2. <u>Claim Vitiation Doctrine Precludes Finding the Clamping Members of the ProLock Products to be Equivalents</u>.

  As a matter of law, the clamping members of the ProLock Products cannot be equivalents of a jaw mounted for movement between the flanges because doing so would "vitiate" the "movement between" limitation of claim 1.

  The Federal Circuit has consistently held that claim limitations expressly restricting a component to a particular location in a device (such as the "movement between said first and second flanges" limitation in the '691 Patent) would be vitiated if the doctrine of equivalents is used to extend the claim limitation to encompass or cover a clamping member that is not located "between" the two flanges. In *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420 (Fed. Cir. 1997), the Federal Circuit considered whether a patent claim directed to a hazardous medical waste disposal container was infringed under the doctrine of equivalents. The patent claim required "an elongated slot at the top of the container body" and a "constriction extending over said slot." See *Id.*, 126 F.3d at 1422. The accused product had a slot that was located in the interior of the container rather than at the top of the container and two constrictions below the top of the container. *See Id.* at 1423-24. The Federal Circuit upheld a finding of no infringement under the doctrine of equivalents, concluding that a finding of equivalency would vitiate the "slot at the top of the container body" and "extending over said slot" limitations. *See Id.* at 1424-26.

"[T]he doctrine of equivalents does not grant Sage license to remove entirely the "top of the container" and "over said slot" limitations from the claim." *Id.* at 1474. "Because this patent contains clear structural limitations, the public has a right to rely on those limits in conducting it business activities." *See Id.* at 1425.

Another location-related claim limitation was at issue in *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309 (Fed. Cir. 1998). In *Ethicon*, the patent related to surgical staplers and, specifically, a "lockout mechanism" used to prevent the user from discharging the stapler without first inserting a new cartridge. *See* 149 F.3d at 1311. The patent claim recited that the lockout mechanism was "connected to . . . [the] longitudinal slots" in the cartridge. *See Id.* In the accused product, the lockout mechanism was "located at the distal end of the [unit,] nowhere near the longitudinal slots . . . ." *Id.* at 1318. *Id.* The Federal Circuit affirmed summary judgment of noninfringement under the doctrine of equivalents. *Id.* at 1318-19.

Similar to the claim elements in *Sage* and *Ethicon*, the claim element at issue in the present case specifies a particular location within which the claimed jaw moves -- between the first and second flanges of the bracket. To find a jaw that does not move between the flanges of the bracket to be an equivalent to a jaw that does move between the flanges would simply eliminate the "movement between" language from claim 1 of the '691 patent.

The Federal Circuit has applied the claim vitiation doctrine more recently in *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005). In *Freedman*, the Federal Circuit considered whether a patent relating to a stowable seat was infringed by the defendant's seat. The patent claim required a seat with a support member having a moveable end "slidably mounted" to the seatbase. 420 F.3d at 1353. The moveable end of the support member in the accused device was "rotatably mounted to the seatbase" and did "not slide or otherwise move along the seatbase." *Id.* at 1354. The Federal Circuit held that "the district court's finding of

infringement under the doctrine of equivalents had the effect of entirely vitiating the 'slidably mounted' limitation." *Id.* at 1361. The Federal Circuit noted:

> Freedman's argument would mean that any support member capable of allowing translational and rotational motion would be equivalent to a support member "slidably mounted to said seatbase," which reads "slidably mounted" completely out of the claims. This is the precise type of overextension of the doctrine of equivalents that the claim vitiation doctrine is intended to prevent.

*Id.* at 1362. In claim 1 of the '691 Patent, the term "interengaged with and carried by said bracket for movement between said first and second flanges" is a clear structural limitation that competitors, such as Defendant, are entitled to rely on in conducting their business.

>    3.    The ProLock Clamping Members Operate in a Substantially Different Way from a Jaw that is Interengaged with and carried by the mounting bracket for Movement Between the Flanges.

The clamping members of the ProLock Products also operate in a different way than the jaw of claim 1 of the '691 Patent. The jaw of claim 1 that moves "between" the flanges of the bracket, acting in concert with the first flange of the mounting bracket, compresses or crushes the sidewall of the utility box. See Declaration, at 8. The clamping members of the ProLock Products, however, are not mounted for movement between the flanges of the bracket, but are instead located outside of the flanges of the mounting bracket,. Thus, the clamping members of the ProLock Products, acting in concert with the first flange of the mounting bracket, places portions of the sidewall of the utility box in sheer and in bending rather than in compression. See id. at 9. As a result, the clamping members operate in a substantially different way from a jaw that is interengaged with and carried by the mounting bracket for movement between the flanges of the bracket, and thus, is not an equivalent. See id..

16

## VII.    CONCLUSION

Based on the foregoing, Defendant DeWalch Technologies hereby prays that the Court enter an Order from the Court that the ProLock Products do not infringe the '691 patent either literally or under the doctrine of equivalents.  A Proposed Order is attached.

Respectfully Submitted,

DEWALCH TECHNOLOGIES, INC.
By its attorneys,

/s/ Denise W. DeFranco
_____

Denise W. DeFranco BBO# 558859
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
(617) 832-1202

Peter E. Mims
Texas Bar No. 14173275
David K. Wooten
Texas Bar No. 24033477
VINSON & ELKINS, L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, TX 77002-6760
713-758-2732

Dated:  May 19, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document has been served upon the attorney of record for the other party by hand on May 19, 2006.

Mr. Maurice E. Gauthier
Gauthier & Connors LLP
225 Franklin Street, Suite 3300
Boston, Massachusetts 02110

/s/ Denise W. DeFranco
_____
Denise W. DeFranco

18