UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| INNER TITE CORP<br><br>Plaintiff,<br><br>v.<br><br>DEWALCH TECHNOLOGIES, INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.<br>04 40219 FDS |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR**

**SUMMARY JUDGMENT OF PATENT INFRINGEMENT**

                                                         Respectfully submitted,

                                                         Inner-Tite Corp.

                                                         By Plaintiff's attorneys,

Dated: June 16, 2006

                                                         Maurice E. Gauthier, BBO# 187340
            `                                              William E. Hilton, BBO# 559515
                                                         Gauthier & Connors, LLP
                                                         225 Franklin Street, Suite 2300
                                                         Boston, Massachusetts  02110
                                                         (617) 426 - 9180   Ext. 111

Table of Contents

|  |  | Page |
|---|---|---|
| Table of Authorities | | ii |
| I | Both Products Literally Infringe Claim 1 | 1 |
| | A) The Mounting Structure of the Jaw is as claimed | 1 |
| | B) The Operational Movement of the Jaw is as claimed | 2 |
| II. | Both Products Infringe Under the Doctrine of Equivalents | 3 |
| | A) Prosecution History Estoppel Does Not Apply | 3 |
| | B) The Claim Vitiation Doctrine Does Not Apply | 6 |
| | C) The Jaw of Each Product Is Equivalent to the Jaw of Claim 1 | 10 |
| III. | Conclusion | 14 |

```
```

Table of Authorities

Cases:                                                                                                                                      Page

Cordis Corp. v. Medtronic Ave., Inc., 339 F.3d 1352, 67
U.S.P.Q.2d 1876 (Fed. Cir. 2003)                                                                                                            4

Cybor Corporation v. FAS Technologies, Inc., 138 F.3d 1448,
46 U.S.P.Q.2d 1169 (Fed. Cir. 1998)                                                                                                         5

Ericsson, Inc. v. Harris Corporation, 352 F.3d 1369, 69 U.S.P.Q.2d
1109 (Fed. Cir. 2003)                                                                                                                       8

Ethicon Endo-Surgery, Inc. v. United States Surgical Corporation,
149 F.3d 1309, 47 U.S.P.Q.2d 1272 (Fed. Cir. 1998)                                                                                          7, 8

Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,
535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002).                                                                                       9

Freedman Seating Company v. American Seating Company,
420 F.3d 1350, 76 U.S.P.Q.2d 1001 (Fed. Cir. 2005).                                                                                         6

Graver Tank & Mfg. Co. v. Linde Aire Prods. Co., 339 U.S. 605,
70 S.Ct. 854, 94 L.Ed.2d 1097 (1950).                                                                                                       9, 12

Read Corp. v. Portec, Inc., 970 F.2d 816, 23 U.S.P.Q.2d 1426
(Fed. Cir. 1992)                                                                                                                            5

Sage Products, Inc. v. Devon Industries, Inc.,
126 F.3d 1420, 44 U.S.P.Q.2d 1103 (Fed. Cir. 1997).                                                                                         7

Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical, 520 U.S.
17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)                                                                                                  9

Wright Medical Technology, Inc. v. Osteonics Corporation,
122 F.3d 1440, 43 U.S.P.Q.2d 1837 (Fed. Cir. 1997)                                                                                          9

In support of this Opposition, plaintiff relies on the evidence of record file May 19, 2006 as well as Plaintiff's Opposition Statement of Undisputed Facts (PSF) filed herewith.

The single and dispositive issue before this Court is whether defendants' ProLock 1 and ProLock 2 devices include, either literally or under the doctrine of equivalents:

> a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges

as recited in claim 1 of plaintiff's U.S. Patent No. 6,673,691 (the '691 patent), a copy of which is attached to the Stecher Affidavit filed May 19, 2006 (Stecher Affidavit) as Exhibit A, col.4, lines 32 - 34.

This language describes how the jaw is <u>mounted</u>, but not how it moves during a clamping operation. Movement during clamping is described later in the claim as being

> towards said first flange to thereby clamp said side wall therebetween

Stecher Affidavit, Exhibit A, col.4, lines 40 - 41.

In short, a distinction is drawn in claim 1 between how the jaw is mounted, and how it moves to effect clamping.

