IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INNER-TITE CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 04-40219 FDS |
| | § | |
| DEWALCH TECHNOLOGIES, INC., | § | |
| | § | |
| Defendants. | §. | |

## DEFENDANT'S MOTION AND MEMORADUM TO STRIKE EVIDENCE IN RAFFERTY AFFIDAVIT

Defendant files this Defendant's Motion and Memorandum to Strike Evidence in Rafferty Affidavit pursuant FED. R. EVID. 702.

### Introduction

Plaintiff has offered the Affidavit of Robert E. Rafferty ("Rafferty Affidavit") in support of Plaintiff's Motion for Summary Judgment. Attached to the Rafferty Affidavit are drawings that purport to depict the ProLock Products 1 and 2 sold by Defendant. In the Rafferty Affidavit, Rafferty states he reviewed the ProLock Products 1 and 2 provided by Defendant to Plaintiff, and based on measurements taken from the products, created AutoCAD drawings attached to his Affidavit.

As explained below, the drawings attached to the Rafferty Affidavit do not accurately depict the operation of the ProLock Products 1 and 2. A review of the drawings in comparison with the ProLock Products as seen in the drawings provided by Defendant demonstrate the unreliability of the drawings attached to the Rafferty Affidavit. More importantly, the inaccuracies are material to the issues in this case as the drawings inaccurately depict how the clamping member of the ProLock Products work in the products.

1

## Legal Discussion

Trial courts have a special obligation to ensure that all expert testimony is not only relevant, but also reliable. *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 580-81 (5th Cir. 2001); *accord Daubert v. Merrell Dow Pharm., Inc.*, 113 S. Ct. 2786, 2795 (1993) (hereafter *"Daubert I,"*); *Marcel v. Placid Oil Co.,* 11 F.3d 563, 567 (5th Cir. 1994). The trial court's responsibility toward expert testimony is defined by FED. R. EVID. 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) <u>the testimony is based upon sufficient facts or data,</u> (2) the testimony is the product of reliable principles and methods, and (3) <u>the witness has applied the principles and methods reliably to the facts of the case</u>.

FED. R. EVID. 702 (emphasis added). Rule 702 imposes four requirements on expert testimony:

(1)    the witness must be qualified to be an expert;

(2)    the proposed testimony must be scientific, technical, or other specialized knowledge;

(3)    <u>the testimony must be reliable</u>; and

(4)    the testimony must assist the trier of fact to understand the evidence or to determine a fact issue.

*See* FED. R. EVID. 702; *Daubert I*, 113 S. Ct. at 2795-96.

In the present case, the expert testimony is not reliable. Particularly, the drawings do not reliably or accurately depict the ProLock Products as installed on a meter box. As a result, the drawings and the conclusions in Rafferty Affidavit should be stricken.

1.     **The drawings attached to the Rafferty Affidavit as Exhibit A are not true and accurate representations of the ProLock Product 1.**

A.     Picture 3A of Exhibit A purports to show the ProLock Product when it is clamped in place. Picture 3A is inaccurate because it does not show the front edge of the two side panels

of the clamping member in contact with the inner wall of the utility box. Instead, Picture 3A incorrectly shows the lower panel of the clamping member in direct contact with the inner wall of the utility box:



In the ProLock Product 1, the front edges of the two side panels of the clamping member, acting in concert with the pressure of the first flange on the exterior of the side wall of the utility box, place the side wall of the utility box in sheer and bending, thereby clamping the ProLock Product 1 in place upon the utility box. The photograph below of the ProLock Product 1 makes clear that the side panels, and not the lower panel, are in contact with the inner side wall of the utility box:



Supplemental Declaration of Binz DeWalch, at ¶9 (hereafter "Supplemental Declaration").

Thus, Picture 3A misrepresents the ProLock Product 1 by showing the front edges of the side

panels of the clamping member not in contact with the inner wall of the utility box. See id., at ¶¶

9 – 13.  Similarly, Picture 3A of Exhibit A is inaccurate because it shows the front edge of the

lower panel in contact with the inner wall of the utility box and compressed against the ledge on

the inner wall of the utility box.   The ProLock Product has been designed to include a gap

between the lower panel of the clamping member and the side wall of the utility box to

accommodate variations in the dimensions of utility boxes from various manufacturers.  This gap

can be seen in the photographs of the installed ProLock Product 1. See, id., at ¶¶ 4 & 9.   These

inaccuracies are material to the infringement issue because the Rafferty drawings fail to show

that the side panel of the clamping member is what actually clamps the ProLock Product 1 on to

the utility box.

      B.     Pictures 1, 2A, 3A and 3B of Exhibit A are inaccurate and thus unreliable because

the pictures do not show the pins of the bracket of the ProLock Product 1.  The position of the

pins determines the path of the movement of the two side panels and the lower panel, and their absence in this picture contributes to an inaccurate depiction of the operation of the ProLock Product 1. Other dimensional inaccuracies in the angle between the first and second flanges and the shape of the front edge of the side panels contribute to the inaccuracy of the drawings of the ProLock Product 1. See id., at ¶ 10.

