IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INNER-TITE CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 04-40219 FDS |
| | § | |
| DEWALCH TECHNOLOGIES, INC., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Denise W. DeFranco BBO# 558859
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
(617) 832-1202

Peter E. Mims
Texas Bar No. 14173275
VINSON & ELKINS, L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, TX 77002-6760
713-758-2732

ATTORNEYS FOR DEFENDANT,
DEWALCH TECHNOLOGIES, INC.

**TABLE OF CONTENTS**

I.   **Background** ................................................................................................................1

   A.   Procedural History...............................................................................................1

   B.   Summary of Argument ........................................................................................2

   B.   Factual Background.............................................................................................3

    i. ProLock Products................................................................................................3

   C.   Law of Claim Construction.................................................................................8

II.  **Legal Analysis** ..........................................................................................................**9**

   A.   Claim Construction .............................................................................................9

   B.   No Literal Infringement.....................................................................................14

    i. The Lower Panel of the Clamping Member of the ProLock Products Is Not a "Jaw"
    "Carried for Movement Between said First and Second Flanges" .......................14

   C.   No Infringement Under the Doctrine of Equivalents .......................................16

    i. Prosecution History Estoppel Precludes the Lower Panel of the Clamping Members of the
    ProLock Products from Being an Equivalent. ....................................................17

    ii. Claim Vitiation Precludes Doctrine of Equivalents.......................................17

    iii. The Lower Panel of the Clamping Member of the Prolock Products Operate in a
    Substantially Different Way from a "Jaw that is Mechanically Interengaged With and
    Carried by Said Bracket for Movement Between Said First and Second Flanges."............19

III. **Conclusion** ..............................................................................................................**20**

## TABLE OF AUTHORITIES

**Cases**

*Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.,* 757 F.2d 255 (Fed Cir. 1985).........17

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309 (Fed. Cir. 1998)..................18

*Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005)................18, 19

*Haynes v. Jessop,* 8 F.3d 1573 (Fed Cir. 1993)..........................................................................17

*Holmes Group, Inc. v. RPS Products, Inc.,* 2006 U.S. Dist. LEXIS 13737 (D. Mass. 2006).......19

*Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861 (Fed Cir. 1985) ...................................................16

*Phillips v. AWH Corp.*, 415 F. 3d 1303, 1313 (Fed. Cir. 2005)(*en banc*) .....................................8

*Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420 (Fed. Cir. 1997)....................................18

*Teleflex Inc. v. Ficosa North America Corp.*, 299 F. 3d 1313, 1324 (Fed. Cir. 2002)...................8

## I.    Background

### A.    Procedural History

Plaintiff Inner-Tite Corporation ("Inner-Tite") brought the present patent infringement action against Defendant DeWalch Technologies, Inc. ("DeWalch") alleging that DeWalch's utility box locking assemblies (the "ProLock Products") infringe claim 1 of U.S. Patent No. 6,763,691 (the '691 Patent).    DeWalch denies infringement.    As noted in Plaintiff's Memorandum in Support of Motion for Summary Judgment on Patent Infringement ("Plaintiff's Memorandum"), the parties have narrowed the issues to the single issue of whether either or both of the ProLock Products, which are specifically described in the confidential DeWalch Drawing Numbers 601049-1, 601049-2, 601050, and 601051 and by the ProLock Products filed with Defendant's Motion for Summary for Judgment, infringe the claim limitation "a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges" of claim 1 of the '691 Patent, either literally or under the doctrine of equivalents.

The parties have agreed that the motions for summary judgment shall be fully dispositive of the remaining issue.    Based on the drawings and products submitted to the Court in Defendant's Motion for Summary Judgment and provided to Plaintiff, Defendant had assumed that there were no disputed genuine issues of material fact as to how the ProLock Products operate, and that the claim construction and application of prosecution history estoppel and claim vitiation doctrines would be outcome determinative of this case. The devices shown in drawings attached to the Rafferty Affidavit, however, do not reflect the true operation of the ProLock Products, and thus the parties are offering conflicting evidence that could preclude summary judgment under Rule 56.

