# EXHIBIT D

To Opposition To Motion To Continue Discovery And To
Extend The Pretrial Schedule

filed

October 23, 2007

in

Civil Action 04-40219 FDS

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **INNER-TITE CORP.,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 04-40219 FDS** |
| | § | |
| **DEWALCH TECHNOLOGIES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

To:     Plaintiff Inner-Tite Corp.

Defendant DeWalch Technologies, Inc. hereby responds to Plaintiff's First Set of Interrogatories, as follows:

### GENERAL OBJECTIONS

1.      DeWalch objects to Plaintiff's definitions of "DeWalch," "you," and "defendant" to the extent they are broader than the definition of "Parties" in the Massachusetts Local Rules. In responding to these interrogatories, DeWalch will use the definition of "Parties" in the Local Rules.

2.      DeWalch objects to Plaintiff's instructions 18 – 23 and 25 to the extent they seek to impose burdens beyond the requirements of the Federal Rules of Civil Procedure and Local Rules, and because they are overbroad and unduly burdensome.  In responding to these Interrogatories, DeWalch will follow the requirements of the Federal Rules and Local Rules.

3.      The foregoing general objections apply to all of Plaintiff's interrogatories.  To the extent that the specific general objections are cited in response to Plaintiff's Interrogatories, those

specific objections are provided because they are believed to be particularly applicable to the Interrogatories and are not to be construed as a waiver of any other general objection applicable to information or documents falling within the scope of the Interrogatory.

INTERROGATORIES

Interrogatory No. 1:

For each of claims 1, 2, 6, 7 and 8 of the '691 patent state the basis for your contention that each claim is not infringed by DeWalch's ProLock product. Your response should include non-infringement charts.

Response:

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to Plaintiff's definition of "non-infringement charts" because it is overbroad, unduly burdensome, to the extent it seeks discovery of confidential or trade secret information prior to the entry of a protective order, and to the extent it seeks discovery of attorney-client privileged information or work product. In addition, DeWalch objects on the grounds of prematurness and undue burden at having to recite its proposed claim construction prior to appropriate discovery, or prior to the Court's deadlines for *Markman* submissions. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

| Claim | | |
|---|---|---|
| 1 | For use in combination with a utility box having a bottom, a side wall, and a cover which may be opened to gain access to the interior of the box, | The ProLock, like numerous prior art devices, may be used in combination with utility boxes or other enclosures. |

| | |
|---|---|
| and which when closed, overlaps an upper edge of the side wall, a lock assembly for maintaining the cover in its closed position, said lock assembly comprising: | However, the ProLock per se does not include a utility box. |
| a bracket having first and second mutually spaced flanges integrally joined by an intermediate web; | In addition to the foregoing, the term "mutually spaced" is vague and does not meet the requirements of 35 U.S.C. § 112. |
| a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges, said bracket being configured for removable mounting on said side wall, with said intermediate web interposed between said cover and the upper edge of said side wall, and with said first flange and said jaw respectively located adjacent exterior and interior surfaces of said side wall; | In addition to the foregoing, the ProLock, like numerous prior art devices, has a locking, compression or clamping member or plate. This member does not move between any flanges. In addition to the foregoing, the ProLock per se does not include a utility box, and thus does not include the side wall of a utility box. |
| force exerting means for urging said jaw towards said first flange to thereby clamp said side wall therebetween; | In addition to the foregoing, the only force exerting means used by the ProLock is a lever. As explained |

3

| | | |
|---|---|---|
| | | herein, the scope of '691 patent is limited to the force exerting means of a thumbscrew.<br><br>In addition to the foregoing, the ProLock per se does not include a utility box, and thus does not include the side wall of a utility box. |
| | a cap having a lip configured and dimensioned to overlap said cover; and interlocking means for securing said cap to said bracket. | In addition to the foregoing, the ProLock per se does not include a utility box, and thus does not include a utility box cover.<br><br>As stated in the '691 patent, "[I]t is known to provide lock assemblies with exterior caps having lips that overlap and thus prevent unauthorized opening of meter box covers." The ProLock, like numerous prior art devices, has a lip which may be used to overlap the covers of utility boxes or other enclosures. The |

4

| | | Pro Lock, like numerous other prior art devices, may be used with a barrel lock. However, the ProLock per se does not include a barrel lock. |
|---|---|---|
| 2 | The lock assembly of claim 1 wherein the side wall of said box is provided with an interior ledge spaced below said upper edge, and wherein said jaw engages said side wall beneath said ledge. | See above for why the ProLock does not meet the limitations of Claim 1 or any claims that depend from Claim 1. In addition, the ProLock per se does not include a utility box having a side wall, interior ledge or upper edge. |
| 6 | The lock assembly of claim 1 wherein said jaw is pivotally connected to said second flange. | See above for why the ProLock does not meet the limitations of Claim 1 or any claims that depend from Claim 1. |
| 7 | The lock assembly as claimed in claim 1 wherein said second flange is inclined at an acute angle with respect to said first flange. | See above for why the ProLock does not meet the limitations of Claim 1 or any claims that depend from Claim 1. |
| 8 | The lock assembly as claimed in claim 1 wherein said bracket is provided with a third flange projecting from said first flange, and | See above for why the ProLock does not meet the limitations of Claim 1 or any claims that depend from Claim 1. |

| | wherein said interlocking means engages said third flange. | |
|---|---|---|

In addition, DeWalch's ProLock cannot infringe claims 1, 2, 6, 7 or 8 of the '691 patent because such claims are invalid. *See* DeWalch's Response to Interrogatory No. 3.

