# EXHIBIT F

To Opposition To Motion To Continue Discovery And To Extend The Pretrial Schedule

filed

October 23, 2007

in

Civil Action 04-40219 FDS

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INNER-TITE CORP. | § § § | |
| Plaintiff | § § | |
| v. | § § | CIVIL ACTION NO. 04-40219 |
| DEWALCH TECHNOLOGIES, INC. | § § § | **FILED UNDER SEAL** |
| Defendant | § | |

## **DECLARATION OF BINZ DEWALCH**

Binz DeWalch, being duly sworn, deposes and says that:

1.  My name is Binz DeWalch. I am over eighteen (18) years of age and fully competent in all respects to give this Declaration. All statements of fact in this Declaration are of my own personal knowledge and are true and correct. All statements made on information and belief in this Declaration, which are noted herein when made, are believed to be true.

2.  I am the President and Chairman of the Board of DeWalch Technologies, Inc. I received my B.S. in Mechanical Engineering from the University of Texas in 1981. I have worked in the area of mechanical engineering, particularly in product design of utility locking hardware, since 1982. I have extensive experience in design and application of locks and security products for utility applications. I am the inventor or co-inventor of ten issued U.S. patents related to utility locking hardware, including U.S. Patent Nos. 6,386,006, 6,032,989, 5,960,653, 5,870,911, 5,542,722, 5,001,912, D296,414, 4,742,703, 4,702,093, and 4,685,317. Products that I have designed are in wide-spread use by major utility companies throughout the United States, Canada and Mexico. A true and correct copy of my curriculum vitae is attached as Exhibit 1 hereto.

1

3. I have reviewed the specification and claims of U.S. Patent No. 6,763,691 (the '691 Patent). I have also reviewed the file history for the '691 patent. I am one skilled in the art with respect to the subject matter of the '691 Patent. Attached hereto as Exhibit 2 is a true and correct copy of the '691 Patent. Attached hereto as Exhibit 3 is a true and correct copy of the file history for the '691 Patent received from the United States Patent Office. Attached hereto as Exhibit 4 is a true and correct copy of an office action dated May 5, 2002 from the file history for the '691 Patent. Attached as Exhibit 5 is a true and correct copy of the response to the foregoing office action from the file history for the '691 Patent. Attached as Exhibit 6 is a true and correct copy of United States Patent No. 4,080,811. Attached as Exhibit 7 is a true and correct copy of U.S. Patent Nos. 4,414,829.

4. I have reviewed the proposed claim construction of "between" proposed by Inner-Tite. I agree that the term "between" in the claim limitation "jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges" in claim 1 of the '691 Patent should be construed as "in or through the space that separates."

5. Portions of Figures 2 and 3 from the '691 Patent are reproduced below. These Figures show assembled and disassembled views with certain parts shown with color: first flange (green), second flange (blue), intermediate web (yellow), jaw (purple) and the space between the first and second flange (orange):



The Figures of the '691 Patent shown in this Declaration have been modified by me using Adobe Illustrator software to add color to facilitate the explanation provided in this Declaration. I copied the various Figures from an Adobe Acrobat PDF file downloaded from the United States Patent Office. According to the '691 Patent, Figures 2 and 3 show "a mounting bracket 28 having first and second mutually spaced and angularly disposed flanges 30, 32 integrally joined by an intermediate web 34." '691 Patent, col. 2, lines 48-51. As can be seen in Figure 2, when assembled, the jaw 38 is "carried" in the space that is "between" the first and second flanges 30 and 32 of mounting bracket 28. The jaw 38 is described as "carried by the mounting bracket for movement between the first and second flanges." Id., col. 1, lines 60-62.

6.  The other Figures in the '691 Patent show a similar view of the wedge-shaped space between the first and second flanges:

3



All four types of utility box lock assemblies described in the '691 Patent differ from one another largely by the mechanism ("force exerting means") that is used to urge the jaw into engagement with the side wall of the meter box. All of the examples shown in the '691 Patent, however, show a jaw interengaged with and carried by a mounting bracket for movement between the first and second flanges of the mounting bracket. All jaws shown in the '691 Patent are located within the orange wedge-shaped space in the Figures.

