UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INNER-TITE CORP  <br><br>　　　　Plaintiff,  <br><br>v.  <br><br>DEWALCH TECHNOLOGIES, INC.  <br><br>　　　　Defendant. | Civil Action No.  <br>04 40219 FDS |

**OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER THE DECISION DENYING SUMMARY JUDGMENT AND TO STRIKE AFFIDAVITS**

In its motion under Fed.R.Civ.P., Rule 60(b), DeWalch argues that it obtained admissions that the drawings submitted with the Rafferty Affidavit on May 19, 2006 were inaccurate, and that in view of this the court should reconsider its decision and order dated August 31, 2007 and grant summary judgment for DeWalch.

As an initial matter, defendant's motion is inappropriate as Rule 60 relates to a court providing *relief* from *judgment*, not *granting* summary judgment in its favor. In short, the court *denied* plaintiff's motion for summary judgment, so there is no judgment from which defendant may seek relief under Fed.R.Civ.P., Rule 60. The motion should be denied on this ground alone.

**I.     The ProLock products do Not all Function in a Uniform Manner**

Turning to the underlying arguments, DeWalch asserts that Mr. Rafferty admitted during his deposition that the drawings from the Rafferty affidavit did not accurately depict a ProLock product that Mr. Rafferty had in front of him ***at the deposition***.

The premise of DeWalch's motion is that the ProLock products *all* clamp the wall of a meter box in *exactly the same way*. As discussed in detail below however, the ProLock products do *not* all function in exactly the same way. DeWalch asserts that its ProLock products clamp meter box walls above the ledge of the meter box wall but not below the ledge:



DeWalch's Supplemental Declaration (Exhibit 1 attached hereto), pp. 4, 12 and 15.

The drawings attached to the Rafferty Affidavit filed on May 19, 2006 show the lower panel of the clamping member contacting the meter box wall below the ledge.



Page 2

Rafferty Affidavit Filed May 19, 2006 (Docket Item No. 36), ¶¶ 5 – 8, and Exhibits A and B attached thereto.

During his deposition, however, Mr. Rafferty applied a ProLock product to a meter box wall, and found that both the side panels contacted the meter box wall above the ledge, *and* the lower panel contacted the meter box wall below the ledge.



Rafferty Deposition Transcript (Exhibit A to Defendant's Memorandum).

DeWalch's own patent, in fact, discloses that the clamp may contact the wall either above the ledge, below the ledge or both.



U.S. Patent No. 7,176,376 (Exhibit 2 attached hereto), col.4, line 64 – col.5, line 8.

As detailed below in this Memorandum 1) the ProLock Products are not consistent in how they contact meter box walls, and 2) patent infringement in this case exists regardless of how the ProLock products contact the meter box wall.

During his deposition, Mr. Rafferty had before him a product that was not the same as the product that he measured, so defendant's reference to the alleged Rafferty "admission" is misleading.

### a) Some ProLock Products Engage the Wall Above the Ledge Only

DeWalch asserted in the Supplemental Declaration of Binz DeWalch filed June 16, 2006 (Docket Item 51, and a copy of which is attached as Exhibit A hereto) that the side panels of the ProLock products contact the wall of a meter box above the ledge in the wall, but that the lower panel of the ProLock products does not contact the wall under the ledge (Exhibit 1 attached hereto, pp.4, 12 and 15).

The following image, for example, was included in the Supplemental Declaration on page 12.



Exhibit 1, p.12.

The declaration states that as can be seen in the photographs included therein "the lower panel of the clamping member of each of the ProLock products does not 'grip or crush' like the jaw of the '691 patent" (Exhibit 1, p.4), and states that the product was designed to include a gap between the lower panel and the wall (Exhibit 1, pp.12 and 15).

    **b)**    **The ProLock Products shown in the Drawings in the Rafferty Affidavit Engage the Wall Below the Ledge**

As presented in the Affidavit of Mr. Rafferty that was submitted on May 19, 2006, the lower panel of the clamping member engaged the wall of a meter box below the ledge (Docket Item 36, Exhibits A and B attached thereto).

