UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INNER-TITE CORP.<br><br>    Plaintiff,<br><br>v.<br><br>DEWALCH TECHNOLOGIES, INC.<br><br>    Defendant. | Civil Action No.<br>04 40219 FDS |

**PLAINTIFF'S PROPOSED**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Following a bench trial that began on February 27, 2008 and having considered all of the evidence submitted therein, the Court finds and concludes as follows. Attached hereto as Exhibit A is Plaintiff's Proposed Order.

**I. BACKGROUND**

 **A. The Parties**

Plaintiff Inner-Tite Corp. (hereafter Inner-Tite) of Holden, Massachusetts is a recognized leader in the design and manufacture of meter security and locking devices for electric, gas, water utility and cable television companies worldwide. Meter security and locking devices generally provide locking assemblies that prevent unauthorized access to utility meter boxes that measure the usage of electric power, gas, water, or cable television access at a particular location. In about March, 2000 Inner-Tite introduced its

Jiffy Lock product. On July 20, 2004 Inner-Tite was awarded U.S. Patent No. 6,763,691 (the '691 patent) for the invention relating to the Jiffy Lock product.

Defendant DeWalch Technologies, Inc. (hereafter DeWalch) of Houston, Texas also sells locking systems for utility companies. DeWalch has sold and/or currently sells a ProLock 1 product and a ProLock 2 product. Inner-Tite became aware of the ProLock 1 product in 2004. The ProLock 2 product is a modified version of the ProLock 1 product, and was introduced in April 2006.

### B.     Procedural Background

This action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 100 et seq. Neither jurisdiction nor venue is contested.

Inner-Tite is the assignee of all right, title and interest in and to the '691 patent, which was duly and legally issued by the United States Patent and Trademark Office on July 20, 2004. In the present action, Inner-Tite alleges that DeWalch's ProLock 1 and ProLock 2 products each infringe claim 1 of the '691 patent.

On April 19, 2006 the parties filed a stipulation concerning an agreement to narrow the issues in this action. The parties agreed to narrow the issues to the single issue of whether either or both of the ProLock 1 and ProLock 2 products include certain language from claim 1 of the '691 patent either literally or under the doctrine of equivalents. The only contested language from claim 1 of the '691 patent is shown below in bold:

> 1. For use in combination with a utility box having a bottom, a side wall, and a cover which may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the side wall, a lock assembly for maintaining the cover in its closed position, said lock assembly comprising:
>     a bracket having first and second mutually spaced flanges
>         integrally joined by an intermediate web;

> a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges, said bracket being configured for removable mounting on said side wall, with said intermediate web interposed between said cover and the upper edge of said side wall, and with said first flange and said jaw respectively located adjacent exterior and interior surfaces of said side wall;
> force exerting means for urging said jaw towards said first flange to thereby clamp said side wall therebetween;
> a cap having a lip configured and dimensioned to overlap said cover; and
> interlocking means for securing said cap to said bracket.

U.S. Patent No. 6,763,691, col.4, lines 24 – 45 (**emphasis added**).

The only issue before the court, therefore, is whether the above emphasized language from claim 1 is present in each of the ProLock 1 and ProLock 2 products either literally or under the doctrine of equivalents.

In an order dated August 31, 2007, the Court construed the above emphasized language of claim 1 that is at issue as follows: (1) either of two mechanical parts that open and close to grip or crush something, as in a monkey wrench or vise, (2) mechanically interengaged with and carried by said bracket (3) for movement in or through the space that separates the first and second flanges.

## II. APPLICABLE LAW

Infringement of a patent claim may be found either literally or under the doctrine of equivalents by comparing the properly construed claim language to the accused device. *Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Infringement must be established by a preponderance of the evidence. *Braun, Inc. v. Dynamics Corp.*, 975 F.2d 815, 24 U.S.P.Q.2d 1121 (Fed. Cir. 1992).

The doctrine of equivalents is a judicially created doctrine that provides that although the requirements of literal infringement may not be met, infringement of a patent claim may still be found. *Graver Tank & Mfg. Co. v. Linde Aire Prods. Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed.2d 1097 (1950). Infringement under the doctrine of equivalents may be found when the differences between the claimed subject matter and the accused device are insubstantial. *Warner-Jenkinson, supra*. Infringement exists where the accused product performs substantially the same function in substantially the same way to achieve the same result. *Graver Tank & Mfg. Co., supra*.

