# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INNER-TITE CORPORATION, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. <br> ) 04-40219-FDS |
| DEWALCH TECHNOLOGIES, INC., | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT AND TO STRIKE AFFIDAVITS**

SAYLOR, J.

This action involves a claim by plaintiff Inner-Tite Corporation that defendant DeWalch Technologies, Inc., infringed U.S. Patent No. 6,763,691 (the "'691 patent") in violation of 35 U.S.C. § 271. The patent involves a "meter box lock assembly" designed to provide a means of securing utility meter boxes from tampering. Both the patented and the accused devices clamp on to a metal meter box; the dispute centers around the means by which the devices clamp. The parties have narrowed the dispute in this case to a single issue: whether the accused products include "a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges" as claimed in claim 1 of the '691 patent, either literally or under the doctrine of equivalents.

Both parties have cross-moved for summary judgment and to strike affidavits (or portions thereof) submitted in support. For the reasons set forth below, the parties' cross-motions to strike will be granted in part and denied in part, and the cross-motions for summary judgment will be denied.

EXHIBIT
TX-85

## I. Factual Background

### A. The Parties

Plaintiff Inner-Tite Corporation is a Massachusetts corporation with a principal place of business in Holden, Massachusetts. Inner-Tite designs and manufactures meter security and locking devices for utility companies worldwide.

Defendant DeWalch Technologies, Inc., is a Texas corporation with a principal place of business in Houston, Texas. DeWalch is similarly engaged in the sale of lock systems for utility companies.

### B. Background of the Invention

Utility companies, such as distributors of electric power, rely on meters to monitor usage of their products by individual customers. Tampering with meters is a persistent problem that costs utility companies millions of dollars annually. As efforts to compromise the security of utility meter boxes have improved and become more sophisticated, utility companies have been required to obtain meter security and locking devices that are not only tamper-evident, but tamper-proof. The security of utility personnel is also a concern in some locations, and it is generally desirable that such personnel be able to install new meter locking devices as quickly as possible.

In the past, some conventional locks for securing meter box covers to meter boxes included a bolt that passed through the box wall. In order to retrofit these locks into existing meter boxes, utility personnel had to drill or punch holes in the boxes, which required additional time and additional tools. Other conventional meter locks applied a technique of capturing the box wall between a bracket outside the box and a fastening screw within. Although this approach

2

did not require a hole in the box wall, it was discovered that the fastening screw could become loosened over time, thereby compromising security.

Plaintiff contends that the Jiffy Lock product, which Inner-Tite introduced in March 2000, addresses the utility companies' need for a locking device that is both secure and easy to install. Specifically, plaintiff states that the invention provides a "lock assembly that is easily applied to a meter box without requiring a hole to be drilled or punched into the meter box, yet provides a secure closure of the box." (Pl.'s Mem. Supp. Summ. J. at 3-4). In simple terms, the lock assembly clamps onto the meter box; once in place, the bulk of the assembly is on the inside of the box, where it is essentially tamper-proof. The invention's lock assembly consists of a bracket, a jaw, a force exerting means, and a cap that together function to secure a meter box cover to a meter box, as well as interlocking means for securing the cap to the bracket.

### C. The '691 Patent

On July 20, 2004, Inner-Tite was awarded U.S. Patent No. 6,763,691 (the "'691 patent") for the invention relating to the Jiffy Lock product. Plaintiff contends that DeWalch's products—which are sold as ProLock 1 and ProLock 2—infringe claim 1 of the '691 patent. Claim 1 states:

> 1. For use in combination with a utility box having a bottom, a side wall, and a cover which may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the side wall, a lock assembly for maintaining the cover in its closed position, said lock assembly comprising:
>
> a bracket having first and second mutually spaced flanges integrally joined by an intermediate web;
>
> a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges, said bracket being configured for removable mounting on said side wall, with said intermediate web interposed between said cover and the upper edge of said side wall, and with said first flange

3

and said jaw respectively located adjacent exterior and interior surfaces of said side wall;

force exerting means for urging said jaw towards said first flange to thereby clamp said side wall therebetween;

a cap having a lip configured and dimensioned to overlap said cover; and

interlocking means for securing said cap to said bracket.

Claim 1 is the only claim at issue in the present suit.

### D.  The Accused Products

Each of the accused ProLock products consists of three components: (1) a bracket having first and second flanges;[1] (2) a lever that functions as a force exerting means; and (3) a clamping member.[2] It appears that the only difference between the ProLock 1 and ProLock 2 products is that a portion of the clamping member has been removed in the ProLock 2. According to defendant, this change was made to "provide material for secondary engagement tabs to better grip the utility box after installation for additional security." (Def.'s Mem. Supp. Summ. J. at 9).