## I. Both Products Literally Infringe Claim 1

### A) The Mounting Structure of the Jaw is as claimed

As shown by plaintiff in its memorandum in support of summary judgment, the jaw of each of the ProLock 1 and ProLock 2 products is carried by the bracket for

Page 1

movement that contacts the second flange at one extent (X). The jaw of the ProLock 1 product also contacts the first flange at the other extent (Y):



Rafferty Affidavit filed May 19, 2006 (Rafferty Affidavit), ¶5, Exhibit A, and Plaintiff's Statement of Undisputed Facts filed May 19, 2006 (SUF), ¶13 showing the ProLock 1 product:



Rafferty Affidavit, ¶5, Exhibit B and SUF, ¶¶17, 18 showing the ProLock 2 product.

Thus, in each case, the jaw encroaches at least partially into the space that separates the first and second flanges, and is therefore carried by the bracket <u>for movement</u> between the flanges.

### B)   The Operational Movement of the Jaw is as claimed

The operational movement of the jaw is specified in the force exerting means clause of claim 1. This clause states that the force exerting means urges the jaw towards the first flange to thereby clamp the sidewall therebeteen. Both the ProLock 1 and

ProLock 2 products include a jaw that achieves this operational function of being movable towards the first flange to clamp the sidewall between the jaw and the first flange (SUF, ¶ 21, Rafferty Affidavit, ¶4, PSF, ¶¶ 16 and 18).

Plaintiff submits, therefore, that each of the ProLock 1 and ProLock 2 products includes a jaw that is interengaged with and carried by the bracket for movement in a space that separates the first and second flanges such that force may be applied from the second flange against the meter box wall. Each of the ProLock 1 and ProLock 2 products therefore literally infringes claim 1 of the '691 patent.

## II.     Both Products Infringe Under the Doctrine of Equivalents

As stated in plaintiff's memorandum in support of summary judgment, Inner-Tite contends that to the extent that the language of claim 1 at issue, is not literally met by either the ProLock 1 or ProLock 2 products, infringement still exists under the doctrine of equivalents. Defendant asserts that the doctrine of equivalents is not available in this case due to the doctrine of prosecution history estoppel and the doctrine of claim vitiation. Neither of these limitations on the doctrine of equivalents apply in this action.

### A)     Prosecution History Estoppel Does Not Apply

The essence of this estoppel is that a party may not disavow certain subject matter during prosecution, and then seek to recapture the relinquished subject matter through the doctrine of equivalents. Such an estoppel typically arises where an amendment is made to overcome a prior art reference. The estoppel, however, may also apply where an applicant for a patent makes statements that clearly surrender certain subject matter in

such statements. See *Cordis Corp. v. Medtronic Ave., Inc.*, 339 F.3d 1352, 67 U.S.P.Q.2d 1876 (Fed. Cir. 2003) ("To invoke argument-based estoppel, the prosecution history must evince a clear and unmistakable surrender of subject matter"). The estoppel does not arise, as argued by defendant, any time that language of a claim is asserted to distinguish an invention from the prior art.

In an office action mailed on May 8, 2002, claim 1 was rejected over U.S. Patents Nos. 4,080,811 and 4,414,829 (Stecher Affidavit, Exhibit E, pp. IT 00045 - IT 00048). In particular, the examiner stated that the locking assembly of the '811 patent (which did not include a jaw) could have been modified to include a movable jaw as disclosed in the '829 patent (Stecher Affidavit, Exhibit E, pp. IT 00046 - IT 00047). The office action in particular asserted that the reinforcing block 56 was a jaw mechanically interengaged with and carried by a bracket (Stecher Affidavit, Exhibit E, p. IT 00046). As pointed out by the applicant in the amendment filed July 29, 2002, however, the reinforcing block 56 of the back plate 52 was not movable with respect to the strip 58 of the backplate 52 (PSF, ¶¶ 2 - 4, Stecher Affidavit, Exhibit E, pp. IT 00056 - IT 00063).

As shown below in Figure 3 of the '829 patent, the reinforcing block 56 does not move with respect to the backplate 52, but rather is a part of the backplate 52.



PSF, ¶2, and DeWalch Declaration filed may 19, 2006 Exhibit 6, Figure 3.

The specification of the '829 patent clearly states that "[s]trip 58 is riveted to block 56" (PSF, ¶3). The claim required movement of the jaw with respect to the bracket, and the '829 patent failed to disclose a jaw moveable with respect to the bracket (PSF, ¶1 and Stecher Affidavit, Exhibit E, p. IT 00014 ). The scope of claim 1 was not narrowed in any way by this argument over the prior art (PSF, ¶¶ 1, 5, and Stecher Affidavit, Exhibit E, pp. IT 00045 - IT 00048 and IT 00056 - IT 00063).