C.     Pictures 2A and 2B of Exhibit A show the ProLock Product 1 without a lever. The ProLock Product 1 has a lever. In actual operation, it is not possible for the clamping member to touch the second flange of the mounting bracket because the lever is in between the clamping member and first flange. See, id., at ¶¶ 11 & 14.

2.     **The drawings attached to the Rafferty Affidavit as Exhibit B are not true and accurate representations of the ProLock Product 2.**

A.     Picture 3A of Exhibit B purports to show the ProLock Product 2 when it is clamped in place. Picture 3A is inaccurate because it does not show the front edge of the two side panels of the clamping member in contact with the inner wall of the utility box. Instead, Picture 3A incorrectly shows the lower panel of the clamping member in direct contact with the inner wall of the utility box:



In the ProLock Product 2, the front edges of the two side panels of the clamping member, acting in concert with the pressure of the first flange on the exterior of the side wall of the utility box, place the side wall of the utility box in sheer and bending, thereby clamping the ProLock Product 1 in place upon the utility box. The photograph below of the ProLock Product 2 makes clear that the side panels, and not the lower panel, are in contact with the inner side wall of the utility box:



See, id., at ¶ 12. Thus, Picture 3A misrepresents the ProLock Product 2 by showing the front edges of the side panels of the clamping member not in contact with the inner wall of the utility box. See, id.. Similarly, Picture 3A of Exhibit A is inaccurate because it shows the front edge of the lower panel in contact with the inner wall of the utility box and compressed against the ledge on the inner wall of the utility box. The ProLock Product 2 has been designed to include a gap between the lower panel of the clamping member and the side wall of the utility box to accommodate variations in the dimensions of utility boxes from various manufacturers. This gap can be seen in the photographs of the installed ProLock Product 2. See id., at ¶¶ 4 & 12. These inaccuracies are material to the infringement issue because the Rafferty drawings fail to show that the side panel of the clamping member is what actually clamps the ProLock Product 2 on to the utility box and, the side panel of the clamping member is not "between" the first and second flanges.

       B.      Pictures 1, 2A, 3A and 3B of Exhibit B are inaccurate and thus unreliable because the pictures do not show the pins of the bracket of the ProLock Product 2. The position of the

pins determines the path of the movement of the two side panels and the lower panel, and their absence in this picture contributes to an inaccurate depiction of the operation of the ProLock Product 2. Other dimensional inaccuracies in the angle between the first and second flanges and the shape of the front edge of the side panels contribute to the inaccuracy of the drawings of the ProLock Product 2. See id., at ¶ 13.

C.      Pictures 2A and 2B of Exhibit B show the ProLock Product 2 without a lever. The ProLock Product 2 has a lever. In actual operation, it is not possible for the clamping member to touch the second flange of the mounting bracket because the lever is in between the clamping member and first flange. See, id., at ¶ 14.

**3.      Because of the unreliability of the drawings attached to the Rafferty Affidavit as Exhibit B, the conclusions and opinions based on the drawings should be stricken.**

The opinions and factual statements provided in the Rafferty Affidavit should be also stricken because they are based on the unreliable drawings. For example, the opinions of Rafferty regarding the "jaw" of the ProLock Products is necessarily unreliable because it is based on the lower panel of the clamping member acting as a jaw and operating as shown in the drawings. See Rafferty Affidavit, ¶¶ 10-13.

## Conclusion

The drawings and opinions in the Rafferty Affidavit regarding the operation of the ProLock Products are not accurate or reliable. Although the Rafferty Affidavit does not describe the details of the methodology used to create the drawings, given the results of the method – drawings that are inaccurate with respect to material aspects of the ProLock Products – the Court should strike the drawings as unreliable expert testimony, and not consider the drawings and the opinions evidence of how the ProLock Products operate. Accordingly, Defendant moves that the

Court strike the Rafferty Affidavit and the attached drawings, and not consider such evidence in connection with the summary judgment motions.

Respectfully submitted,

DEWALCH TECHNOLOGIES, INC.
By its attorneys

/s/ Denise W. DeFranco

_____

Denise W. DeFranco
BBO 558859
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Phone:  617.832.1202
Facsimile:  617.832.7000


Peter E. Mims
Texas Bar No. 14173275 – Admitted pro hac vice
VINSON & ELKINS, LLP
2300 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760
Phone:  713.758.2732
Facsimile:  713.651.5703


## Certificate of Compliance With Local Rule 7.1

Pursuant to Local Rule 7.1, I hereby certify that I conferred with William E. Hilton, counsel for Plaintiff, with respect to issues raised in this motion and that we were unable to reach agreement regarding same.

/s/ Denise W. DeFranco

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the NEF.

/s/ Denise W. DeFranco