If there is a genuine issue of material fact, the Court will have to conduct a trial on the factual issue. In this regard, Defendant notes that Plaintiff "anticipates offering testimony at the July 26 hearing." Plaintiff's Memorandum, at 2. Live testimony is not permissible with respect to the cross motions for summary judgment under Rule 56. Accordingly, Defendants propose that this Court first determine if there is a basis for ruling as a matter of law on patent infringement based on the cross-motions filed with the Court. If the Court determines that there is a genuine issue as to any material fact, Defendant proposes the Court separately schedule a trial on the merits on the genuine issue of material fact or, for judicial economy, conduct such a trial on the merits at the July 26 hearing, provided the Court informs the parties in advance of the July 26 hearing.

## B.    Summary of Argument

Plaintiff's Motion should be denied because the ProLock Products do not have "a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges." Based on inaccurate drawings of the ProLock Products, Plaintiff argues the lower panel of the clamping member is a jaw. The lower panel is not a jaw as it does not compress or grip the side wall of utility box when the ProLock Product is installed. Moreover, Plaintiff's argument in the prosecution history that the structure in the Redmayne reference is not a jaw estops Plaintiff from now arguing the lower panel of the clamping member is a jaw. Moreover, the parties both agree that the proper construction of the term "between" is "in or through the space that separates." The lower panel never enters or crosses into the wedge-shaped space between the two flanges. Inner-Tite appears to argue that the term "between" should be watered down to relate to "relative movement of the jaw from the second flange toward the first flange," Memorandum, at 9, or simply "moveable toward the side wall of the

2

meter box." Memorandum, at 19. Each of these suggestions vitiates the claim limitation "between" as the lower panel of the clamping member is not "between" the two flanges.

Plaintiff completely ignores the operation of the two side panels of the clamping member in its Motion for Summary Judgment. As shown in Defendant's summary judgment evidence, the front edges of the two side panels, acting in concert with the pressure of the first flange on the exterior of the side wall of the utility box, place the side wall of the utility box in sheer and bending, thereby "clamping" the ProLock Products in place upon the utility box. Plaintiff does not contend – nor can it – that the two side panels are "between" the first and second flange. The two side panels of the clamping member are each outside of, and rotate outside of, the first and second flanges of the mounting bracket. The two side panels of the clamping member never enter or cross into the wedge-shaped space between the two flanges.

## C.      Factual Background

Defendant objects to and disputes many of the alleged facts in Plaintiff's Statement of Undisputed Facts in Support of Patent Infringement. Defendant has filed Defendant's Response to Plaintiff's Statement of Undisputed Facts ("Defendant's SUF Response"), identifies those Statements of Fact that are disputed. In Defendant's SUF Response, Defendant has also offered certain undisputed facts regarding the operation of the ProLock Products 1 and 2. Not only does Defendant dispute these facts, Defendant has filed a Motion and Memorandum to Strike Evidence in Rafferty Affidavit.

### i. ProLock Products

Each of the ProLock Products has a mounting bracket, a clamping member, and a lever. See Supplemental Declaration, at ¶3. The mounting bracket consists of a bracket with first, second, and third flanges, connected by intermediate webs; the clamping member consists of two

3

side panels and a lower panel and is connected by pins to the mounting bracket for rotation outside of the mounting bracket; and the lever is also connected by pins to the mounting bracket so as to allow the user to apply force to the clamping member and clamp the ProLock Products in place on the utility box. See Supplemental Declaration, at ¶3. The difference in the ProLock Product 2 is that a portion of the lower panel of the clamping member has been removed to provide material for secondary engagement tabs for additional to abut the ledge on the inner wall of utility box after installation for additional security. See id., at ¶ 4.

The ProLock Products are clamped in place by pushing down on the lever to force the front edges of the two side panels of the clamping member into contact with the wall of the utility box outside of the first flange of the mounting bracket. Here is the ProLock Product 1:



See Supplemental Declaration, at ¶4. The two side panels of the clamping member are each outside of, and rotate outside of, the first and second flanges of the mounting bracket. Id. In this

4

regard, the two side panels that serve to clamp the ProLock Products in place on the utility box are not "between" the first and second flanges of the mounting bracket. The front edges of the two side panels, acting in concert with the pressure of the first flange on the exterior of the side wall of the utility box, place the side wall of the utility box in sheer and bending, thereby clamping the ProLock Products in place upon the utility box. Id. These forces are indicated by the green arrows in the photographs above and below of the installed ProLock Products. The two side panels of the clamping member never enter or cross into the wedge-shaped space between the two flanges. Id. In the ProLock Product 2 shown below, a portion of the lower panel of the clamping member has been removed to provide material for secondary engagement tabs, but again the two side panels of the clamping member similarly act in concert with the first flange to clamp the ProLock Product 2 in place upon the utility box:



As can be seen above, the lower panel of the clamping member of each of the ProLock Products does not "grip or crush" like the jaw of the '691 Patent. The ProLock Product has been designed

to include a gap between the lower panel of the clamping member and the side wall of the utility box to accommodate variations in the dimensions of utility boxes from various manufacturers. Id. This gap can be seen in the circles shown on the photographs above of the installed ProLock Products. Id. The function of the front edge of the lower panel of the clamping member is to provide additional security in the event that pressure is applied to pry open the utility box. In the event that pressure is applied to pry open the utility box, the front edge of the lower panel of the clamping member would be urged into abutment with the ledge of the side wall of the utility box. Id. The secondary engagement tabs of the ProLock Product 2 provide additional security to prevent someone from prying open the utility box. In the event that pressure is applied to pry open the utility box, the engagement tabs of the ProLock Product 2 would be urged into abutment with the ledge of the side wall of the utility box. Finally, the lower panels of the clamping members of the ProLock Products are not "between" the first and second flanges. The two side panels of the clamping members never enter or cross into the wedge-shaped space between the two flanges. Id.

There are three steps in the installation of the ProLock Products. First, the ProLock Product is placed on the wall of the utility box without the lever exerting any force on the clamping member. See Supplemental Declaration, at ¶5. It should be noted that the front edges of the two side panels make contact with the side wall of the utility box outside of the first and second flanges of the mounting bracket. Next, the lever is depressed to push the front edges of the two side panels of the clamping member into contact with the side wall of the utility box by the side panels rotating outside of the mounting bracket and to bring the first flange in contact with the outside wall of the utility box. See Supplemental Declaration, at ¶6. Next, once the front edges of the two side panels of the clamping member are in contact with the side wall of

6

the utility box, additional force placed on the lever pushes the front edges of the two side panels against the interior of the side wall of the utility box, and this force on the side panels, acting in concert with the pressure of the first flange on the exterior of the side wall of the utility box, places the side wall of the utility box in sheer and bending, thereby clamping the bracket in place upon the utility box. See Supplemental Declaration, at ¶7.

As set forth in the Motion to Strike, the ProLock Products do not operate as shown in the drawings attached to the Affidavit of Robert E. Rafferty (the "Rafferty Affidavit"). The evidence offered by Rafferty is unreliable as it directly contradicts how the ProLock Products operate as shown in the photographs attached to the Supplemental Declaration. More specifically, the Rafferty drawings incorrectly show the lower panel of the clamping member in contact with the inside wall of the utility box and the front edges of the side panels of the clamping member as not in being in contact with the inside wall of the utility box. Compare Rafferty Affidavit, Ex. A, Picture 3A & Ex. B, Picture 3A with Supplemental Declaration, at ¶¶ 9 & 12. There are a number of inaccuracies in the drawings apparent from a visual inspection alone, See Supplemental Declaration, at ¶¶ 9-14, which are noted in the Motion to Strike and Defendant's Response to Statement of Undisputed Facts. Although the ProLock Parts and the confidential DeWalch Technologies drawings filed with the Declaration and the Defendant's Motion for Summary Judgment were available to Rafferty, there is no mention in the Rafferty Affidavit of any use of the drawings provided to Plaintiff, such as a comparison of the measurements on the DeWalch Technologies drawings to the unknown measurements presumably made by Rafferty. (The Rafferty Affidavit does not state who made the measurements.) In summary, the drawings offered in Rafferty's Affidavit are simply an inaccurate rendering of the ProLock Products.

7

Plaintiff mistakenly argues that the free range of movement of the clamping member is limited at one extreme by contact with the first flange and at the other extreme by contact with the second flange. See Rafferty Affidavit, Ex A, Picture 2A and 2B & Ex B, Picture 2A and 2B.. This analysis is wrong. In the ProLock Products, the free range of movement of the clamping member is limited at one extreme by the lever (and not the second flange) and at the other extreme by the wall of the utility box, or if uninstalled, the web joining the first and third flanges of the mounting bracket. See Supplemental Declaration, at ¶¶ 11 & 14.