In addition, DeWalch's ProLock cannot infringe claims 1, 2, 6, 7 or 8 of the '691 patent because they are unenforceable. *See* DeWalch's Response to Interrogatory No. 4.

In addition, during the prosecution of the application that issued as the '691 patent, the Examiner rejected Claim 1, and thus all claims depending from Claim 1, because, among other things, the phrase "or the like" in line 1 rendered the claims indefinite because the claims included elements not actually disclosed (i.e., those encompassed by "or the like"), thereby rendering the scope of the claims unascertainable. In response to this rejection by the Examiner, Mr. Maurice Gauthier, acting as attorney for the Applicant, amended Claim 1, and thus all claims depending from Claim 1, to delete the words "an electric meter box or other like enclosure," and substituted therefore the words, "a utility box." Accordingly, the Patentee is estopped from claiming coverage over any enclosure other than a utility box because, *inter alia,* any such coverage was disclaimed during prosecution, and has been disclosed but not claimed, and thus has been dedicated to the public. Examples of enclosures not covered by the '691 patent include various types of boxes such as tool boxes, lock boxes, fuse boxes, breaker boxes, and various configurations of ANSI compliant electrical boxes, and various types of cabinets such as key cabinets.

In addition, in attempting to distinguish the claimed invention from the prior art Neilsen '811 and '829 patents which had been cited by the Examiner in his Office Action, Mr. Maurice

Gauthier wrote the Examiner on behalf of the Applicant that, "block 56 of Neilsen '829 and [] the flanges 23, 38 of Neilsen '811 . . . would not serve as a jaw mounted for movement between the flanges. . . there is no suggestion in either Neilsen '811 or Neilsen '829 of using it as a movable jaw between the flanges 23, 38 of Neilsen '811." (emphasis in original).  Accordingly, the Patentee is estopped from claiming patent coverage over any jaws not between the flanges as claimed.

In addition, during prosecution the Examiner issued an Office Action stating that claims 1 – 8 are subject to a restriction and/or election requirement.  The Examiner also wrote that claims 1-3, 5, 6 and 8 are generic to a plurality of patentably distinct species comprising: Species I – Figures 2-4; Species II – Figures 5A and 5B; and Species III – Figure 6A and 6B.  The Examiner further required the Applicant to elect a single disclosed species.  In response, Mr. Maurice Gauthier, acting as attorney for the Applicant, wrote that, "[i]n response to the Office action mailed on 10/22/2002, Applicant elects Species I-Figures 2-4.  Applicant reserves the right to prosecute claims directed to Species II and Species III in either this application or subsequently filed applications."

Although the Patentee purported to "reserve[d] the right to prosecute claims directed to Species II and Species III," this never occurred.  Accordingly, the Patentee is estopped from claiming any species other than depicted at Figures 2 – 4 because, at a minimum the Patentee acquiesced to the Examiner's requirement and elected the species depicted at Figures 2 – 4. Neither the Examiner's requirement, nor the Patentee's election, were ever withdrawn or otherwise overcome.

<u>Interrogatory No. 2</u>:  **[there is no interrogatory no. 2]**

<u>Interrogatory No. 3</u>:

For each of claims 1, 2, 6, 7 and 8 of the '691 patent state the basis for your contention that each claim is invalid. Your response should include prior art invalidity charts and non-prior art invalidity charts as appropriate.

<u>Response</u>:

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to Plaintiff's definitions of " prior art invalidity charts" and "non-prior art invalidity charts" because they are overbroad, and unduly burdensome. In addition, DeWalch objects to this Interrogatory to the extent it seeks discovery of confidential or trade secret information prior to the entry of a protective order, and to the extent it seeks discovery of attorney-client privileged information or work product. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

| Claim | |
|-------|--|
| 1 | Invalid at least in light of the prior art comprising US4,080,811 alone or in combination with one or more of the following: US999,891; US1,019,343; US1,177,728; US1,375,769; US1,241,459; US1,651,457; US1,751,620; US2,121,386; US2,314,755; US2,584,955; US2,644,498; US3,030,639; US3,193,277; US3,508,732; US3,914,830; US3,938,839; US3,968,985; US4,107,959; US4,120,182; US4,144,729; US4,152,910; US4,202,574; US4,254,647; US4,313,319; US4,331,012; US4,414,829; US4,474,041; US4,759,733; US5,005,798; US5,315,849; US5,568,916; US5,755,603; EP432,773 |