7. In my opinion, for a jaw to be carried for "movement between" the two flanges of the mounting bracket, the jaw has to be located between, or "in or through the space that separates," the two flanges of the mounting bracket. This space is the three-dimensional wedge-shaped space between the first and second flanges. In the drawing below, the orange indicates a side-view of this wedge-shaped space, which is bounded by the interior surfaces of the first and second flanges of the mounting bracket. The drawing below, which is taken from Figure 3 of the '691 Patent and has been modified by me using Adobe Illustrator software to add color to facilitate the explanation of the meaning

of the term "between," provides a different view of the orange wedge-shaped space between the first and second flanges of the mounting bracket in the '691 Patent:



In other words, for a jaw to be "mechanically interengaged with and carried by said bracket for movement between said first and second flanges" as claimed in the '691 Patent, a jaw would have to be located in the orange wedge-shaped space between the first flange and the second flange.

8.   I am very familiar with the two ProLock locking assemblies (the "ProLock Products") that are at issue in this lawsuit. Attached to this Declaration as Exhibit 8 are true and correct copies of DeWalch Technologies, Inc. Drawing Numbers 601049-1, 601049-2, 601050, and 601051, each of which has been designated as "CONFIDENTIAL" under the Protective Order in this case.  Also being filed concurrently with this Declaration are two envelopes with the ProLock Products 1 and 2 at issue in this lawsuit. (To simplify the issues, the ProLock Products being filed do not include the cap and barrel lock used with the ProLock Products.) The envelope marked Exhibit 9 contains a sample of the ProLock Product 1. The envelope marked Exhibit 10

5

contains a sample of the ProLock Product 2. Finally, being filed with this Declaration as Exhibit 11 is a utility box used with the ProLock Products. The utility box will allow the Court to view the use of the ProLock Products described in this Declaration.

    9.    Each of the ProLock Products has a bracket, a clamping member, and a lever. I have shown below the components of the ProLock Product 1 in an external, isometric view with some annotation. This drawing was generated using solid modeling software employing the information contained in the manufacturing drawings for the ProLock Products. In other words, the manufacturing drawings were generated using the same information. These images are an accurate representation of the two ProLock Products. I added the labels to the drawings using Adobe Illustrator software.



6

10.  The ProLock Product 1 shown above includes a bracket with first and second flanges that are located on either side of an intermediate web. The following drawing shows an exploded view of the three parts of the ProLock Product 1 with color coding to emphasize the different parts of the mounting bracket. Note that this view makes it possible to see both the first and second flanges of the mounting bracket:



When the ProLock Product 1 is assembled, the clamping member of the ProLock Product 1 is outside of, and rotates outside of, the flanges of the mounting bracket. The clamping member never enters or crosses into the orange wedge-shaped space between the two flanges.

11.  The ProLock Product 2 is similar to the ProLock Product 1; however, it has been modified to incorporate a new feature. A portion of the clamping member has been removed to provide material for secondary engagement tabs to better grip the utility box after installation for additional security. The drawing below is the ProLock Product 2:

7



removed portion

secondary engagement tabs

It should be noted that with the removed portion and the secondary engagement tabs, the ProLock Product 2 is even farther from the wedge-shaped space between the two flanges of the mounting bracket. Thus, the clamping member of the ProLock Product 2 is outside of, and rotates outside of, the flanges of the mounting bracket. The clamping member never enters or crosses into the orange wedge-shaped space between the two flanges.

12.     Referring to Drawing No. 601051, which is a part of Exhibit 8 and is a drawing for the bracket used in both ProLock Products, the wedge-shaped space can be seen by drawing a line from the bottom end of first flange of the mounting bracket, which can be identified by the 0.385 inches dimension, to the bottom end of the second flange, which can be identified by the 1.040 inches dimension.

13.     The clamping members of the ProLock Products operate in a substantially different way than the jaw of claim 1 of the '691 Patent. The jaw of claim 1 that moves "between" the flanges of the bracket, acting in concert with the first flange of the mounting bracket, compresses or crushes the sidewall of the utility box. The clamping members of the ProLock Products, however, are not mounted for movement between the

8

flanges of the bracket, but are instead located outside of the flanges of the mounting bracket. Thus, the clamping members of the ProLock Products, acting in concert with the first flange of the mounting bracket, places portions of the sidewall of the utility box in sheer and in bending rather than in compression. As a result, the clamping members operate in a substantially different way from a jaw that is interengaged with and carried by the mounting bracket for movement between the flanges of the bracket, and thus, is not an equivalent.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 19, 2006.

_____
Binz DeWalch

9