As detailed below, however, the deposition of Mr. Rafferty demonstrated that not all ProLock products work in the same way. In short, the ProLock products are inconsistent.

    **c)**    **Some ProLock Products Engage the Wall Above the Ledge and Also Engage the Wall Below the Ledge**

During the Rafferty deposition on November 27, 2007, a ProLock product was clamped to a wall of a meter box by Mr. Rafferty. DeWalch's counsel brought both the meter box (Rafferty Deposition Exhibit 16) and the ProLock product (Rafferty Deposition Exhibit 9) to the deposition.

When the ProLock product was clamped onto the meter box wall, the lower panel of the product clearly engaged the wall under the ledge (as well as above the ledge), contrary to the above testimony of Binz DeWalch (See the Rafferty Deposition, attached to Defendant's Memorandum as Exhibit A p. 171, line 6 – p. 10 and p. 176, line 17 – p.178, line 3).

During the deposition of Mr. Rafferty, counsel for defendant employed all new terminology for describing the ProLock product. In particular, counsel for defendant had

Mr. Rafferty use the term "buffalo face" in referring to the side panel of the clamp member (Exhibit A, p.6, lines 10 – 17) and use the term "front edge of the buffalo face" in referring to the contact surface of the side panel (Exhibit A, p.66, line 10 – p.67, line 4). The contact surface of the lower panel was then referred to by counsel for defendant as "feet" (Exhibit A, p.176, line 18 – p.177, line 3). Upon clamping the ProLock product (Rafferty Deposition Exhibit 9) to a wall of the meter box (Rafferty Deposition Exhibit 16), Mr. Rafferty observed that both the "face" and the "feet" were applying force to the meter box wall (Exhibit A, p.176, line 17 – p.177, line 12).

Moreover, as shown below, the lower panel of the ProLock product left marks on the wall under the ledge:



Rafferty Deposition Exhibit 16. An enlarged view of these marks is shown below:



Rafferty Deposition Exhibit 16 (enlarged view).

These indentations clearly show that contrary to the testimony of Mr. Binz DeWalch and consistent with the testimony of Robert Rafferty, the lower panel of that ProLock product engaged the wall of the meter boxes below the ledge.

Mr. Rafferty also had a section of a meter box wall with him at the deposition, and the same types of marks appeared on the wall section (Rafferty Deposition Exhibit 3) when a ProLock product was clamped onto the wall section during the deposition as shown below.



Rafferty Deposition Exhibit 3.

The Rafferty deposition, therefore, demonstrated that certain ProLock products engage meter box walls below the ledge, which is contrary to the assertions made by DeWalch. Mr. Rafferty also testified that he has since seen DeWalch products engage walls under the ledge only and others that do not engage the meter box wall at all.

As asked and answered by Mr. Rafferty during his deposition:

> Q. Since May of last year, have you ever seen a ProLock product that engages the sidewall of the meter box above the ledge only?
>
> A. Yes, I have.
>
> Q. Have you ever seen a ProLock product that engages below the ledge only?
>
> A. Yes, I believe my drawings --
>
> Q. Have you ever seen a ProLock product that engages both above and below the ledge?
>
> A. Yes.
>
> Q. Have you ever seen a ProLock product that doesn't engage the ledge {sic} [wall] at all?
>
> A. Yes. I had one that, again, I think it was another sample from industry, and I put it on a box, and I could even in a fully clamped position just slide it back and forth. I tried it on several boxes, different brands, different sizes, and it never fully clamped on the box, didn't touch anywhere.

Exhibit A, p.189, line 5 – p.190, line 1.

Defendant's motion relies on an assumption that each of the ProLock products is like all other ProLock products, which Mr. Rafferty's deposition demonstrates is not the case.