Application of the doctrine of equivalents may be precluded where the arguments are made during prosecution of the patent application that issued as the patent in suit if the arguments clearly surrender subject matter that includes the accused device. *Cordis Corp. v. Medtronic Ave., Inc.*, 339 F.3d 1352, 67 U.S.P.Q.2d 1876 (Fed. Cir. 2003).

Application of the doctrine of equivalents may also be precluded where the application of the doctrine of equivalents would result in the disputed limitation being entirely vitiated from the claim because the literal language of the claim could not be *substantially* met by the accused device. *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 44 U.S.P.Q.2d 1103 (Fed. Cir. 1997).

### III. FINDINGS OF FACT

The analysis of whether a patent claim is infringed under 35 U.S.C. §271 is a two part inquiry. First, the meaning of the claim asserted to be infringed must be determined, and second, the properly construed claim language must be compared to the accused device both literally and under the doctrine of equivalents. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 U.S.P.Q.2d 1461 (1996), *affirming*, 52 F.3d 967, 34 U.S.P.Q.2d 1321 (Fed. Cir. 1995) (en banc).

A.   **Literal Infringement**

Defendant contends that its clamping member of each of the ProLock 1 and ProLock 2 products is not mounted for movement between the first and second flanges. As mentioned above, the Court has already construed this language as follows: (1) either of two mechanical parts that open and close to grip or crush something, as in a monkey wrench or vise, (2) mechanically interengaged with and carried by said bracket (3) for movement in or through the space that separates the first and second flanges.

First, the clamping member of each of the ProLock 1 and ProLock 2 products is a mechanical part that opens and closes with respect to the first flange to grip the wall of a meter box as in a wrench or vice. Defendant, in fact, admits that its clamping member engages the wall of meter boxes such that the meter box wall is held between the clamping member and the first flange in each of the ProLock 1 and ProLock 2 products.

Second, the clamping member of each of the ProLock 1 and ProLock 2 products is interengaged with and carried by the bracket because each is mounted on tabs that are part of the second flange of the bracket. This too is admitted by the defendant.

Third, the space that separates the first and second flanges of the bracket of each of the ProLock 1 and ProLock 2 products includes the three-dimensional space between these elements. Defendant also admits this. Defendant maintains, however, that the space that separates these elements should be viewed from a side direction, and that the tabs that protrude from the bracket at the second flange, are not part of the second flange. The person that designed the ProLock products, however, admits that these tabs are part of the second flange, contrary to defendant's assertion, and that the space that separates the first and second flanges is three-dimensional. It follows, therefore, that the space that separates the first and second flanges extends from the outermost portions of each flange

to the other flange, and that this includes the tabs on which the clamping member is mounted. It further must follow that each clamping member moves in at least a portion of this space as the clamping member is moved toward the first flange. This court finds, therefore, that the clamping member of each of the ProLock 1 and ProLock 2 products moves in or through the space that separates the first and second flanges.

### B.   The Doctrine of Equivalents

Even if each of the ProLock 1 and ProLock 2 products did not literally infringe claim 1 of the '691 patent, each of the ProLock 1 and ProLock 2 products infringes under the doctrine of equivalents because the clamping member of each of the ProLock 1 or ProLock 2 products moves *substantially* between the first and second flanges, and performs substantially the same function in substantially the same way to achieve the same result. *Graver Tank, supra.*

The evidence showed that the function of the jaw of the lock assembly of claim 1 of the '691 patent is to press against the side wall of the meter box generally opposing the force provided by the first flange. This function is consistent with the remaining limitations of the claim. The jaw of each of the ProLock 1 and ProLock 2 products presses against the side wall generally opposing the first flange. Defendant maintains that because the side panels of its clamping member (jaw) are nor directly opposed by the first flange, they are not generally opposing. The uncontroverted evidence confirmed, however, that the distance between the non-directly opposing forces is at most 30/1000 of an inch. This Court finds that the distance that defendant alleges its clamping member is outside of the "space that separates" is insubstantial. The jaw, therefore, of each of the ProLock 1 and ProLock 2 products performs the function of pressing against the meter box side wall generally opposing the force provided by the first flange.