The parties dispute how the accused products operate. Specifically, they disagree as to whether the clamping member of the ProLock devices moves "between" the first and second flanges of the bracket. Plaintiff contends that

> the jaw of each of the ProLock 1 and ProLock 2 products is carried by the bracket for movement that contacts the second flange at one extent . . . [and] also contacts the first flange at the other extent . . . . Thus, in each case, the jaw encroaches at least partially into the space that separates the first and second flanges, and is therefore carried by the bracket <u>for movement</u> between the flanges.

---

[1] Defendant also notes the existence of a third flange.

[2] Defendant uses the term "clamping member," rather than "jaw." Although defendant contends that its clamping member is not a "jaw" as defined in the '691 patent and its prosecution history, it concedes the point for purposes of its motion for summary judgment only.

4

(Pl.'s Opp. Summ. J. at 1-2) (emphasis in original).

DeWalch challenges Inner-Tite's description of the products, stating that

> [p]laintiff mistakenly argues that the free range of movement of the clamping member is limited at one extreme by contact with the first flange and at the other extreme by contact with the second flange. This analysis is wrong. In the ProLock products, the free range of movement of the clamping member is limited at one extreme by the lever (and not the second flange) and at the other extreme by the wall of the utility box, or if uninstalled, the web joining the first and third flanges of the mounting bracket.

(Def.'s Mem. Supp. Summ. J. at 8) (internal citations omitted). According to defendant, the panels of the clamping member rotate outside of and "never enter or cross into the wedge-shaped space between the two flanges." (Def.'s Opp. Summ. J. at 5).

## II.  Procedural History

Inner-Tite filed the present action in this Court on October 27, 2004. In the complaint, plaintiff asserts that defendant's products infringe the '691 patent.

On April 19, 2006, the parties filed a stipulation agreeing to narrow the issues in this case to a single question: whether the ProLock products infringe the following language, either literally or under the doctrine of equivalents:

> a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges.

Plaintiff and defendant have now separately moved for summary judgment. Additionally, the parties have filed cross-motions to strike affidavits (or portions thereof) submitted in support of the respective summary judgment motions. At the summary judgment hearing, the Court was presented with testimony in the form of a tutorial, but no additional evidence was admitted.

5

### III. Analysis

#### A. Cross-Motions to Strike

As a general matter, only evidence that would be admissible at trial may be considered by the court on summary judgment. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49-51 (1st Cir. 1990). Under Fed. R. Civ. P. 56(e), affidavits—although not themselves admissible at trial—may be offered in support of, or opposition to, summary judgment if they set forth facts that would be admissible under the Federal Rules of Evidence. *See id.* A motion to strike is the proper vehicle for challenging the admissibility of evidence offered at summary judgment. *See Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 682 (1st Cir. 1994). The moving party must specify the objectionable portions of the opposing party's summary judgment materials along with the grounds for objection. *Id.* The Court should disregard only those facts that are inadmissible and consider the rest of the parties' evidence. *Id.*

Here, plaintiff has moved to strike portions of the affidavits of Binz DeWalch, president and chairman of the board of DeWalch, submitted in support of defendant's motion for summary judgment and its opposition to plaintiff's motion. Plaintiff seeks to strike on the grounds that the affidavits contain opinion testimony and that DeWalch was not disclosed as an expert witness as required by Fed. R. Civ. P. 26(a)(2).

Defendant has moved to strike the affidavit of Robert E. Rafferty, the inventor of the '691 patent, and the accompanying drawings, on the grounds that Rafferty's testimony and the drawings do not accurately depict the operation of the ProLock products. This inaccuracy, defendant contends, renders Rafferty's statements "unreliable" expert testimony in violation of

Fed. R. Evid. 702.[3]

In response to the cross-motions to strike, both parties offer the same defense: that their respective witnesses are offered as fact witnesses, not experts, and that therefore Fed. R. Civ. P. 26(a)(2) and Fed. R. Evid. 702 do not apply.

Given that (1) the affidavits are virtually identical in substance—that is, each purports to portray the correct operation of the ProLock products—and (2) both parties contend that such testimony should be deemed factual in nature, the Court will treat DeWalch and Rafferty as fact witnesses and generally allow the affidavits to stand.[4] However, to the extent that the affidavits contain statements that express opinions, they will be struck as impermissible opinion testimony.

Accordingly, the cross-motions to strike will be granted to the extent they seek the exclusion of improper opinion testimony. In all other respects, however, the motions will be denied.