Moreover, by providing the definition of the term *between*, the applicant also did not narrow the scope of claim 1. The definition is consistent with the ordinary meaning of the word "between" as evidenced by the citation to the dictionary (PSF, ¶6 and Stecher Affidavit, Exhibit IT 00056 - IT 00063). Applicant did not adopt a narrow specific meaning to this word that effected a surrender of any subject matter. See, for example, *Cybor Corporation v. FAS Technologies, Inc.*, 138 F.3d 1448, 46 U.S.P.Q.2d 1169, 1460 (Fed. Cir. 1998) ("The inventor's statements to the PTO regarding the Storkebaum reference, given the marked differences between the reference and the patented and accused devices, do not show the deliberate, unequivocal surrender of all external reservoirs"); and *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 824, 23 U.S.P.Q.2d 1426, 1433 (Fed. Cir. 1992) ("Every statement made by a patentee during prosecution to distinguish a prior art reference does not create a separate estoppel. Arguments must be viewed in context.").

Defendant's ProLock 1 and ProLock 2 products each include a jaw that is carried by the bracket for movement with respect to both the bracket (PSF, ¶¶ 16 and 18). There is no estoppel with regard to the language *between* in claim 1 of the '691 patent that would prevent claim 1 being applied under the doctrine of equivalents to cover

movement of a jaw that is substantially between the first and second flanges (PSF, ¶¶ 1 - 7, and Stecher Affidavit, Exhibit E, pp. IT 00045 - IT 00048 and IT 00056 - IT 00063).

The doctrine of prosecution history estoppel, therefore, does not bar the application of the doctrine of equivalents to defendant's ProLock 1 and ProLock 2 products.

### B)   The Claim Vitiation Doctrine Does Not Apply

The disputed language of claim 1 should be applied under the doctrine of equivalents as:

> a jaw mechanically interengaged with and carried by said bracket for movement *substantially* between said first and second flanges.

Such an application of claim 1 under the doctrine of equivalents does not remove any element from the claims (PSF, ¶8). Plaintiff does not content that *any* movement of the jaw with respect to the first and second flanges would infringe, only that movement *substantially between* the first and second flanges infringes. Such an application of the doctrine of equivalents to claim 1 is not inconsistent with any of the remaining language of claim 1 (PSF, ¶9), does not cause any language of the claims to become meaningless (PSF, ¶9), and does not cause claim 1 to read on any prior art (PSF, ¶10).

Defendant relies on *Freedman Seating Company v. American Seating Company*, 420 F.3d 1350, 76 U.S.P.Q.2d 1001 (Fed. Cir. 2005), in which the court held that a claim limitation to a stowable seat requiring a "movable end slidably mounted to said seatbase" was not met by a device that included a movable end that did not slide or otherwise move along the seatbase. *Id*, 420 F.3d at 1353, 1354. The court held that such a difference was

substantial.  Conversely, in the present case, plaintiff asserts that defendants jaw is carried by the bracket for movement substantially between the flanges.  Plaintiff is not seeking to cover a locking device with a jaw that does not move with respect to the flanges.

> The court in *Freedman* stated that:
>
>> There is no set formula for determining whether a finding of equivalence would vitiate a claim limitation, and thereby violate the all elements rule.  Rather courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless.

*Id*., 420 F.3d at 1359.

Defendant also relies on *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 44 U.S.P.Q.2d 1103 (Fed. Cir. 1997).  In *Sage Products*, the court held that a claim to a disposable container (for hazardous medical waste) that included the language "an elongated slot at the top of the container body" could not be met under the doctrine of equivalents by a device that included a space between elements (argued to be a slot) that was not "substantially 'at the top of the container body'" *Sage Products*, 126 F.2d at 1424.  The court in Sage Products confirmed that the doctrine of equivalents is concerned with the substantiality of the differences.  In the present case, the difference between *movement between* and *movement substantially between* is insubstantial.

In *Ethicon Endo-Surgery, Inc. v. United States Surgical Corporation*, 149 F.3d 1309, 47 U.S.P.Q.2d 1272 (Fed. Cir. 1998), the court held that an assertion of infringement of a claim relating to a staple cartridge requiring an element (a lockout) to be connected to a longitudinal slot could not be met by a device having a lockout at an

opposite end of the device. The court, in fact, stated that the lockout in the accused device was "nowhere near the longitudinal slots which are located in the staple cartridge at the front end of the stapler" *Ethicon*, 149 F.3d at 1318. The court concluded that the accused lockout was "not even close to the longtudinal slots" *Ethicon*, 149 F.3d at 1319.