### C.    Law of Claim Construction

In claim construction, "the words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1313 (Fed. Cir. 2005)(*en banc*)(internal citation omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art." *Id.* In determining the meaning of disputed claim terms, a court must look primarily to the intrinsic evidence of record, examining the claim language itself, the specification, and the prosecution history, if in evidence. *Teleflex Inc. v. Ficosa North America Corp.*, 299 F. 3d 1313, 1324 (Fed. Cir. 2002). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent . . . , and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, at 1314. Where an applicant argues that a claim possesses a feature that the prior art does not possess in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language." *Seachange Int'l Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1372 (Fed Cir. 2005). "The prosecution history constitutes a public record of the patentee's representations concerning the meaning of the claims, and competitors are entitled to rely on those representations when

8

ascertaining whether their product infringes." *Hockerson-Halberstadt, Inc. v. Avia Group Int'l Incl,* 222 F.3d 951, 957 (Fed Cir. 2000).

## II.    Legal Analysis

### A.    Claim Construction

The disputed claim limitation is "a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges." The parties agree that the meaning of "between" is "in or through the space that separates." See Plaintiff's Memorandum, at 8.

#### i. The Meaning of "Between."

To construe the term "between" in light of this agreed definition, it is necessary to identify the "the space that separates" the first and second flanges of the mounting bracket. For a jaw to be carried for "movement between" the two flanges of the mounting bracket, the jaw has to be located between, or "in or through the space that separates," the two flanges of the mounting bracket. Declaration, at 2. This space is the three-dimensional wedge-shaped space between the first and second flanges as shown below. Id., at 4-5. The drawing below provides a view of the orange wedge-shaped space between the first and second flanges of the mounting bracket:

9



In other words, for a jaw to be "mechanically interengaged with and carried by said bracket for movement between said first and second flanges" as claimed in the '691 Patent, a jaw would have to be located in the orange wedge-shaped space between the first flange and the second flanges.

The meaning of the term "between" is also explained in the prosecution history; it does not extend to a structure that is not located between the first and second flanges. During prosecution, the patent examiner issued an Office Action on May 5, 2002 (attached as Exhibit 4 to the Declaration) rejecting claim 1 for obviousness over a combination of the Nielsen '811 patent (copy as Exhibit 6 to the Declaration) and the Nielsen '829 patent (copy attached as Exhibit 7 to the Declaration). The Examiner considered the Nielsen '811 patent to show a locking assembly having

> . . . a bracket 21, [with] first and second flanges 23 and 38 integrally joined by an intermediate web (Figs. 4 and 5) where the intermediate web is interposed between the cover 3 and the upper edge of the side wall 1 . . . .

Declaration, Exhibit 6, at 3. Figure 4 from the Nielsen '811 patent is reproduced below with the flanges and web of the bracket colored in yellow:



The Examiner admitted that the lock assembly in the Nielsen '811 patent did "not disclose a jaw mechanically interengaged with and carried by a bracket . . . ." but noted that "Nielsen 829 teaches a jaw 56 mechanically interengaged with and carried by bracket 52." *Id.* The Examiner concluded that it would have been obvious to one of ordinary skill in the art "to provide the lock of Nielsen 811 with a jaw mechanically interengaged with and carried by a bracket as taught by Nielsen 829, in order to more securely clamp the bracket to the box side wall." *Id.* Figures 2 and 3 from the Nielsen '829 patent are reproduced below with the "jaw" component 56 colored in red and the bracket 52 colored in yellow:



*Fig. 2*

*Fig. 3*

Declaration, Exhibit 7, at 2. The Examiner concluded that it would have been obvious to one of ordinary skill in the art "to provide the lock of Nielsen 811 with a jaw mechanically interengaged with and carried by a bracket as taught by Nielsen 829, in order to more securely clamp the bracket to the box side wall." *Id.*

The patentee responded to the rejection by arguing that the component 56 in Nielsen '829 was different from a jaw mounted for movement between flanges of a bracket. A copy of the response is attached at Exhibit 8 to the Declaration. The patentee wrote:

> The component 56 in Nielsen '829 is nothing more than a reinforcing block fixed to a leg 58 of a back plate 52.
>
> As such, it is not moveable with respect to the back plate, and its function is merely to coact in threaded engagement with the cap screw 56 while strengthening the relatively thin side wall 16. Attaching the block 56 of Nielsen '829 to either of the flanges 23, 38 of Nielsen '811 would serve no useful purpose other than perhaps to add strength. It certainly would not serve as a jaw mounted for <u>movement between</u> the flanges.