| | |
|---|---|
| | and/or one or more of the clamps or vices having jaws noted herein. Without limitation, it would be obvious to one of ordinary skill in the art to use jaws, which are well known in the prior art, with the Neilsen '811 device or similar devices listed herein, in the manner claimed by the '691 patent. |
| 2 | Invalid for at least the foregoing reasons. In addition, the many prior art references of meter box lock assemblies, including the Neilsen '811 patent, include side walls, including those with an interior ledge spaced below an upper edge; and, furthermore, many such references include a jaw or similar member that engages or is capable of engaging a side wall, including beneath its ledge. *See, e.g.,* one or more of the '755, '955, '959, '182, '729, '910, '574, '647 , '319, '829, '041, and/or '849 patents. In addition, persons of ordinary skill in the art understand that meter boxes at least commonly have side walls with ledges. Including in accordance with the prior art references listed herein, would have been obvious to persons having ordinary skill in the art to have the jaw noted hereinabove to engage the side wall beneath the ledge on the side wall of a meter box. |
| 6 | Invalid for at least the foregoing reasons. In addition, it would be obvious to a person having ordinary skill in the art to connect, pivotally or otherwise, the jaw to the flange. *See, e.g.,* one or more of the '728, '769, '459, '620, '386, '755, '955,'639, '574, and/or EP '773 patents, as well as prior art lever clamps, grip clamps, cam clamps and/or claw clamps. |

| | |
|---|---|
| 7 | Invalid for at least the foregoing reasons.  In addition, it would have been obvious to a person having ordinary skill in the art to incline the flanges at an acute angle. *See, e.g.,* one or more of the '457, '620, '755, '277,  '811, '574, and/or EP '773 patents, as well as prior art grip clamps and/or claw clamps. |
| 8 | Invalid for at least the foregoing reasons.   In addition, it would have been obvious to a person having ordinary skill in the art to have a third flange projecting form a first flange wherein an interlocking means engages the third flange. *See, e.g.,* one or more of the '811, '959, '182, '729, '910, '647, '319, and '849 patents. |

The suggestion, teaching or motivation to combine the foregoing prior art comes from the nature of the problem to be solved, the teachings of the prior art, and the knowledge of persons of ordinary skill in the art.

In addition, DeWalch is not aware of any secondary indicia of non-obviousness that favor the non-obviousness of the subject matter purportedly claimed by the '691 patent.

In addition, DeWalch is still investigating the prior art.

In addition, DeWalch is still investigating whether the claims of the '691 patent particularly point out and distinctly claim the subject matter which the applicant regards as his invention, as required by 35 U.S.C. § 112.  For example, the term "mutually spaced" does not appear to meet this requirement.

In addition, DeWalch is still investigating whether the '691 patent meets the written description, enablement and best mode requirements of 35 U.S.C. § 112.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

Interrogatory No. 4:

State the basis for your contention that the '691 patent is unenforceable.

Response:

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory to the extent it seeks discovery of confidential information prior to the entry of a protective order, and to the extent it seeks discovery of attorney-client privileged information or work product. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

In addition, during the prosecution of the application that issued as the '691 patent, the Examiner rejected Claim 1, and thus all claims depending from Claim 1, because, among other things, the phrase "or the like" in line 1 rendered the claims indefinite because the claims included elements not actually disclosed (i.e., those encompassed by "or the like"), thereby rendering the scope of the claims unascertainable. In response to this rejection by the Examiner, Mr. Maurice Gauthier, acting as attorney for the Applicant, amended Claim 1, and thus all claims depending from Claim 1, to delete the words "an electric meter box or other like enclosure," and substituted therefore the words, "a utility box." Accordingly, the '691 patent is unenforceable with respect to any enclosure other than a utility box because any such coverage was disclaimed during prosecution, and has been dedicated to the public.

In addition, during prosecution the Examiner issued an Office Action stating that claims 1 – 8 are subject to a restriction and/or election requirement. The Examiner also wrote that claims 1-3, 5, 6 and 8 are generic to a plurality of patentably distinct species comprising: Species I – Figures 2-4; Species II – Figures 5A and 5B; and Species III – Figure 6A and 6B. The Examiner further required the Applicant to elect a single disclosed species. In response, Mr. Maurice Gauthier, acting as attorney for the Applicant, wrote that, "[i]n response to the Office action mailed on 10/22/2002, Applicant elects Species I-Figures 2-4. Applicant reserves the right to prosecute claims directed to Species II and Species III in either this application or subsequently filed applications." Although the Patentee purported to "reserve[d] the right to prosecute claims directed to Species II and Species III," this never occurred. Accordingly, the '691 patent is unenforceable relative to any species other than depicted at figures 2 – 4, *i.e.,* unenforceable relative those species depicted at figures 5A – 6B, because, *inter alia*, the Patentee acquiesced to the Examiner's restriction requirement and elected the species depicted at figures 2 – 4. Neither the Examiner's restriction, nor the Patentee's election, were ever withdrawn or otherwise overcome.