### d) DeWalch's own patent discloses that the clamp may engage either above the ledge or below the ledge or both above and below the Ledge

In his Supplemental Declaration, Binz DeWalch states that "[t]he ProLock products were designed to include a gap between the lower panel of the clamping member and the side wall of the utility meter box" (Exhibit 1, p.12). Defendant's own patent (a copy of which is attached hereto as Exhibit 2) that is alleged to cover the ProLock product, however, not only fails to mention this gap, but discloses that clamping

above the ledge, below the ledge and/or both are all sufficient.  No approach is disclosed to be preferred.  Figure 4A of the patent is as follows.



FIG. 4a

Exhibit 2, Figure 4a (emphasis added).

The DeWalch patent shows a lock product that includes a clamp actuating member 150, a body portion of a clamp actuating member 70 (referred to therein as a bracket), and a clamp 190 that includes engagement surfaces 200 and 215 as shown below (Exhibit 2, col.4, lines 39 – 42 and 50 – 53).

The DeWalch patent states that in certain embodiments "engagement surface 200 also clamps beneath the wall portion" and that in further embodiments "engagement surface 215 does not clamp the upper wall portion [and] only engagement surface 200 is secured beneath [the ledge]" (Exhibit 2, col.4, lines 57 – 61).  The DeWalch patent then states that:

> Referring again to FIG. 4a, when clamp actuating member 150 is rotated about actuable member 180, arced surface 170 contacts

> clamp 190, and through a cam-type action, sandwiches *one (or both) of the clamp engagement surfaces 200, 215* between clamp actuating member 150 and wall portion 140, thereby creating a constant engagement surface along the interface between wall portion 140 and engagement surface 200. In another embodiment, the force applied to actuate clamp actuating member 150 into a fully engaged or secured position is translated and mechanically multiplied by the clamping force imparted by *one (or both) of engagement surfaces 200, 215* onto wall portion 140.

Exhibit 2, col. 4, line 64 – col.5, line 8) (*emphasis added*).

The DeWalch products, therefore, do not appear to have been designed to have the asserted *gap*, and are disclosed in the defendant's patent to work in each of the above ways.

> **e)    Whether the ProLock products engage the wall above the ledge, below the ledge, or both is not pertinent to the claim language at issue**

The engagement issue is a diversion. The claim language at issue in this case does not involve a question of whether the ProLock products engage the wall of a meter box above or below the ledge, but rather is directed to whether the ProLock products include "a jaw that is mechanically interengaged with and carried by said bracket for movement between said first and second flanges" (Exhibit 3, col.4, lines 32 – 34).

DeWalch's focus on which portion of the clamp of the ProLock products first contacts a meter box wall is a distraction from the central issue at hand, which is whether the ProLock products include "(1) either of two mechanical parts that open and close to grip or crush something, as in a monkey wrench or vise, (2) mechanically interengaged with and carried by said bracket (3) for movement in or through the space that separates the first and second flanges." as held by the court in its Memorandum and Order dated August 31, 2007 .

Further, the embodiments shown in Inner-Tite's patent (Exhibit 3) also include jaws that contact the wall of a meter box above the ledge and/or below the ledge (Exhibit 3, Figures 2, 4, 5B and 6B).

      **f)     Whether the drawings show the ProLock products overlapped or over-rotated is also not pertinent to the claim language at issue**

Again, the central issue before the court is whether the ProLock products include the claim language at issue. Neither the court's decision denying summary judgment nor any of the issues remaining in this case, involves consideration of whether a portion of one element in Mr. Rafferty's drawings "overlapped" another or is "over-rotated" with respect to another portion of the drawings. The only issue in this case is whether the ProLock products include the claim language in dispute as construed by the court, either literally or under the doctrine of equivalents.

During the Rafferty deposition, DeWalch's counsel zoomed in (via computer) on the renderings created by Mr. Rafferty almost to a pixel scale in an effort to show such overlap and over-rotation (Exhibit A, p.140, line 21 – p. 141, line 2). Such games do not establish fraud or deceit, or that defendant is now somehow entitled to summary judgment in its favor.