The evidence further showed that the way (or structure) by which this function is achieved is by a rigid element that attaches to the bracket and is movable toward the side wall of the meter box. Again, this is consistent with the remaining language of the claims. Defendant calls this structure a clamping member in each of the ProLock 1 and ProLock 2 products, but this clamping member is a rigid element that attaches to the bracket and is movable toward the side wall of the meter box.

The evidence further showed that the result thereby achieved by the clamping member (i.e., jaw) of each of the ProLock 1 and ProLock 2 products is to secure the bracket to the meter box side wall using the force exerting means. This is also consistent with the force exerting means language of claim 1, which states "force exerting means for urging said jaw towards said first flange to thereby clamp said side wall therebetween. Both parties agree that the first flange, jaw and force exerting means of each of the ProLock 1 and ProLock 2 products cooperate to achieve the result of securing the bracket to the meter box side wall.

The jaw of each of the ProLock 1 and ProLock 2 products, therefore, achieves substantially the same function in substantially the same way to achieve the same result. Infringement of claim 1 by each of these products clearly exists under the doctrine of equivalents.

## IV. CONCLUSIONS OF LAW

Defendant asserts that arguments made by the plaintiff during prosecution of the patent application that issued as the patent in suit (the '691 patent) result in an estoppel in this case preventing plaintiff from relying on the doctrine of equivalents to establish patent infringement. Defendant also asserts that plaintiff is precluded from relying on the

doctrine of equivalents to establish patent infringement due to the doctrine of claim vitiation.

A. **Prosecution History Estoppel Does Not Apply**

The essence of prosecution history estoppel is that a party may not disavow certain subject matter during prosecution, and then seek to recapture the relinquished subject matter through the doctrine of equivalents. Such an estoppel typically arises where an amendment is made to overcome a prior art reference. The estoppel, however, may also apply where an applicant for a patent makes statements that clearly surrender certain subject matter in such statements. See *Cordis Corp., supra,* 339 F.3d at 1363 ("To invoke argument-based estoppel, the prosecution history must evince a clear and unmistakable surrender of subject matter"). The estoppel does not arise, as argued by defendant, any time that language of a claim is asserted to distinguish an invention from the prior art.

During prosecution of the patent application that issued as the '691 patent, the U.S. Patent and Trademark Office examiner stated that the locking assembly of a prior art patent (U.S. 4,080,811), which did not include a jaw, could have been modified to include a movable jaw as disclosed in another prior art patent (U.S. 4,414,829). In response, the applicant pointed out that the parts identified by the examiner in the prior art patents were non-moving parts, and that the claim required movement of the jaw with respect to the bracket. The scope of claim 1 was not narrowed in any way by this argument over the prior art. See *Cybor Corporation v. FAS Technologies, Inc.,* 138 F.3d 1448, 46 U.S.P.Q.2d 1169, 1460 (Fed. Cir. 1998) ("The inventor's statements to the PTO regarding the Storkebaum reference, given the marked differences between the reference and the patented and accused devices, do not show the deliberate, unequivocal surrender

of all external reservoirs"); and *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 824, 23 U.S.P.Q.2d 1426, 1433 (Fed. Cir. 1992) ("Every statement made by a patentee during prosecution to distinguish a prior art reference does not create a separate estoppel. Arguments must be viewed in context.").

Defendant argues that because the applicant used the language "movement between" to distinguish the cited prior art from the claims rather than simply arguing that the prior art components did not move, that this creates an estoppel that prevents plaintiff from arguing *any* range of equivalents for the term "between" in claim 1. In support of this, defendant cites *Southwall Technologies, Inc. v. Cardinal IG Company*, 54 F.3d 1570, 34 U.S.P.Q.2d 1673 (Fed. Cir. 1995). In *Southwall*, however, the patentee presented arguments that provided a *more narrow* definition of specific claim terms. This effected a *surrender* of certain subject matter, and the court held that "the surrender was quite deliberate and express [and] can hardly be termed inadequate or ambiguous" (*Id.*, 54 F.3d at 1580). In the present case, the applicant did not provide a definition of the word "between" and did not surrender any subject matter by simply referencing this claim language in the arguments.