### B. Cross-Motions for Summary Judgment

#### 1. Standard for Summary Judgment

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816,

---

[3] Fed. R. Evid. 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has *applied the principles and methods reliably to the facts of the case.*

(emphasis added).

[4] To the extent defendant contends that Rafferty's testimony is not accurate, the issue must be resolved by the trier of fact and is not a proper basis for exclusion of evidence.

7

822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery, and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). Where the parties have cross-moved on a particular count, the court must assess each motion separately and determine, for each motion, whether there is no genuine issue as to any material fact and the movant is entitled to judgment. *Phillip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997).

In the present case, the parties initially requested that the Court resolve any existing issues of material fact. Specifically, plaintiff stated in its memorandum:

> In the event that the court determines that factual issues exist that might otherwise preclude summary judgment, the parties request that the court make such factual determinations in rendering its decision on the presently filed cross motions. It is the intention of the parties that resolution of the above single issue will result be [sic] fully dispositive of this case.

(Pl.'s Mem. Supp. Summ. J. at 2). In its opposition, however, defendant stated as follows:

> Based on the drawings and products submitted to the Court in Defendant's Motion for Summary Judgment and provided to Plaintiff, Defendant had assumed that there were no disputed genuine issues of material fact as to how the ProLock Products operate, and that the claim construction and application of prosecution history estoppel and claim vitiation doctrines would be outcome determinative of this case. The devices shown in drawings attached to the Rafferty Affidavit, however, do not reflect the true operation of the ProLock Products, and thus the parties are offering conflicting evidence that could preclude summary judgment under Rule 56.

(Def.'s Opp. Summ. J. at 1). Defendant then indicates that "if there is a genuine issue of material

8

fact, the Court will have to conduct a trial on the factual issue." (Def.'s Opp. Summ. J. at 2).

Under the circumstances, the Court cannot assume that the parties have agreed to submit any disputed issues of material fact to the Court rather than to a jury. It will, accordingly, resolve the motions according to the summary judgment standard set forth above.

### 2. Patent Infringement Claim

#### a. The Standard

The assessment of whether a patent claim is infringed under 35 U.S.C. § 271 is a two-step process. First, the court must construe the meaning and scope of the patent claim. Second, the court must "compare the properly construed claim to the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1247-48 (Fed. Cir. 1998). Claim construction is an issue of law, which "is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1013 (Fed. Cir. 2006).

#### b. Claim Construction

In *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), the Federal Circuit clarified the proper approach to claim construction and set forth principles for determining the hierarchy and weight of the definitional sources that give the patent its meaning. These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,

9

*Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). The words of a claim are to be given their "ordinary and customary meaning" as a person of ordinary skill in the art in question would understand them. *Phillips*, 415 F.3d at 1312-13 (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

Determining the meaning of the terms at issue here is a relatively straightforward task, as the parties do not dispute the appropriate definitions. First, the term "jaw" is expressly defined in the file history of the '691 patent. In an argument filed on July 22, 2002, the applicant stated that

> the most appropriate definition for this term is "either of two mechanical parts that open and close to grip or crush something, as in a monkey wrench or vise."

(Stecher Aff., Ex. E). Second, the parties agree that the term "between" should be given its ordinary meaning of "in or through the space that separates."

Thus, the language at issue in this case—"a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges"—is properly construed as follows: (1) "either of two mechanical parts that open and close to grip or crush something, as in a monkey wrench or vise, (2) mechanically interengaged with and carried by said bracket (3) for movement in or through the space that separates the first and second flanges."[5]

---

[5] It was plaintiff who initially proposed the "movement in or through the space that separates" construction in its motion for summary judgment. Nonetheless, in its opposition to defendant's motion for summary judgment, plaintiff contends that

> [the language at issue in this case] describes how the jaw is *mounted*, but not how it moves during a clamping operation. Movement during clamping is described later in the claim as being "towards said first flange to thereby clamp said side wall therebetween." In short, a distinction is drawn in claim 1 between how the jaw is mounted, and how it moves to effect clamping.

(Pl.'s Opp. Summ. J. at 1) (emphasis in original) (internal citation omitted). It thus appears that plaintiff is attempting to read the "movement between" limitation out of the disputed claim. This argument, however, is foreclosed by the claim language itself, which explicitly requires that the jaw be carried for "movement between" the flanges. Moreover, it is unclear how the jaw could be "mounted" for "movement between" the flanges unless it, in fact, so moved.