The *Ethicon* case also involved a second patent, and the court decided that the district court's determination of non-infringement under the doctrine of equivalents was improper with regard to the second patent. The second patent included a claim to a surgical stapler and required "a restraining structure for blocking said barrier assemblage ... *during staple firing*". *Id*., 149 F.3d at 1312 (*emphasis added*). The court held that this language may be met under the doctrine of equivalents by a restraining structure that loses contact with the barrier just prior to staple firing. The court noted that the physical difference between the claimed and accused devices "translates into a 'very slight', 'very quick' temporal difference, a period that is perhaps as short as a few thousandths of a second." *Id*., 149 F.3d at 1321.

The court in *Ethicon* made it clear that an infringement analysis depends on the *substantiality of the differences*, not whether the claim language literally reads on the accused device as this is the province of the literal infringement analysis. If the all-elements rule were applied in any instance where the accused device did not literally meet every limitation of the claim, then the all-elements rule would "swallow the doctrine of equivalents, reducing the application of the doctrine to nothing more than a repeated analysis of literal infringement". *Ethicon, supra*, 149 F.3d at 1317. Infringement actions such as this, however, where the accused device substantially meets the literal language of the claims, are entirely appropriate for application of the doctrine of equivalents,

which the Supreme Court of the United States has repeated upheld as an important viable doctrine. *Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002), *Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997), and *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed.2d 1097 (1950).

The present case, in fact, is more analogous to *Wright Medical Technology, Inc. v. Osteonics Corporation*, 122 F.3d 1440, 43 U.S.P.Q.2d 1837 (Fed. Cir.1997). In *Wright Medical*, the court held that a claim to a distal femur surface shaping guide that required "an intramedullary rod portion adapted to closely fit in and extend through the narrowest portion of the human femur" could be met under the doctrine of equivalents by a device that included a rod portion that did not tightly fit into and extend all the way through the isthmus of the femur. The action was remanded for a determination of whether the accused rod portion was equivalent, i.e., substantially the same.

The present action is also more analogous to *Ericsson, Inc. v. Harris Corporation*, 352 F.3d 1369, 69 U.S.P.Q.2d 1109 (Fed. Cir. 2003) (reversing a finding that the all-elements rule bars the application of the doctrine of equivalents, and determining that the record supports a finding of infringement under the doctrine of equivalents). The claim limitation at issue in *Ericsson* involved to a telephone power supply apparatus that required that speech signal amplifiers *only* supply power to the telephone set when the receiver is off its cradle. *Id*, 352 F.3d at 1374. The accused device supplied some power to the telephone set in the on-hook position under certain conditions that amounted to approximately 0.1% of the time. The court explained that while the doctrine of

equivalents could not be stretched to cover a device that *always* supplied some power, it could be applied to cover the accused device.

Again, plaintiff is not asserting that claim 1 should be applied under the doctrine of equivalents to cover lock assemblies in which a jaw does not move with respect to the flanges, or in which a jaw moves nowhere near the flanges. Instead, plaintiff is asserting that the claim covers lock assemblies in which the jaw moves substantially between the flanges. The claim vitiation doctrine, therefore, also does not bar the application of the doctrine of equivalents to defendant's ProLock 1 and ProLock 2 products.

### C) The Jaw of Each of the Products Is Equivalent to the Jaw of Claim 1

Lastly, defendant argues that it's locking devices are not equivalent to the locking devices of claim 1 because the use of a jaw that allegedly is carried for movement just outside of the area between the first and second flanges is not equivalent to a jaw that is carried for movement literally between the first and second flanges. Defendant seeks to support this argument, in part, by arguing that the force exerted by defendant's jaws provide a sheer force on the wall rather than a compression force as would result from exactly oppositely opposing forces.

The use of directly opposing or non-directly opposing forces is insignificant to the function of having the jaw engage the side wall of the meter box (PSF, ¶¶ 12 and 14). As stated by Robert Rafferty in the affidavit filed May 19, 2006:

> The fact that the jaw may not be precisely aligned with the first flange does not in any way detract from the fact that the jaw presses against the side wall generally opposing the force provided by the first flange.

Rafferty Affidavit, ¶11.

Page 10

The result achieved by defendant's jaws is to coact with the first flange and force exerting means to achieve the function of securing the bracket to the meter box wall (SUF, ¶21 and Rafferty Affidavit, ¶12).