Declaration, Exhibit 8, at 3 (emphasis in original). By argument, the patentee distinguished structures that are not mounted for <u>movement between</u> the flanges from the claimed jaw element.

12

As a matter of law, Plaintiff is now estopped from asserting that any structure not literally mounted for <u>movement between</u> the flanges might be an equivalent. Because the patentee has explicitly distinguished the combination on the basis of its failure to fall within the limiting language "movement between," the range of equivalents permissible under the doctrine of equivalents also excludes any device not literally infringing the limiting language "movement between."

### ii. The meaning of "Jaw."

The meaning of the term "jaw" is "either of two mechanical parts that open and close to grip or crush something, as in a monkey wrench or vise." <u>Plaintiff's Memorandum</u>, at 8. This meaning of the term "jaw" is further clarified based on Plaintiff's arguments during the prosecution history of the '691 Patent in distinguishing U.S. Patent No. 4,202,574 (copy attached as <u>Exhibit 1</u> to the Supplemental Declaration). Figure 1 from Redmayne appears below:



The Examiner asserted that the refuse container of Redmayne contained a jaw:

Redmayne teaches a lock assembly (26) comprising a lid (18,20) and a jaw (32,38). The lid has first (18) and second (20) mutually spaced flanges integrally joined by an intermediate web (Fig. 1 and 2). The jaw mechanically interengages with the lid and is carried by the lid for movement between the first and second flanges (Fig. 2). The lid is configured to be removably mounted on a side wall (Figs. 1 and 2). Force exerting means (28, 34) urges the jaw towards the first flange to clamp the sidewall (Figs. 1 and 2). The force exerting means urges the jaw towards the clamping position and maintains that position by resiliency of one of the force exerting means (C. 2, L. 35-55). Therefore, it would have been obvious to one having ordinary skill in the art at the time the invention was made to have the jaw with the force exerting means taught by Redmayne in the lock assembly disclosed by Nielsen such that a jaw as taught by Redmayne mechanically interengages with and carried by the bracket disclosed by Nielson whereby the jaw clamps the first flange of the bracket against the side wall. Doing so, will ensure proper clamping of the jaw and the sidewall since the resiliency of the other force exerting means (34) will provided added clamping force between the bracket and the side wall.

Office Action Dated May 27, 2003, 3 (emphasis added) (copy attached as Exhibit 2 to the Supplemental Declaration). Plaintiff responded and argued that Redmayne bracket 26 "also lacks a jaw that is moveable between the bracket flanges 29, 32 and that is responsive to a force exerting means to exert a clamping force on the container side wall. To the contrary, the bracket flange 32 is merely urged into an abutting (as opposed to clamping) relationship with the container side wall." See Appeal Brief dated September 15, 2003 at 3 (emphasis added) (copy attached as Exhibit 3 to the Supplemental Declaration). Thus, a jaw under claim 1 does not include a structure that merely urges into an abutting relationship as opposed to clamping relationship.

## B.   No Literal Infringement

### i. The Lower Panel of the Clamping Member of the ProLock Products Is Not a "Jaw" "Carried for Movement Between said First and Second Flanges"

Relying on its inaccurate drawings, Plaintiff erroneously argues that the lower panel of the clamping member literally infringes the limitation "a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges." First, the

14

lower panel of the clamping member is not a "jaw." Second, the lower panel of the clamping member is not "between" the first and second flanges of the mounting bracket. Moreover, the front edges of the two side panels of the clamping member, acting in concert with the pressure of the first flange on the exterior of the side wall of the utility box, clamp the ProLock Products in place upon the utility box.

The lower panel of the clamping member of each of the ProLock Products is not a "jaw" as properly construed based on the prosecution history of the '691 Patent. The ProLock Product has been designed to include a gap between the lower panel of the clamping member and the side wall of the utility box to accommodate variations in the dimensions of utility boxes from various manufacturers. This gap can be seen in the photographs of the installed ProLock Products set forth above. See Supplemental Declaration, at ¶¶ 9 & 12. The function of the front edge of the lower panel of the clamping member is to provide additional security in the event that pressure is applied to pry open the utility box. In the event that pressure is applied to pry open the utility box, the front edge of the lower panel of the clamping member would be urged into abutment with the ledge of the side wall of the utility box. See id., at ¶4. The secondary engagement tabs of the ProLock Product 2 provide additional security to prevent someone from prying open the utility box. As noted above, Plaintiff's arguments to distinguish the bracket in the Redmayne reference make clear that the structure of the lower panel is not a jaw.