In addition, on information and belief, information learned during the discovery process may establish that one or more persons who participated in the prosecution of the '691 patent intentionally failed to provide material prior art information to the U.S. Patent & Trademark Office during the prosecution of the '691 patent.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

Interrogatory No. 5:

Identify all prior art to the '691 patent of which you are aware.

<u>Response:</u>

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory because it is overbroad and unduly burdensome, to the extent it seeks discovery of confidential or trade secret information prior to the entry of a protective order, and to the extent it seeks discovery of attorney-client privileged information or work product. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

Prior art to the '691 patent includes locks, clamps and vices, including such devices using brackets, flanges, and jaws, which have been widely sold, publicly used, depicted in publications and publicly known prior to March 10, 2000, including the following:

| Prior Art References | |
|---|---|
| US999,891 | Without limitation, U.S. Patent NO. 999,891 to Shepard discloses the well-known art of box lid fasteners. Without limitation, fastener of the '891 patent comprises a bracket, flanges and a force exerting means. An illustration of a system disclosed by the '891 patent is as follows: |



| | |
|---|---|
| US1,019,343 | Without limitation, U.S. Patent No. 1,019,343 to Moore discloses a box or hatch cover fastener. Without limitation, the locking assembly of the '343 patent comprises bracket A, force exerting means of screw B, clamping member C, link E interposed between the fastening screw B and the clamping member C, and strip F. An illustration of a system disclosed by the '343 patent is as follows:<br><br> |
| US1,177,728 | Without limitation, U.S. Patent No. 1,177,738 to Snyder discloses a clamp. Without limitation, the clamp of the '738 patent comprises an assembly with a receptacle A, top B, clamp C mounted to clamping lever D. An illustration of a |

14

|  | system    disclosed    by    the    '728    patent    is    as    follows:<br><br> |
| --- | --- |
| US1,375,769 | Without limitation, U.S. Patent No. 1,375,769 to Bleackacek discloses the well-known art of using toothed jaws with force exerting means.  Without limitation, the locking assembly of the '769 patent comprises force exerting means 4 comprising jaw 7 having teeth.  An illustration of a system disclosed by the '769 patent is as follows: |
| US1,241,459 | Without limitation US Patent No. 1,241,459 to Woodward discloses clamp. Without limitation, the '459 patent discloses flanges 2 and 3 joined by intermediate web 1 into a bracket, force exerting means comprising screw member 5, jaw 11 having teeth, and movable jaw 12 having teeth, which is |

|  | mechanically interengaged and carried by the bracket.  An illustration of a system disclosed by the '955 patent is as follows:  |
|---|---|
| US1,651,457 | Without limitation US Patent No. 1,651,457 to Karnes discloses a holder. Without limitation, the apparatus comprises surface 6 having bend 7, body 1 having flanged sides and the force exerting means of 8 which presses body 1 against top 2 of body 1.  An illustration of a system disclosed by the '457 patent is as follows:  |
| US1,751,620 | Without limitation US Patent No. 1,751,620 to Clarke discloses a clamp. Without limitation, the clamp is comprised of a bracket having arms 12 and 17 connected by bar 10, jaw 24, jaw 25 hingedly connected at rivet 26, and the force |

| | |
|---|---|
| | exerting means comprising screw 20. An illustration of a system disclosed by the '620 patent is as follows:<br><br> |
| US2,121,386 | Without limitation US Patent No. 2,121,386 to Henrickson discloses a clamping top or hatch fastener. Without limitation, the fastener comprises a bracket with body members or brackets 5 and 30, flanges 6, 18, 31 and 35, jaw 6, jaw 16 connected to the bracket at pin 17, and the force exerting means of screws 19 and 33. Illustrations of systems disclosed by the '386 patent are as follows: |

17



and

| US2,314,755 | Without limitation, U.S. Patent No. 2,314,755 to Balarino discloses a clamp including a bracket 1 and 3, jaw 2 and 4, and force exerting means when the jaw is slid. An illustration of a system disclosed by the '755 patent is as follows: |
|---|---|



| US2,584,955 | Without limitation US Patent No. 2,584,955 to Williams discloses a clamp system comprising a clamp, a bracket, a lever and a jaw.  Without limitation, the bracket 5 is positioned on the upper edge of the side wall 6 and one end of the lever 18 is forced downwardly to cause the jaw 20 to bear its teeth against the inner surface of the side wall.  An illustration of a system disclosed by the '955 |
|---|---|

| | |
|---|---|
| | patent is as follows:<br><br> |
| US2,644,498 | Without limitation US Patent No. 2,644,498 to Malecki discloses clamps. Without limitation, the clamps comprise a c-shaped bracket or body 11, jaws 11a and 24, and force exerting means comprising screw 10. An illustration of a system disclosed by the '498 patent is as follows:<br><br> |
| US3,030,639 | Without limitation, U. S. Patent No. 3,030,639 discloses a clamp. Without limitation the clamp 10 comprises a bracket having flanges 21 and 22, jaw 24 carried by flange 20, and the force exerting means comprising screw 30 which forces jaw 24 and flange 20 against arm 14. An illustration of an assembly disclosed by the '639 patent is as follows: |