**II.    Mr. Rafferty Maintains that the Affidavit and the Drawings are Accurate to the best of his knowledge**

Contrary to the assertions by DeWalch that Mr.Rafferty admitted that the drawings were inaccurate, Mr. Rafferty stated that the drawings did not accurately represent the products that he had ***before him at the deposition*** (Exhibit A, p. 63, lines 12 – 20). As detailed above, the DeWalch products are not consistent. Mr. Rafferty responded to the following question as follows:

>   Q.   Is there anything about your drawings, sitting here today, that you would like to correct about your drawings that you don't think accurately depicts our product or - -excuse me – DeWalch;s product?
>
>   A.   I believe at the time I made this – and I still believe now -- the products that I measured this accurately depicts. I have seen other products made by DeWalch that rotate slightly differently.

Exhibit A to defendant's Memorandum, p. 63, lines 12 – 20. Despite defendant's counsel's repeated efforts to characterize all of the ProLock products as being exactly the same, Mr. Rafferty maintained that they are not (Exhibit A, p.63, lines 1 – 11, p.77, lines 5 – 12, p.78, line 8 – p.79, line 3, p.81, line 2 – p.82, line 2, p. 145, line 16 – p. 146, line 1, and p.191, lines 8 – 13).

### a)   Prior to May 2006, Robert Rafferty believed that the ProLock products were uniform and consistent

Prior to June 2006 (when defendant filed its opposition to Inner-Tite's motion for summary judgment, Mr. Rafferty had no reason to believe that the DeWalch products were not consistent (Exhibit A, p.186, lines 22 – p.187, line 20, and p.188, lines 12 - 19). Since that time, Mr. Rafferty has seen ProLock products that engage meter box walls both above and below the ledge of a side wall, and has seen ProLock products that engage meter box walls below the ledge only and above the ledge only (Exhibit A, p.189, line 5 – p. 190, line 191, line 1).

In short, prior to this issue being raised by defendant, Mr. Rafferty had no reason to expect that the samples were not consistent, but has since discovered that the ProLock products vary with regard to whether the clamp on the side wall of a meter box either above and/or below the ledge. As explained by Mr. Rafferty, the important aspect of any lock is that is be secured on the wall such that a portion of the jaw (or the lower panel) is

positioned below the ledge such that the lock cannot be pulled off (Exhibit A, p.195, line 21 – p. 196, line 8).

### b) Mr. Rafferty did not discard the samples that he measured

Because at the time that Mr. Rafferty took the measurements of the ProLock 1 product (prior to May 2006) and even when he took the measurements of the ProLock 2 product, Mr. Rafferty did not expect that the ProLock products were inconsistent, Mr. Rafferty did not set aside and preserve the sample products that he measured. In fact, one product was borrowed from a customer with the understanding that it would be returned to the customer (Exhibit A, p.95, line 15 – p.97, line 9), and the other remained at Inner-Tite but was later mixed with other sample products.

The actual sample products measured, therefore, were not discarded, but rather were returned to a customer or not tracked because Mr. Rafferty expected that each ProLock sample was the same. As detailed above, he later learned that this is not the case.

### c) Mr. Rafferty did not ignore defendant's production drawings

DeWalch's arguments that Mr. Rafferty ignored detailed drawings produced by DeWalch are also misleading as the drawings were produced by DeWalch as CONFIDENTIAL ATTORNEYS EYES ONLY, and this level of confidentiality was removed by counsel at the deposition upon showing the drawings to Mr. Rafferty (Exhibit A, p.88, line 19 – p.89, line 19). Here again, defendant's arguments are based on misleading and incomplete information.

**III.   Inner-Tite has Learned from the deposition of the inventor of the ProLock product, Mr. Stachowiak, Jr., that Binz DeWalch's testimony was not accurate**

During the Stachowiak deposition, the inventor of the ProLock product (Mr. John Stachowiak, Jr.) provided testimony that was inconsistent with the testimony of Mr. Binz DeWalch.  A copy of the transcript of the Stachowiak deposition is attached hereto as Exhibit 4.