Defendant also argues that the dictionary definition of the term "jaw" provided in response to an office action results a complete estoppel with regard to the term "jaw". By referencing the ordinary meaning of the term "jaw" however, the applicant did not *surrender* any subject matter. If, on the other hand, the applicant has presented a definition that was more narrow than the ordinary meaning of this term, then subject matter would have been surrendered, but that is not the case here.

In 2002, the Supreme Court of the United States rejected the concept that rigid complete estoppels should flow from any amendment to the claims. *Festo Corporation v.*

*Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). Instead, the Court confirmed that even with regard to language that is added to a claim, the estoppel exists only with regard to the subject matter actually surrendered. The Court, in fact, rejected the Federal Circuit's effort to create such a complete bar to all ranges of equivalents. Estoppels do not flow from every statement made during prosecution. *Read Corp., supra*, 970 F.2d at 824, 23 U.S.P.Q.2d at 1433 ("Every statement made by a patentee during prosecution to distinguish a prior art reference does not create a separate estoppel").

Defendant's ProLock 1 and ProLock 2 products each include a jaw that is carried by the bracket for movement with respect to both the bracket. There is no estoppel with regard to the language *between* or *jaw* in claim 1 of the '691 patent that would prevent claim 1 being applied under the doctrine of equivalents to cover movement of a jaw that is substantially between the first and second flanges.

The doctrine of prosecution history estoppel, therefore, does not bar the application of the doctrine of equivalents to defendant's ProLock 1 and ProLock 2 products.

### B. Claim Vitiation Does Not Apply

Plaintiff asserts that the disputed language of claim 1 should be applied under the doctrine of equivalents as follows:

> a jaw mechanically interengaged with and carried by said bracket for movement ***substantially*** between said first and second flanges.

Plaintiff asserts that such an application of claim 1 under the doctrine of equivalents does not remove any element from the claims. Plaintiff does not content that *any* movement of the jaw with respect to the first and second flanges would infringe, only

that movement *substantially between* the first and second flanges infringes. Such an application of the doctrine of equivalents to claim 1 is not inconsistent with any of the remaining language of claim 1, does not cause any language of the claims to become meaningless, and does not cause claim 1 to read on any prior art.

Defendant relies on *Freedman Seating Company v. American Seating Company*, 420 F.3d 1350, 76 U.S.P.Q.2d 1001 (Fed. Cir. 2005), in which the court held that a claim limitation to a stowable seat requiring a "movable end slidably mounted to said seatbase" was not met by a device that included a movable end that did not slide or otherwise move along the seatbase. *Id*, 420 F.3d at 1353, 1354. The court held that such a difference was substantial. The court in *Freedman* stated that:

> There is no set formula for determining whether a finding of equivalence would vitiate a claim limitation, and thereby violate the all elements rule. Rather courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an ***insubstantial change*** from the claimed subject matter without rendering the pertinent limitation meaningless.

*Id.*, 420 F.3d at 1359 (***emphasis added***).

Defendant also relies on *Sage Products, supra*. In *Sage Products*, the court held that a claim to a disposable container (for hazardous medical waste) that included the language "an elongated slot at the top of the container body" could not be met under the doctrine of equivalents by a device that included a space between elements (argued to be a slot) that was not "substantially 'at the top of the container body'" *Sage Products*, 126 F.2d at 1424. The court in Sage Products confirmed that the doctrine of equivalents is concerned with the ***substantiality*** of the differences.

In the present case, the Court finds that the difference between *movement between* as literally claimed in claim 1, and *movement substantially between* is **insubstantial**. This is supported by a review of further cases as follows.