10

### c. **Literal Infringement**

To infringe a claim literally, each and every limitation must be present in the accused device exactly as claimed, and therefore "any deviation from the claim precludes a finding of literal infringement." *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1454 (Fed. Cir. 1998). Furthermore, "[a]ll limitations in a claim must be considered meaningful." *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 546 (Fed. Cir. 1994).

As previously noted, the parties here dispute how the accused devices operate. Plaintiff contends that the clamping member of the ProLock products enters the space that separates the first and second flanges, while defendant contends that the clamping member moves wholly outside of the space between the flanges. Each party has submitted affidavits and other materials in support of its position.

The Court has examined the affidavits, drawings, and other materials submitted by the parties. At first glance, it would appear to be a relatively simple matter to determine whether an object travels "between" two structures. In the present case, however, that determination is substantially complicated by the fact that the parties dispute, among other things, which portion of the ProLock clamping member—if any—qualifies as a "jaw" and which parts of the device constitute the "flanges."

Based on its review, the Court has concluded that a genuine issue of material fact exists as to whether the accused products possess a jaw that is mechanically interengaged with and carried by a bracket for movement between the flanges. Accordingly, plaintiff and defendant's respective motions for summary judgment must be denied on the issue of literal infringement.[6]

---

[6] Defendant devotes a considerable portion of its briefs to the argument that the clamping member of the ProLock products does not act in concert with the first flange to compress or crush the side wall of the utility box,

11

### d. Infringement by Equivalents

Plaintiff further contends that even if the ProLock products do not infringe the '691 patent literally, they nonetheless infringe by equivalence. Under the doctrine of equivalents, an accused device can be found to infringe a patent even though it does not meet every claim limitation, as long as the differences between the claimed subject matter and the accused device are "insubstantial." *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 24 (1997). Infringement exists where the accused product performs substantially the same function, in substantially the same way, to achieve the same result as the patented invention. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).

The doctrine of equivalents, however, is subject to a number of limitations. Among these limitations are (1) prosecution history estoppel, which precludes application of the doctrine when the claim language at issue was added during prosecution of the application for reasons relating to patentability; and (2) the "all elements" rule, which holds that the "determination of equivalence should be applied as an objective inquiry on an element-by-element basis." *Warner-Jenkinson*, 520 U.S. at 40.

Here, plaintiff contends that even if the clamping member of the ProLock products is not "between" the flanges, it is nevertheless "substantially between" them. Plaintiff further asserts that any difference between the accused products and the language of claim 1 is "insubstantial" and that it is thus entitled to summary judgment under a theory of equivalence. Defendant

---

but instead works with the first flange to place portions of the side wall in "sheer and bending."

Presumably, defendant is relying on this argument to contend that its clamping member is not a "jaw" or its equivalent as defined in claim 1 of the '691 patent. The Court does not reach the issue, however, as the triable issue of fact as to whether the clamping member moves "between" the flanges is sufficient to preclude summary judgment for plaintiff, and defendant has conceded that the clamping member is a "jaw" for purposes of its own motion.

12

responds that to apply the doctrine of equivalence to a clamping member which moves completely outside of the space separating the flanges would vitiate the term "between." It also contends that the prosecution history of the '691 patent bars such a finding.

In the Court's view, however, it is premature to decide the issue of equivalence given the current state of the evidentiary record. As with literal infringement, infringement by equivalence is an issue of fact. *See K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1366 (Fed. Cir. 1999). Indeed, the Federal Circuit has stated that "[i]nfringement under the doctrine of equivalents requires an intensely factual inquiry." *Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1381 (Fed. Cir. 2000).

As discussed above, there remain issues of fact concerning whether and to what extent the ProLock clamping member moves "between" the first and second flanges.[7] Given this factual uncertainty, the Court is unwilling to hold, as a matter of law, that any differences between the accused devices and the patented invention are "insubstantial." Further, to the extent defendant relies on the "all elements" rule and the defense of prosecution history estoppel, those arguments assume a clamping member that rotates and moves wholly outside of the space separating the first and second flanges. As stated, whether the clamping member so moves is an issue that has yet to be resolved.

The Court therefore concludes that genuine issues of material fact preclude the entry of summary judgment for either party on the issue of infringement by equivalence.

## IV. <u>Conclusion</u>

---

[7] The Court also notes that there are potential issues of fact as to the manner in which the ProLock devices clamp the side wall of the utility box and whether the clamping member is a "jaw" or its equivalent as defined in claim 1 of the '691 patent.

13

For the foregoing reasons, the cross motions to strike are GRANTED in part and DENIED in part, as set forth above. Plaintiff's motion for summary judgment and defendant's motion for summary judgment are DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: August 31, 2007