Moreover, the '691 patent discloses several different embodiments of the invention. Figures 4, 6A and 6B of the '691 patent show embodiments in which the jaws directly oppose the first flange, resulting in compressive forces against the meter box wall (PSF, ¶11). Figures 2 and 5A - 5B of the '691 patent, however, show embodiments in which teeth on the jaw cause a force to be applied to the meter box wall that is not directly opposed by the first flange (PSF, ¶13).

As shown below, for example, in Figure 5B, the forces from the first flange that oppose the force from the tooth on the jaw are offset from one another:



Stecher Affidavit, Exhibit A, Figure 5B. These non-directly opposing forces result from the fact that the bend in the first flange does not precisely conform to the surface of the meter box wall (PSF, ¶¶ 13 and 14). The embodiment of Figure 2 also shows a locking device that employs non-directly opposing forces to clamp the side wall (PSF, ¶13).

Page 11

Each of the embodiments of the invention is covered by claim 1 (PSF, ¶15). Two of the embodiments show the use of directly opposing forces and two show the use of non-directly opposing forces (PSF, ¶¶ 11 - 14). The difference is insignificant as each is employed to clamp the side wall between the jaw and the first flange (PSF, ¶¶12 and 14).

The fact that embodiments with directly opposing and non-directly opposing forces are disclosed in the '691 patent, supports that such minor variations are fully considered to be within the spirit and scope of the invention. The argument, therefore, that a slightly offset compressive force, such as might be provided by non-directly opposing elements, is substantially different than a direct compression force is unavailing.

Infringement under the doctrine of equivalents is appropriate where the accused device performs substantially the same function in substantially the same way to achieve substantially the same result. *Graver Tank*, *supra*. As stated in plaintiff's memorandum, the function of the jaw of the lock assembly of claim 1 of the '691 patent is to press against the side wall of the meter box generally opposing the force provided by the first flange (Rafferty Affidavit, ¶2). This function is entirely consistent with the remaining limitations of the claim, including that the jaw be located adjacent an interior surface of the side wall and that the first flange be located adjacent an exterior surface of the side wall. The jaw of each of the ProLock 1 and ProLock 2 products presses against the side wall generally opposing the first flange (Rafferty Affidavit, ¶10, PSF, ¶17 and 19). The fact that the jaw may not be precisely aligned with the first flange does not in any way detract from the fact that the jaw is urged against the side wall generally opposing the force provided by the first flange (Rafferty Affidavit, ¶11).

The way (or structure) by which this function is achieved is by a rigid element that attaches to the bracket and is movable toward the side wall of the meter box (Rafferty Affidavit, ¶3). Again, this is entirely consistent with the remaining language of the claims (PSF, ¶9). The jaw of each of the ProLock 1 and ProLock 2 products is a rigid element that attaches to the bracket and is movable toward the side wall of the meter box. (Rafferty Affidavit, ¶12, PSF, ¶¶ 16 and 18).

The result thereby achieved by the jaw is to secure the bracket to the meter box side wall using the force exerting means (Rafferty Affidavit, ¶4, and PSF, ¶¶ 17 and 19). This is also consistent with the force exerting means language of claim 1, which states "force exerting means for urging said jaw towards said first flange to thereby clamp said side wall therebetween" (Stecher Affidavit, Exhibit A, col.4, lines 40 - 41). The first flange, jaw and force exerting means of each of the ProLock 1 and ProLock 2 products cooperate to achieve the result of securing the bracket to the meter box side wall. (Rafferty Affidavit, ¶13).

For at least these reasons, therefore, each of the ProLock 1 and ProLock 2 products includes the equivalent of a jaw mechanically interengaged with and carried by the bracket for movement between the first and second flanges.

### III.    Conclusion

For the reasons stated above, plaintiff Inner-Tite Corp. requests that this court find that defendant's ProLock 1 and ProLock 2 products each infringe claim 1of the '691 patent.

Respectfully submitted,

Inner-Tite Corp.

By Plaintiff's attorneys,

___/s/ William E. Hilton_____

Dated: June 16, 2006

Maurice E. Gauthier, BBO# 187340
William E. Hilton, BBO# 559515
Gauthier & Connors, LLP
225 Franklin Street, Suite 2300
Boston, Massachusetts  02110
(617) 426 - 9180   Ext. 111

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper copies will be sent to persons indicated as non-registered participants on June 16, 2006 by First Class Mail.

_____/s/William E. Hilton_____
William E. Hilton