Nor do the lower panels of the clamping members of the ProLock Products move "between" the first and second flanges. The two following photos of the ProLock Products 1 and 2 provide a perspective view on the space that separates the first and second flanges:

15



The lower panel (as well as the two side panels) of the clamping member never enter or cross into the wedge-shaped space between the first and second flanges. Declaration, at 7-8. At no point during the installation of the ProLock Product is the lower panel of the clamping member located in the space that separates the first and second flanges. As a result, the lower panels of the clamping member are not located between, or "in or through the space that separates," the first and second flanges of the mounting bracket. Id., at 2.

Plaintiff argument completely ignores the operation of the two side panels of the clamping member that "clamp" the ProLock Products in place on the utility box. The side panels of the two side panels, acting in concert with the pressure of the first flange on the exterior of the side wall of the utility box, place the side wall of the utility box in sheer and bending, thereby "clamping" the ProLock Products in place upon the utility box. The two side panels of the clamping member are each outside of, and rotate outside of, the first and second flanges of the mounting bracket, never enter or cross into the wedge-shaped space between the two flanges, and thus are not "between" the first and second flanges.

## C.    No Infringement Under the Doctrine of Equivalents

The doctrine of prosecution history estoppel prevents a patentee from recapturing through equivalence subject matter surrendered during prosecution. *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861 (Fed Cir. 1985). An amendment to the claim being asserted is not necessary in order to

create prosecution history estoppel. *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.,* 757 F.2d 255 (Fed Cir. 1985). To the contrary, prosecution history estoppel "may arise from matter surrendered as a result of amendments to overcome patentability rejections, <u>or as a result of argument to secure allowance of a claim</u>." (emphasis added); *Cybor, supra,* at 1454; *See also Haynes v. Jessop,* 8 F.3d 1573 (Fed Cir. 1993).

### i. Prosecution History Estoppel Precludes the Lower Panel of the Clamping Members of the ProLock Products from Being an Equivalent.

In this case, prosecution history estoppel arises because of arguments made by the patentee to secure the allowance of claim 1. First, based on the arguments made to distinguish the Redmayne reference as explained above, the Plaintiff is estopped from asserting that the term "jaw" can be infringed by a structure such as the lower panel of the clamping members that is a structure that merely urges into an abutting relationship as opposed to clamping relationship.

Second, based on the arguments made to distinguish the Nielsen patents as explained above, the Plaintiff is estopped from asserting that the limitation of the term "between" extends to a structure that is not located between the first and second flanges. Because the patentee has explicitly distinguished the combination on the basis of its failure to fall within the limiting language "movement between," the range of equivalents permissible under the doctrine of equivalents also excludes any device not literally infringing the limiting language "movement between."

### ii.     Claim Vitiation Precludes Doctrine of Equivalents

As a matter of law, the lower panel of the clamping members of the ProLock Products cannot be equivalents of a jaw mounted for movement between the flanges because doing so would "vitiate" the "movement between" limitation of claim 1.

The Federal Circuit has consistently held that claim limitations expressly restricting a component to a particular location in a device (such as the "movement between said first and second flanges" limitation in the '691 Patent) would be vitiated if the doctrine of equivalents is used to extend the claim limitation to encompass subject matter not literally infringing.  In *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420 (Fed. Cir. 1997), the Federal Circuit considered whether a patent claim directed to a hazardous medical waste disposal container was infringed under the doctrine of equivalents.  The patent claim required "an elongated slot at the top of the container body" and a "constriction extending over said slot."  See *Id.*, 126 F.3d at 1422.  The accused product had a slot that was located in the interior of the container rather than at the top of the container and two constrictions below the top of the container.  *See Id.* at 1423-24.  The Federal Circuit upheld a finding of no infringement under the doctrine of equivalents, concluding that a finding of equivalency would vitiate the "slot at the top of the container body" and "extending over said slot" limitations.  *See Id.* at 1424-26.  "[T]he doctrine of equivalents does not grant Sage license to remove entirely the "top of the container" and "over said slot" limitations from the claim."  *Id.* at 1474.  "Because this patent contains clear structural limitations, the public has a right to rely on those limits in conducting it business activities."  *See Id.* at 1425.  See also *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309 (Fed. Cir. 1998) (affirming summary judgment of no infringement of claim reciting a lockout mechanism "connected to . . . [the] longitudinal slots" in the cartridge of a stapler because the lockout mechanism of the accused device was "located at the distal end of the [unit,] nowhere near the longitudinal slots" )