*Fig. 1.*

| US3,193,277 | Without limitation, U. S. Patent No. 3,193,277 to Nagamori discloses a vice comprising jaw 1, jaw 2 mechanically interengaged with sliding part 5, and the force exerting means of screw 3. An illustration of an assembly disclosed by the '277 patent is as follows:  FIG. 1. |
|---|---|
| US3,508,732 | Without limitation, U. S. Patent No. 3,508,732 to Trachtenberg discloses a clamp for attaching a bracket comprising the force exerting means of screws which urge the jaw, flange 39, towards the flange at leg 38 of angle member 37. An illustration of an assembly disclosed by the '732 patent is as follows: |



| US3,914,830 | Without limitation, U. S. Patent No. 3,914,830 discloses a clamp comprising a bracket having flanges, a jaw 5, and force exerting means 11 which may serving as part of a lock assembly for utility boxes.  An illustration of an assembly disclosed by the '830 patent is as follows: |
| US3,938,839 | Without limitation, U. S. Patent No. 3,938,839 to Collier discloses a lock comprising clamp member 5, clip members, and the force exerting means comprising bolt 14.  In addition, Collier discloses teeth 10 and 11 on jaw 5. Illustrations of assemblies disclosed by the '839 patent are as follows: |

21



and          FIG.I

| | |
|---|---|
| US3,968,985 | Without limitation, U. S. Patent No. 3,968,985 to Neilsen, Jr. discloses meter box lock assemblies comprising a meter box 1 having cover 3, locks 20 and 55, numerous flanges including 7, 11, 25, and 67; bracket 49; the force exerting means of bolt 61, and a force exerting means of spring fingers 23 adapted to clamp the plate 17. Illustrations of assemblies disclosed by the '985 patent are as follows:  and |
| US4,080,811 | Without limitation, U. S. Patent No. 4,080,811 to Neilsen, Jr. discloses for use in combination a locking assembly (21, 25, 27, 35, 50) with a utility box (1, 3) |

22

having a bottom, side wall (1) and cover (3) that may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the sidewall. The lock assembly maintains the cover in its closed position (Figs. 3 and 4). The first flange and the second flange are located adjacent exterior and interior surfaces, respectively, of the side wall (Fig. 4). A force exerting means comprising screw 25 urges one of the flanges of the bracket toward the sidewall to thereby clamp the sidewall therebetween (Fig. 4). A cap (41, 27) having a lip (27) configured and dimensioned to overlap the cover and interlocking means (27, 33, 50) for securing the cap to the bracket (Fig. 4). In addition, the bracket 21 has a second clamp having a jaw in the form of limb 31, which is drawn and held under tension toward the limb 33 of bracket 21 by a screw 35. An illustration of an assembly disclosed by the '811 patent is as follows:



FIG.4

| US4,107,959 | Without limitation, U. S. Patent No. 4,107,959 to Sharzynski discloses a meter box lock assembly comprising a box 10 with cover 11; a housing with outer wall 15; flange 14 which overlaps the box; a lock 30; a bracket which is angle piece 41 comprised of flanges 46, 47 and 49; and the force exerting means comprising |

| | |
|---|---|
| | stud 42, which clamps side 13 between plate 40 and nut 51. Illustrations of an assembly disclosed by the '959 patent are as follows:  |
| US4,120,182 | Without limitation, U. S. Patent No. 4,120,182 to Neilsen, Jr. discloses a meter box lock assembly comprising a container 20 having a front wall 22, a lid 24, and lip 26; a locking device 28 extending over a portion of the lip 26; bracket 30 having flanges; and a force exerting means, screw 38, which urges plate 42 towards nut 40 and section 32a of bracket 30 with wall 22 therebetween. In addition, the '812 patent discloses a meter box lock assembly comprising the bracket clip 118 which holds plate 42 or 120. An illustration of an assembly disclosed by the '182 patent is as follows: |



FIG. 9

FIG. 10

| US4,144,729 | Without limitation, U. S. Patent No. 4,144,729 to Neilsen, Jr. discloses a meter box lock assembly comprising meter box 1, cover 3, lock 33, bracket 12, force exerting means comprising a screw 15 which urges jaw 17 towards wall 13 and inner plate 23. An illustration of an assembly disclosed by the '729 patent are as follows: |
| --- | --- |