**a)   Mr. Stachowiak, Jr. does not support Binz DeWalch's presentation of the alleged critical forces demonstrated by Binz DeWalch**

In the declaration of Mr. DeWalch that is attached hereto as Exhibit 1, he describes the alleged forces at issue in clamping the ProLock product that result in "shear and bending" with reference, in part, to the following marked-up photograph.



Mr. Stachowiak, Jr., however, testified that unlike the arrows included in the picture, the forces being applied in the actual product are not point forces, but rather are forces spread over an area (See Exhibit 4 attached hereto, p.52, lines 15 – 25).  Mr Stachowiak, Jr. drew a force diagram at the deposition from a view above looking down on the edge of a meter box wall as follows:



Exhibit 5 attached hereto (which is Exhibit TX-88 from the deposition of Mr. Stachowiak, Jr.).

The notation A indicates the area of forces (as seen from above) associated with the side panels, and the notation B indicates the area of force (again as seen from above) associated with the first flange (Exhibit 4, p.55, line 10 – p.56, line 25).

Mr Stachowiak, Jr. also later testified that upon reviewing the DeWalch ProLock drawings (Exhibit TX-91), the distance of offset on either side of the force area B between the force area B and each of the force areas A is 30/1000 of an inch (Exhibit 4, p.82, line 4 – p.83, line 11).

This testimony of Mr. Stachowiak, Jr. directly conflicts with the testimony of Mr. DeWalch in his affidavit that the forces shown in the above photograph as indicated in green arrows act to place the walls of a utility box in shear and bending.  The grossly exaggerated distance between the arrows A and B in the photograph is clearly designed to exaggerate the alleged bending forces.  The reality is that area forces are involved, and that these areas separated by a mere 30/1000 of an inch.

      **b)     Mr. Stachowiak, Jr. also does not support Binz DeWalch's demonstration of these forces as presented to the court on July 26, 2006**

At the hearing on the cross motions for summary judgment on July 26, 2006, Mr. Binz DeWalch demonstrated the alleged forces that cause the bending by clamping the ProLock product onto a thin ruler (Transcript of Hearing, page 38). When the same presentation was made to Mr. Stachowiak, Jr., however, he did not agree that the demonstration was demonstrative of the forces involved in clamping a ProLock product onto a meter box wall (Exhibit 4, p.111, line 14 – p.113, line 2). Mr. Stachowiak, Jr. in fact stated as follows:

> Q:    But the forces would act the same way or apply the same sort of way to deflect the metal wall, just in a lesser quantity?
>
> A:    No, because the thickness of the wall – a thickness of the wall has everything to do with the function and the deflection that the ProLock has provided
>
> Q:    (By Mr. Mims) Can you explain what you mean by that?
>
> A:    Yes.
>
> Q:    The deflection?
>
> A:    There is – the device is designed to deflect to operate on a certain thickness of a – of a box. It needs to be – the thickness needs to remain somewhat constant in order to provide the correct clamping force.
>     If something that is too thin is inserted between – or in that region, it will not – it will not apply force, if any. It just –
>
> Q:    It won't clamp correctly?
>
> A:    It will not clamp correctly; that's right.

Exhibit 4, p.111, line 18 – p.112, line 13.

The testimony of Mr. DeWalch at the hearing, therefore, is directly contradicted by the testimony of Mr. Stachowiak, Jr. at his deposition.

## IV. CONCLUSION

Plaintiff, Inner - Tite Corp. requests that the court deny defendant's motion to reconsider its decision and order dated August 31, 2007.

Respectfully submitted,

Inner-Tite Corp.

By Plaintiff's attorneys,

   /s/ William E. Hilton

Dated: December 14, 2007

Maurice E. Gauthier, BBO# 187340
William E. Hilton, BBO# 559515
Gauthier & Connors, LLP
225 Franklin Street, Suite 2300
Boston, Massachusetts  02110
(617) 426 - 9180   Ext. 111

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper copies will be sent to persons indicated as non-registered participants on December 14, 2007 by First Class Mail.

   /s/William E. Hilton
   William E. Hilton