In *Ethicon Endo-Surgery, Inc. v. United States Surgical Corporation*, 149 F.3d 1309, 47 U.S.P.Q.2d 1272 (Fed. Cir. 1998), the court held that an assertion of infringement of a claim relating to a staple cartridge requiring an element (a lockout) to be connected to a longitudinal slot could not be met by a device having a lockout at an opposite end of the device. The court, in fact, stated that the lockout in the accused device was "nowhere near the longitudinal slots which are located in the staple cartridge at the front end of the stapler" *Ethicon*, 149 F.3d at 1318. The court concluded that the accused lockout was "not even close to the longtudinal slots" *Ethicon*, 149 F.3d at 1319.

The *Ethicon* case also involved a second patent, and the court decided that the district court's determination of non-infringement under the doctrine of equivalents was improper with regard to the second patent. The second patent included a claim to a surgical stapler and required "a restraining structure for blocking said barrier assemblage ... *during staple firing*". *Id.*, 149 F.3d at 1312 (*emphasis added*). The court held that this language may be met under the doctrine of equivalents by a restraining structure that loses contact with the barrier just prior to staple firing. The court noted that the physical difference between the claimed and accused devices "translates into a 'very slight', 'very quick' temporal difference, a period that is perhaps as short as a few thousandths of a second." *Id.*, 149 F.3d at 1321.

The court in *Ethicon* made it clear that an infringement analysis depends on the *substantiality of the differences*, not whether the claim language literally reads on the accused device as this is the province of the literal infringement analysis. As plaintiff

points out, if this rule were applied in any instance where the accused device did not literally meet every limitation of the claim, then the claim vitiation doctrine would "swallow the doctrine of equivalents, reducing the application of the doctrine to nothing more than a repeated analysis of literal infringement". *Ethicon, supra*, 149 F.3d at 1317. Infringement actions such as this, however, where the accused device substantially meets the literal language of the claims, are entirely appropriate for application of the doctrine of equivalents, which the Supreme Court of the United States has repeatedly upheld as an important viable doctrine. *Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002), *Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997), and *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed.2d 1097 (1950).

The present case, in fact, is more analogous to *Wright Medical Technology, Inc. v. Osteonics Corporation*, 122 F.3d 1440, 43 U.S.P.Q.2d 1837 (Fed. Cir.1997). In *Wright Medical*, the court held that a claim to a distal femur surface shaping guide that required "an intramedullary rod portion adapted to closely fit in and extend through the narrowest portion of the human femur" could be met under the doctrine of equivalents by a device that included a rod portion that did not tightly fit into and extend all the way through the isthmus of the femur. The action was remanded for a determination of whether the accused rod portion was equivalent, i.e., substantially the same.

The present action is also more analogous to *Ericsson, Inc. v. Harris Corporation*, 352 F.3d 1369, 69 U.S.P.Q.2d 1109 (Fed. Cir. 2003) (reversing a finding that the all-elements rule bars the application of the doctrine of equivalents, and determining that the record supports a finding of infringement under the doctrine of equivalents). The claim

limitation at issue in *Ericsson* involved to a telephone power supply apparatus that required that speech signal amplifiers *only* supply power to the telephone set when the receiver is off its cradle. *Id*, 352 F.3d at 1374. The accused device supplied some power to the telephone set in the on-hook position under certain conditions that amounted to approximately 0.1% of the time. The court explained that while the doctrine of equivalents could not be stretched to cover a device that *always* supplied some power, it could be applied to cover the accused device.

Again, plaintiff is not asserting that claim 1 should be applied under the doctrine of equivalents to cover lock assemblies in which a jaw does not move with respect to the flanges, or in which a jaw moves nowhere near the flanges. Instead, plaintiff is asserting that the claim covers lock assemblies in which the jaw moves ***substantially between*** the flanges. The claim vitiation doctrine, therefore, also does not bar the application of the doctrine of equivalents to defendant's ProLock 1 and ProLock 2 products.

## V.    CONCLUSION

The court, therefore, concludes that neither the doctrine of prosecution history estoppel nor the doctrine of claim vitiation precludes the plaintiff from relying on the doctrine of equivalents in this case to establish infringement of plaintiff's '691patent by the ProLock 1 and ProLock 2 products, and further finds that each of the ProLock 1 and ProLock 2 products infringes claim 1 by including the disputed claim language both literally and under the doctrine of equivalents.

_____

Judge F.D. Saylor