The Federal Circuit has applied the claim vitiation doctrine more recently in *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350 (Fed. Cir. 2005).  In *Freedman*, the Federal

Circuit considered whether a patent relating to a stowable seat was infringed by the defendant's seat. The patent claim required a seat with a support member having a moveable end "slidably mounted" to the seatbase. 420 F.3d at 1353. The moveable end of the support member in the accused device was "rotatably mounted to the seatbase" and did "not slide or otherwise move along the seatbase." *Id.* at 1354. The Federal Circuit held that "the district court's finding of infringement under the doctrine of equivalents had the effect of entirely vitiating the 'slidably mounted' limitation." *Id.* at 1361. The Federal Circuit noted:

> Freedman's argument would mean that any support member capable of allowing translational and rotational motion would be equivalent to a support member "slidably mounted to said seatbase," which reads "slidably mounted" completely out of the claims. This is the precise type of overextension of the doctrine of equivalents that the claim vitiation doctrine is intended to prevent.

*Id.* at 1362. In claim 1 of the '691 Patent, the term "interengaged with and carried by said bracket for movement between said first and second flanges" is a clear structural limitation that competitors, such as Defendant, are entitled to rely on in conducting their business.[1]

### iii. The Lower Panel of the Clamping Member of the Prolock Products Operate in a Substantially Different Way from a "Jaw that is Mechanically Interengaged With and Carried by Said Bracket for Movement Between Said First and Second Flanges."

The lower panel of the clamping member of the ProLock Products also operate in a different way than the jaw of claim 1 of the '691 Patent. The jaw of claim 1 that moves

---

[1] The decision of this Court in *Holmes Group, Inc. v. RPS Products, Inc.,* 2006 U.S. Dist. LEXIS 13737 (D. Mass. 2006) supports the application of claim vitiation in the present case. In *Moore,* this Court rejected the patentee's contention that the longitudinal strips of an accused mailer form, which extended a minority of lengths of the longitudinal margins of the accused form, infringed by equivalents the claimed strips, which extend "a majority of lengths:" "If a minority could be equivalent to a majority, this limitation would hardly be necessary" *Moore* at 1107. The lower panel of the clamping member of the ProLock Products does not move "between" the first and second flanges. To hold that the lower panel of the clamping member does move "between" the first and second flanges would vitiate the "between" claim limitation.

"between" the flanges of the bracket, acting in concert with the first flange of the mounting bracket, compresses or crushes the sidewall of the utility box. See Declaration, at 8. The front panel of the clamping members of the ProLock Products that Plaintiff alleges infringes, however, does not operate in the same way as a jaw, but rather is urged into an abutting relationship rather than a clamping relationship with the inside wall of the utility box. In addition, the lower panel of the clamping member is not mounted for movement between the first and second flanges of the mounting bracket, but are instead located outside of the flanges of the mounting bracket,. As a result, the clamping members operate in a substantially different way from a jaw that is interengaged with and carried by the mounting bracket for movement between the flanges of the bracket, and thus, is not an equivalent. See  id. Neither of the ProLock Products infringes claim 1 of the '691 Patent under the doctrine of equivalents.

### III.    Conclusion

Based on the foregoing, Defendant DeWalch Technologies hereby prays that Plaintiff's Motion for Summary Judgment be denied and the Court enter an Order from the Court that the ProLock Products do not infringe the '691 patent either literally or under the doctrine of equivalents.

Respectfully Submitted,

DEWALCH TECHNOLOGIES, INC.
By its attorneys,

/s/ Denise W. DeFranco

Denise W. DeFranco BBO# 558859
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
(617) 832-1202

Peter E. Mims
Texas Bar No. 14173275
David K. Wooten
Texas Bar No. 24033477
VINSON & ELKINS, L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, TX 77002-6760
713-758-2732

Dated: June 16, 2006

21

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the NEF.

/s/ Denise W. DeFranco