FIG. 4

| US4,152,910 | Without limitation, U. S. Patent No. 4,152,910 to Swisher discloses a meter box lock assembly comprising a box 10 with cover 11; a housing with outer wall 15; flange 14 which overlaps the box; a lock 30; the a bracket which is angle piece 41 comprised of flanges 46, 47 and 49; and the force exerting means comprising stud 42, which clamps side 13 between plate 40 and nut 51.  An illustration of an assembly disclosed by the '910 patent is as follows: |



| US4,202,574 | Without limitation, U.S. Patent No. 4,202,574 to Redmayne discloses a lock assembly comprising a lid (18, 20) and interlocking means (27, 33, 50) for securing the cap to the bracket (Fig. 4). The lid has first 18 and second 20 mutually spaced flanges integrally joined by an intermediate web (Fig. 1 and 2). The jaw mechanically interengages with the lid and is carried by the lid for movement between the first and second flanges (Fig. 2). The lid is configured to be removably mounted on a side wall (Figs. 1 and 2). Force exerting means (28, 34) urges the jaw toward the first flange to clamp the sidewall (Figs. 1 and 2). The force exerting means (spring 34) urges the jaw towards the clamping position and maintains that position by resiliency of the force exerting means (C. 2, L. 33 − 35). In addition, Redmayne discloses that the jaw 26 is pivotally connected with the second flange (Figs. 1 and 2). In addition, Redmayne is inclined at an acute angle with respect to the first flange (Figs. 1 and 2). An |

illustration of an assembly disclosed by the '574 patent is as follows:



| US4254647 | Without limitation, U.S. Patent No. 4,254,647 to Finck, Jr. discloses lock assemblies for utility boxes. Without limitation, the '041 patent discloses a lock assembly comprising electric meter box 10, locking devices 20 and 100, various flanges, the force exerting means of screws 21 and 101, base 32 with, and bar 103 with stud 110. Illustrations of an assemblies disclosed by the '647 patent are as follows: |
|---|---|





| US4,313,319 | Without limitation, U.S. Patent No. 4,313,319 to Haus, Jr. discloses lock assemblies for utility boxes.  Without limitation, the '319 patent discloses a lock assembly comprising box 1, lock 14 employed with a body 6 having a bracket 7, and a force exerting means of bolt 8 forcing the bar 9 and plate 11 against opposite sites of wall 10.  An illustration of an assembly disclosed by the '319 patent is as follows: |
|---|---|



| US4,331,012 | Without limitation, U.S. Patent No. 4,331,012 to Swisher discloses lock assemblies for utility boxes. Without limitation, the '012 patent discloses a lock assembly comprising a lock enclosure 40, a barrel lock 15, and a bracket 20 comprised of flanges 24 and 25 connected by an intermediate web. An illustration of an assembly disclosed by the '012 patent is as follows: |



| US4,414,829 | Without limitation, U. S. Patent No. 4,414,829 to Nielsen, Jr., discloses a meter box lock assembly comprising a jaw 56 mechanically interengaged with and carried by a bracket 52; said jaw 56 engaging a box sidewall 16 below a ledge 58 to the sidewall. An illustration of an assembly disclosed by the '829 patent are as follows: |
| US4,474,041 | Without limitation, U.S. Patent No. 4,474,041 to Finck, Jr. discloses lock |

|  | assemblies for utility boxes. Without limitation, the '041 patent discloses a lock assembly comprising utility box B having cover C, lock housing and lock assembly 30 comprising flange member F, the force exerting means of bolt 43, and flange 41 and bar 44, which grip the side wall of utility box B like the jaws of a vice. An illustration of an assembly disclosed by the '041 patent is as follows:<br><br> |
|---|---|
| US4,759,733 | Without limitation, U. S. Patent No. 4,759,733 to Nishimura discloses a clamping mechanism comprising a clamping bracket assembly 12 and a clamping device 13 comprising a jaw. An illustration of an assembly disclosed by the '733 patent are as follows: |



US5,005,798

Without limitation, U. S. Patent No. 5,005,798 to McCoy discloses a mounting clamp 12 comprising bracket 35 having sides 38 and 480 and top 43; wall 46, force exerting means 50 which urges a jaw towards side 40 with wall 46 therebetween. An illustration of an assembly disclosed by the '798 patent are as follows:



US5,315,849

Without limitation, U. S. Patent No. 5,315,849 to Georgopoulos discloses meter box lock assembly comprising box 12, lock 14, body 46 having flange 48 which overlaps lid 24; and force exerting means comprising screw 92 which urges washer 96 towards body 74 with wall 20 therebetween.   An illustration of an assembly disclosed by the '849 patent are as follows:



| US5,568,916 | Without limitation, U. S. Patent No. 5,568,916 discloses a clamp comprising bracket 15 comprising inner flange 18 and outer flange 19; and a force exerting means comprising threaded member 26 having jaw 27 which urges towards jaw 17. An illustration of an assembly disclosed by the '916 patent are as follows:  |
| --- | --- |
| EP432,773 | Without limitation, European Patent 432,773 to Bohrs discloses a bracket having flanges, an intermediate web, a jaw between the brackets and a force exerting |

| | |
|---|---|
| | means which are capable of serving as part of a lock assembly for utility boxes. An illustration of a system disclosed by the EU '773 patent is as follows:  |
| US5,755,603 | Without limitation, U. S. Patent No. 5,755,603 to Kumita discloses a locking mechanism comprising clamp bracket 26 having flanges, which mounts to wall 12 using force the exerting means of clamp screw 28, which has a jaw. An illustration of an assembly disclosed by the '603 patent is as follows:  |
| C - Clamps |  E.g., |



| Right Angle Clamps | E.g., |
| --- | --- |
| Pipe Clamps | E.g., |
| Bar Clamps | E.g., |
| Sliding Arm Clamps | E.g., |
| Lever Clamps | E.g., |



| Grip Clamps | |
| Framing Clamps | E.g., |
| Cam Clamps | E.g., |
| K Body Clamps | E.g., |
| Claw Clamps | E.g., |

| Angle Clamps |  |
| --- | --- |
| | E.g., |
| Vices | |
| | E.g., |

In addition, prior art to the '691 patent includes the commercial embodiments of the foregoing patents.

In addition, prior art to the '691 patent includes commercial products of companies such as Inner-Tite, DeWalch Technologies, McGard Inc., and Highfield Manufacturing Company which are on-sale, publicly used and publicly known, for example through displays at trade shows and on the internet.

In addition, prior art to the '691 patent includes those patents on DEW00001 not listed hereinabove.

In addition, prior art to the '691 patent includes the references cited on the face of the patents listed hereinabove.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

<u>Interrogatory No. 6</u>:

State the basis for, and identify the documents describing, your contention of the art to which you maintain the '691 patent pertains, including a description of the level of ordinary skill

in such art in the period February 1, 1998 - March 31, 2000, and the specific qualifications (e.g., education and experience) that you contend one of ordinary skill in such art would have possessed in the period February 1, 1998 - March 31, 2000.

<u>Response:</u>

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory to the extent it seeks discovery of confidential information prior to the entry of a protective order, and to the extent it seeks discovery of attorney-client privileged information or work product. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

The art of the '691 patent pertains to locks, vices and clamps, including such devices using brackets, flanges, and jaws, which have been widely sold, publicly used, depicted in publications and publicly known, prior to March 10, 2000, including the Prior Art References listed hereinabove. DeWalch objects to disclosing further information responsive to this Interrogatory in the absence of a protective order.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

<u>Interrogatory No. 7:</u>

State the basis for, and identify the documents supporting, your contention that defendant has not willfully infringed the '691 patent.

<u>Response:</u>

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory to the extent it seeks discovery of

confidential information prior to the entry of a protective order, and to the extent it seeks discovery of attorney-client privileged information or work product. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

Without limitation, DeWalch has a reasonable and good faith belief that it has not infringed any valid claims of the '691 patent. See DeWalch's answers to Interrogatory Nos. 1, 3 & 4, which are incorporated herein by reference.

In addition, DeWalch has received an opinion of counsel relative to the '691 patent. However, at the present time, said opinion is attorney-client privileged.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

Interrogatory No. 8:

Identify all documents supporting each of your claims or defenses in this lawsuit, grouped by claim or defense.

Response:

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory because it is overbroad and unduly burdensome, to the extent it seeks discovery of confidential or trade secret information prior to the entry of a protective order, and to the extent it seeks discovery of attorney-client privileged information or work product. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

The documents supporting DeWalch's noninfringement defense presently include the following: the ProLock device, representative pictures and drawings of the ProLock, the '691 patent, and the prosecution history of the '691 patent.

The documents supporting DeWalch's invalidity and unenforceability defenses presently include the following: the '691 patent, the prosecution history of the '691 patent; and prior art locks, brackets, and clamps including those set forth at Interrogatory No. 3 hereinabove.

The documents supporting DeWalch's estoppel defense are the '691 patent and the prosecution history of the '691 patent.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

Interrogatory No. 9:

Identify all persons who contributed to, or participated in, your responding to these interrogatories, or to plaintiff's requests for production or requests for admission.

Response:

N. Binz DeWalch, in consultation with DeWalch's counsel of record.

Interrogatory No. 10:

State the basis for each denial of each of the accompanying requests for admissions that is denied by defendant.

Response:

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory to the extent it seeks discovery of attorney-client privileged information or work product. In addition, DeWalch objects to this interrogatory because it has seven discreet subparts. In responding to this Interrogatory,

41

DeWalch will count its responses as those to seven separate interrogatories. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

Interrogatory 10, Subpart 1:

[State the basis for the denial of Request for Admission No. 2.]

Response to Interrogatory 10, Subpart 1:

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory to the extent it seeks discovery of attorney-client privileged information or work product. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

DeWalch denied this Request for Admission because of the facts and circumstances concerning the Applicant's election of Species I - Figures 2-4, as described hereinabove.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

Interrogatory 10, Subpart 2:

[State the basis for the denial of Request for Admission No. 3.]

Response to Interrogatory 10, Subpart 2:

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory to the extent it seeks discovery of attorney-client privileged information or work product. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

This Request for Admission was denied at least because the ProLock is not necessarily for use in combination with a utility box. The ProLock may be used for enclosures other than utility boxes, for example various types of boxes such as tool boxes, lock boxes, fuse boxes, breaker boxes, and various configurations of ANSI compliant electrical boxes, and various types of cabinets such as key cabinets.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

Interrogatory 10, Subpart 3:

[State the basis for the denial of Request for Admission No. 4.]

Response to Interrogatory 10, Subpart 3:

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory to the extent it seeks discovery of attorney-client privileged information or work product. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

This Request for Admission was denied at least because the ProLock per se does not maintain the cover of a utility box in its closed position. Rather, the ProLock per se consists of elements not including a meter box. In addition, the ProLock does not necessarily maintain the cover of a utility box in its closed position. The ProLock may be used for enclosures other than utility boxes, for example various types of boxes such as tool boxes, lock boxes, fuse boxes, breaker boxes, and various configurations of ANSI compliant electrical boxes, and various types of cabinets such as key cabinets.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

<u>Interrogatory 10, Subpart 4</u>:

[State the basis for the denial of Request for Admission No. 5.]

<u>Response to Interrogatory 10, Subpart 4</u>:

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory to the extent it seeks discovery of attorney-client privileged information or work product. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

This Request for Admission was denied at least because DeWalch does not know what "mutually spaced" means.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

<u>Interrogatory 10, Subpart 5</u>:

[State the basis for the denial of Request for Admission No. 6.]

<u>Response to Interrogatory 10, Subpart 5</u>:

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory to the extent it seeks discovery of attorney-client privileged information or work product. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows: .

This Request for Admission was denied at least because the ProLock does not include a jaw mechanically interengaged with and carried by the bracket for movement between the first and second flanges, the bracket being configured for removable mounting on the side wall, with the intermediate web interposed between the cover and the upper edge of the side wall, and with the first flange and the jaw respectively located adjacent exterior and interior surfaces of the side wall.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

Interrogatory 10, Subpart 6:

[State the basis for the denial of Request for Admission No. 7.]

Response to Interrogatory 10, Subpart 6:

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory to the extent it seeks discovery of attorney-client privileged information or work product.  Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

This Request for Admission was denied at least because the ProLock per se does not include the side wall of a utility box.  Rather, the ProLock per se consists of elements not including a utility box.  In addition, the ProLock's locking, compression or clamping member or plate is not between two flanges.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

Interrogatory 10, Subpart 7:

[State the basis for the denial of Request for Admission No. 8.]

Response to Interrogatory 10, Subpart 7:

Subject to and without waiving the general objections, which are incorporated herein as if fully set forth at length, DeWalch objects to this Interrogatory to the extent it seeks discovery of attorney-client privileged information or work product. Subject to and without waiving the foregoing objections, based upon non-privileged information presently available, DeWalch responds to this Interrogatory as follows:

This Request for Admission was denied at least because the ProLock per se does not include the side wall of a utility box. Rather, the ProLock per se consists of elements not including a utility box. In addition, the force exerting means for the ProLock's locking, compression or clamping member or plate is different from that covered by claim 1 of the '691 patent.

DeWalch will supplement this response, as appropriate, in accordance with the Federal Rules of Civil Procedure, the Local Rules and the Court's rulings.

Respectfully submitted,

Peter E. Mims
Texas Bar No. 14173275 – Admitted pro hac vice
John J. Edmonds
Texas Bar No. 00789758 - – Admitted pro hac vice
David K. Wooten
Texas Bar No. 24033477 – Admitted pro hac vice
VINSON & ELKINS, L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760

713.758.2732  (telephone)
713.615.5703  (facsimile)

Denise W. DeFranco
BBO 558859
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
617.832.1202  (telephone)
617.832.7000  (facsimile)

ATTORNEYS FOR DEFENDANT
DEWALCH TECHNOLOGIES, INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document has been duly served pursuant to the Rules of Court and Federal Rules of Civil Procedure upon counsel of record as follows, on this the 5th day of May, 2005:

Mr. Maurice E. Gauthier
Gauthier & Connors LLP
225 Franklin Street, Suite 3300
Boston, Massachusetts 02110
(by Express Mail and e-mail)

Denise W. DeFranco
BBO 558859
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, Massachusetts 02210
(by U.S. Mail)

_____

John J. Edmonds

47