UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                              )
INNER-TITE CORP.                              )
                                              )
                    Plaintiff,                )
                                              )
v.                                            )        <u>Civil Action No.</u>
                                              )         04 40219 FDS
DEWALCH TECHNOLOGIES, INC.                    )
                                              )
                    Defendant.                )
_____)

**PLAINTIFF'S POST-TRIAL PROPOSED**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Following a bench trial on February 27 and 28, 2008, and having considered all of

the evidence submitted therein, the court finds and concludes as follows.  A proposed

Order is attached hereto as Exhibit A.

I.      **BACKGROUND**

        A.      **The Parties**

1.      Plaintiff Inner-Tite Corp. (hereafter Inner-Tite) of Holden, Massachusetts

manufactures utility meter security and locking devices for meter boxes, for example for

electric utility meter boxes (Trial Transcript, p.1-42, line 25 – p.1-43, line 14, and p.1-45,

line 7 - p.1-46, line16).  Meter security and locking devices generally provide locking

assemblies that prevent unauthorized access to utility meter boxes that measure the usage

of, for example electric power, at a particular location (Trial Transcript, p.1-45, line 16 –

p.1-46, line 16).

2.      Inner-Tite sells a meter box locking product called the Jiffy Lock product (Trial

Exhibit 8, Trial Transcript, p.1-45, lines 7 – 11).  With reference to Trial Exhibit 31

shown below, the Jiffy Lock product includes a clamping assembly that has a bracket

(28), a jaw (38, shown below in purple) and a force exerting means (52), and the bracket

(28) includes a first flange (30, shown below in green) and a second flange (32, shown

below in dark blue) that are separated by an intermediate web (24, shown below in

yellow), as well as a third flange (36, shown below in light blue) (Trial Transcript, p.1-

46, line 17 – p.1-47, line 16).



Trial Exhibit 31.

3.      When an attempt is made to pry the clamping member off of a meter box wall, the

jaw becomes lodged beneath the ledge on the meter box wall (Trial Transcript, p.1-47,

line 17 – p.1-48, line 9).  The ledges are standard on meter box walls (Trial Transcript, p.

1-48, lines 10 – 20).  If the screw of the force exerting means of the Jiffy Lock product is

over-tightened when applied to a meter box wall, the bracket bends at the intermediate

web, causing the angle of the bracket to open up (Trial Transcript, p.1-49, line 1 – 7).

4.      On July 20, 2004 Inner-Tite was awarded U.S. Patent No. 6,763,691 (the '691 patent) for the invention relating to the Jiffy Lock product (Trial Exhibit 1, Trial Transcript, p.1-49, lines 8 – 15).

5.      Prior to the invention of the Jiffy Lock product that is the subject of the '691 patent, conventional locks either required that a hole be drilled in the wall of a meter box, or employed a screw that engaged a meter box wall but then had to withstand shear forces on the screw (Trial Transcript, p.1-49, line 16 – p.1-52, line 14).

6.      The invention of the '691 patent solved these problems by using a clamping assembly that could be quickly and easily mounted onto a meter box without specialized tools, yet provided a very secure locking assembly (Trial Transcript, p.1-52, line 10 – p. 1-53, line 15).

7.      Defendant DeWalch Technologies, Inc. (hereafter DeWalch) of Houston, Texas also sells locking systems for utility companies, and has sold and/or currently sells a ProLock 1 product and a ProLock 2 product (Trial Exhibits 2, 3, 4, 83, 84, 97, and Trial Transcript, p.2-58, line 24 – p.2-59, line 5, and p.1-61, lines 9 – 12).  Inner-Tite became aware of the ProLock 1 product in 2004 (Trial Transcript, p.1-61, lines 10 – 12).  The ProLock 2 product is a modified version of the ProLock 1 product (Trial Transcript, p.2-63, lines 14 – 25), and was introduced in 2006 (Trial Transcript, p.1-61, lines 13 – 14).

     **B.      Procedural Background**

8.      This action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 100 et seq., and neither jurisdiction nor venue is contested (Docket Item 31 filed April 19, 2006).

9.      Inner-Tite is the assignee of all right, title and interest in and to the '691 patent (Trial Exhibit 50, pp. IT 00037 – IT 00038), which was duly and legally issued by the United States Patent and Trademark Office on July 20, 2004 (Trial Exhibit 50).  In the present action, Inner-Tite alleges that DeWalch's ProLock 1 and ProLock 2 products each infringe claim 1 of the '691 patent (Docket Item 31, filed April 19, 2006).

10.     On April 19, 2006 the parties filed a stipulation concerning an agreement to narrow the issues in this action (Docket Item 31, filed April 19, 2006).  The parties agreed to narrow the issues to the question of whether either or both of the ProLock 1 and ProLock 2 products include certain language from claim 1 of the '691 patent either literally or under the doctrine of equivalents (Docket Item 31, filed April 19, 2006).  The only contested language from claim 1 of the '691 patent is shown below in bold:

> 1.      For use in combination with a utility box having a bottom, a side wall, and a cover which may be opened to gain access to the interior of the box, and which when closed, overlaps an upper edge of the side wall, a lock assembly for maintaining the cover in its closed position, said lock assembly comprising:
> a bracket having first and second mutually spaced flanges integrally joined by an intermediate web;
> **a jaw mechanically interengaged with and carried by said bracket for movement between said first and second flanges**, said bracket being configured for removable mounting on said side wall, with said intermediate web interposed between said cover and the upper edge of said side wall, and with said first flange and said jaw respectively located adjacent exterior and interior surfaces of said side wall;
> force exerting means for urging said jaw towards said first flange to thereby clamp said side wall therebetween;
> a cap having a lip configured and dimensioned to overlap said cover; and
> interlocking means for securing said cap to said bracket.

U.S. Patent No. 6,763,691, col.4, lines 24 – 45 (**emphasis added**).

11.     The only issue before the court, therefore, is whether the above emphasized language from claim 1 is present in each of the ProLock 1 and ProLock 2 products either literally or under the doctrine of equivalents (Docket Item 31, filed April 19, 2006).

12.     In an order dated August 31, 2007, the Court construed the above emphasized language of claim 1 that is at issue as follows: (1) either of two mechanical parts that open and close to grip or crush something, as in a monkey wrench or vise, (2) mechanically interengaged with and carried by said bracket (3) for movement in or through the space that separates the first and second flanges (Trial Exhibit 85, p.10).

## II.    APPLICABLE LAW

13.     The analysis of whether a patent claim is infringed under 35 U.S.C. §271 is a two part inquiry.  First, the meaning of the claim asserted to be infringed must be determined, and second, the properly construed claim language must be compared to the accused device.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 U.S.P.Q.2d 1461 (1996), *affirming*, 52 F.3d 967, 34 U.S.P.Q.2d 1321 (Fed. Cir. 1995) (en banc).

14.     The properly construed claim language must be compared to the accused device both literally and under the doctrine of equivalents.  *Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Infringement must be established by a preponderance of the evidence.  *Braun, Inc. v. Dynamics Corp.*, 975 F.2d 815, 24 U.S.P.Q.2d 1121 (Fed. Cir. 1992).

15.     The doctrine of equivalents is a judicially created doctrine that provides that although the requirements of literal infringement may not be met, infringement of a patent claim may still be found.  *Graver Tank & Mfg. Co. v. Linde Aire Prods. Co*., 339

U.S. 605, 70 S.Ct. 854, 94 L.Ed.2d 1097 (1950).  Infringement under the doctrine of equivalents may be found when the differences between the claimed subject matter and the accused device are insubstantial.  *Warner-Jenkinson, supra*.  Infringement exists where the accused product performs substantially the same function in substantially the same way to achieve the same result.  *Graver Tank & Mfg. Co., supra*.

16.     Application of the doctrine of equivalents may be precluded where the arguments are made during prosecution of the patent application that issued as the patent in suit if the arguments clearly surrender subject matter that includes the accused device.  *Cordis Corp. v. Medtronic Ave., Inc.*, 339 F.3d 1352, 67 U.S.P.Q.2d 1876 (Fed. Cir. 2003).

17.     Application of the doctrine of equivalents may also be precluded where the application of the doctrine of equivalents would result in the disputed limitation being entirely vitiated from the claim because the literal language of the claim could not be *substantially* met by the accused device.  *Ethicon Endo-Surgery, Inc. v. United States Surgical Corporation*, 149 F.3d 1309, 47 U.S.P.Q.2d 1272 (Fed. Cir. 1998).

## III.     FINDINGS OF FACT

### A.     Literal Infringement

18.     Defendant's ProLock 1 and ProLock 2 products are shown below

 

Trial Exhibits 16 and 24.

19.    As shown below, each of the ProLock 1 and ProLock 2 products includes a bracket, a lever, and a clamping member (Trial Exhibits 33 and 34).



Trial Exhibits 33 and 34.

20.    Plaintiff contends that the clamping members of each of the ProLock 1 and ProLock 2 products is a jaw mechanically interengaged with and carried by the bracket for movement between first and second flanges as required in claim 1 of the '691 patent (Trial Transcript, p.1-6, lines 1 – 7, and 19 – 21), while defendant contends that this is not the case (Trial Transcript, p.1-12, lines 17 – 25).

21.    With regard to the Court's construction of the above language of claim 1 of the '691 patent, plaintiff asserts that the clamping member of each of the ProLock 1 and ProLock 2 products is (1) either of two mechanical parts that open and close to grip or crush something, as in a monkey wrench or vise, (2) mechanically interengaged with and carried by said bracket (3) for movement in or through the space that separates the first and second flanges (Trial Transcript, p.1-58, line 5 – p.1-59, line 5, p.1-61, line 15 – p.1-63, line 11 and p.1-64, line 4 – p.1-66, line 19).

22.    Defendant asserts that the clamping member of each of its ProLock 1 and ProLock 2 products is not (1) either of two mechanical parts that open and close to grip or crush something, as in a monkey wrench or vise, (2) mechanically interengaged with and carried by said bracket (3) for movement in or through the space that separates the

first and second flanges (Trial Transcript, p.1-16, line 22 – p.1-17, line 4).  Defendant

does not dispute plaintiff's evidence that the second requirement above (that the jaw be

mechanically interengaged with and carried by the bracket) is met by the ProLock 1 and

ProLock 2 products (Trial Transcript, p.1-16, lines 21 – 22 and p.1-64, lines 18 – 20).

> **Finding of Facts Regarding Whether The Clamping Members of the Accused Products Are Either of Two Mechanical Parts that Open and Close to Grip or Crush Something, as in a Monkey Wrench or Vise**

22.     Plaintiff presented evidence that the clamping member of each of the ProLock 1

and ProLock 2 products is one of two mechanical parts that open and close to grip or

crush something, as in a monkey wrench or a vise. (Trial Exhibits 2 and 3, and Trial

Transcript, p.1-58, lines 16 – 20, p.1-61, line 15 – p.1-63, line 11, and p.1-64, lines 14 –

17).

23.     In support of defendant's assertion that the clamping member of each of its

ProLock 1 and 2 products is not one of two mechanical parts that open and close to grip

or crush something as in a monkey wrench or vise, defendant presented testimony that its

clamping members engage a wall of a meter box with non-directly opposing forces, and

that such forces cause the wall to bend when the lever is actuated past the over-center

point of a cam on the bottom of the lever (Trial Transcript, p.2-80, lines 11 – 20).

24.     Plaintiff presented testimony that the language "one of two mechanical parts that

open and close to grip or crush something as in a monkey wrench or vise" is not limited

to jaws that provide directly opposing or non-directly opposing forces on a meter box

wall (Trial Transcript, p.1-82, line 25 – p.1-83, line 7, p.1-85, lines 11 – 16).

25.    Plaintiff also established that certain embodiments shown in the drawings in the '691 patent employed directly opposing forces (Trial Transcript, p.1-83, lines 8 – 15), while others employed non-directly opposing forces (Trial Transcript, p.1-83, line 16 – p.1-85, line 10).

26.    Plaintiff further established that any bending that occurs during clamping of the ProLock 1 and 2 products to accommodate the over-center movement of the cam is a bending of the intermediate web of the ProLock 1 and 2 products, not the meter box wall (Trial Transcript, p.1-91, line 20 – p.1-95, line 7).  This was demonstrated to the court at the trial during which bending movement of the intermediate web was visually observed (Trial Transcript, p.1-92, lines 13 – 16 and p.1-93, line 15 – p.1-95, line 7).

27.    Defendant did not contest that some such bending at the intermediate web occurs (Trial Transcript, p.2-82, lines 10 – 15), but asserted that the meter box wall bends to accommodate the action of the cam (Trial Transcript, p.2-89, lines 10 – 16).

28.    Defendant's assertion that the meter box wall bends was supported only by oral testimony of one person, Mr. Binz DeWalch, who testified that he tried to measure bending of the wall, but did not record any such measurements and did not bring any tools with him to trial to demonstrate such bending (Trial Transcript, p.2-89, lines 10 – 16 and p.2-93, lines 15 – 23).

29.    Mr. John Stachwiak, Jr., the person that designed the ProLock 1 product testified that he tried to measure bending but did not recall what he found (Trial Transcript, p.2-28, line 4 – p.2-29, lines 12).  He also testified that he was not aware of whether anyone else has ever tried to measure such bending (Trial Transcript, p.2-29, lines 13 – 16).

30.     Mr. DeWalch further testified that the corners of a meter box are drawn together slightly during clamping as a result of such bending like a "cardboard box" (Trial Transcript, p.2-94, lines 7 – 25), but again there was no corroborating evidence submitted to support this at trial.

31.     Mr. DeWalch admitted at trial that the clamping member, bracket and lever of each of the ProLock 1 and 2 products clamps onto meter box walls (Trial Transcript, p.2-66, lines 17 – 23).

32.     The court finds that no bending of a meter box wall was established to occur at trial during clamping of either ProLock product.

33.     The court also finds that the language "one of two mechanical parts that open and close to grip or crush something as in a monkey wrench or vise" is not limited to a jaw that engages a meter box wall with directly opposing forces.

34.     The court further finds that the clamping member of each of the ProLock 1 and 2 products is one of two mechanical parts (the other being the first flange) that open and close to grip or crush something as in a monkey wrench or vise.

**Finding of Facts Regarding Whether The Clamping Members of the Accused Products Move in or Through the Space That Separates The First and Second Flanges**

35.     Plaintiff presented evidence that the clamping member of each of the ProLock 1 and 2 products moves in or through the space that separates the first and second flanges (Trial Exhibits 2 and 3, and Trial Transcript, p.1-58, lines 5 – 15, p.1-59, lines 1 – 5, p.1-61, line 15 – p.1-63, line 11, and p.1-64, lines 21 – 24).

36.     Plaintiff asserts that the second flange of each of the ProLock 1 and 2 products includes the portion of the bracket on which the clamping member is mounted (Trial Transcript, p.1-64, line 25 – p.1-66, line 1).

37.     In support of this, plaintiff points to testimony of Mr. Robert Rafferty, the inventor of the '691 patent (Trial Exhibit 91, p3, and Trial Transcript, p.1-64, line 25 – p.1-66, line 1 and p.1-69, lines 9 – 12 and p.1-71, lines 1 - 7), as well as testimony of Mr. John Stachowiak, Jr., the person that designed the ProLock 1 product, (Trial Transcript, p.2-48, lines 5 - 18).

38.     The only evidence presented by defendant on the issue of whether such mounting portions are part of the second flange, is brief additional testimony of Mr. John Stachowiak, Jr. that such portions are "connected to the second flange" (Trial Transcript, p.2-48, line 20).  Mr. DeWalch did not address this issue at trial.

39.     Mr. Stachowiak, Jr., however, also further clearly testified that these mounting portions are part of the second flange (Trial Exhibits 90, p.8, ¶12 and 91, p.3, and Trial Transcript, p.2-38, line 14 – p.2-41, line 12).  In fact, during his video deposition that was entered at trial, Mr. John Stachowiak, Jr. was directed to the following statement by Mr. DeWalch in a declaration filed June 16, 2006 (Trial Exhibit 90, p.8, ¶12) that was read into the record as follows:

> Referring to Drawing No. 60151, which is part of Exhibit 8 [Trial Exhibit 91] and is a drawing for the bracket used in both ProLock Products, the wedge-shaped space can be seen by drawing a line from the bottom end of first flange of the mounting bracket, which can be identified by the 0.385 inches dimension, to the bottom end of the second flange, which can be identified by the 1.040 inches dimension.

Trial Exhibit 90, p.8, ¶12.

40.     Mr. Stachowiak, Jr. was then asked if he could identify these portions on a drawing of bracket for the ProLock products, and he did so in blue and green as follows (Trial Exhibit 91, Trial Transcript, p.2-39, line 25 – p.2-41, line 12):



Trial Exhibit 91, p.3.

41.     Mr. Stachowiak, Jr. therefore, testified that the colored portions were associated with the 1.040 and 0.385 dimensions (Trial Transcript, p.2-40, line 18 – p.41, line 12), and that he understood these portions associated with the 1.040 and 0.385 dimensions to designate the first and second flanges (Trial Transcript, p.2-38, line 14 – p.2-40, line 17).

42.     At trial, defendant's Mr. Binz DeWalch did not address the issue of whether the mounting portions of the bracket were part of the second flange.  In a declaration by Mr. Binz DeWalch that was entered as Trial Exhibit 90, Mr. DeWalch characterized mounting structure on a jaw of the Jiffy Lock product as being part of the jaw (Trial Exhibit 90, p.3), and characterized mounting notches on the bracket as being part of the second flange (Trial Exhibit 90, p.5).  During the video deposition testimony entered at trial, Mr. Stachowiak, Jr. agreed with these characterizations of the jaw and second flange of the Jiffy Lock product (Trial Exhibit, 90 and Trial Transcript, p.2-33 line 9 – p.2-38, line 7).

43.    The uncontroverted evidence, therefore, showed that with regard to the plaintiff's product, the mounting structure on the jaw is part of the jaw, and the mounting structure on the bracket is part of the second flange (Trial Exhibit, 90 and Trial Transcript, 1-59, lines 9 – 18, and p.2-33 line 9 – p.2-38, line 7).  Defendant presented no evidence why this should not also be the case with the ProLock 1 and 2 products.

44.    The court finds that the portions of the ProLock bracket on which the clamping member of each of the ProLock 1 and 2 products are mounted, are part of the second flange.

45.    There was no dispute at trial that the space that separates the first and second flanges on the ProLock products is a three dimensional space (Trial Transcript, p.1-60, lines 9 – 15, and p.2-32. line 5 – p.2-33, line 1).  There was also no dispute at trial that this space extends from all points on the first flange to all points on the second flange for each of the ProLock products (Trial Transcript, p.1-60, lines 9 – 15).

46.    During the trial, plaintiff presented testimony and visual demonstrations of DeWalch's ProLock 1 and 2 products that showed that the clamping member of each of the ProLock products moves within the three dimensional space that separates the first and second flanges (Trial Transcript, p.1-71, line 11 – p.1-73, line 20, p.1-74, line 16 – p.1-78, line 7, and p.1-79, line 14 – p.1-80, line 8).

47.    This evidence included testimony and demonstrations using colored highlighters on enlarged DeWalch engineering drawings of the ProLock 1 and 2 products that identified the portion (in orange highlighter marker) where the ProLock clamping member of each product moved within the space that separates the first and second

flanges (Trial Transcript, p.1-71, line 11 – p.1-73, line 20, p.1-74, line 16 – p.1-77, line 4).

48.    This evidence also included testimony and demonstrations using colored highlighters on enlarged photographs of the ProLock 1 and 2 products that identified the portion (again in orange highlighter marker) where the ProLock clamping member of each product moved within the space that separates the first and second flanges (Trial Transcript, p.1-77, line 5 – p.1-78, line 7).

49.    This evidence further included a demonstration using a ProLock bracket having orange tape on it defining a portion of the space that separates the first and second flanges, in which the demonstration showed that the clamping member of each ProLock product would enter into that space when mounted onto the ProLock bracket (Trial Transcript, p.1-79, line 14 – p.1-80, line 8).

50.    Defendant presented no evidence at trial that its ProLock clamping members do not move in the space that separates the first and second flanges when the mounting portions above are part of the second flanges.

51.    Plaintiff also presented evidence at trial that as the products are used, when mounted to a meter box on the side of a building, the clamping member hangs low enough that the side panel of the clamping member above the first flange actually falls into the space that separates the first and second flanges (Trial Transcript, p.1-86, line 19 – p.1-90, line 15).

52.    Defendant's Mr. DeWalch admitted that such overlap of the side panel of the clamping member and the bracket exists and that such overlap results in directly

opposing forces being applied to a meter box wall (Trial Transcript, p.2-98, lines12 – 16, and p.2-101, line 24 – page 2-102, line 8).

53.    This overlap that occurs when the product is mounted on a meter box wall was presented to be due to manufacturing techniques and manufacturing tolerances of the ProLock products, and varied somewhat from product to product (Trial Transcript, p.1-88, line 13 - p.1-90, line 9).  Visual inspection of such products at trial, however, confirmed that such overlap exists (Trial Transcript, p.2-101, line 24 – p.2-102, line 8).

54.    Mr. DeWalch testified that even a very loose product having such overlap (p.2-97, line 19 – p.2-98, line 16) would have clamped onto a meter box (Trial Transcript, p.2-99, lines 17 – 21, p. 2-100, lines 13 – 15) and therefore passed defendant's internal quality control which required that the products clamp onto a meter box wall (Trial Transcript, p.2-66, lines 17 – 23).

55.    The court finds that the clamping member of each of the ProLock 1 and 2 products moves in the space that separates the first and second flanges.  A product that meets the limitations of a claim during its intended use, infringes the patent claim.

*Canon Computer Systems, Inc., v. Nu-Kote Intern, Inc.*, 134 F.3d 1085, 45 U.S.P.Q.2d 1355 (Fed. Cir. 1998).  As the court stated in *Canon Computer Systems*:

> Even assuming that Nu-Kote's video establishes that its cartridge will not infringe under a particular set of controlled circumstances (specifically, while maintaining a constant flow rate comparable to that which occurs when printing graphics), this has little bearing on whether its cartridge will avoid infringement under other foreseeable operating conditions.

*Id*, 134 F.3d at 1089, 45 U.S.P.Q.2d at 1359 – 1360.

56.    The court finds, therefore, that the clamping member of each of the ProLock 1 and 2 products is (1) either of two mechanical parts that open and close to grip or crush something, as in a monkey wrench or vise, (2) mechanically interengaged with and carried by said bracket (3) for movement in or through the space that separates the first and second flanges.

57.    The court finds that the ProLock 1 product literally infringes at least claim 1 of the '691 patent.

58.    The court finds that the ProLock 2 product literally infringes at least claim 1 of the '691 patent.

B.    **The Doctrine of Equivalents**

59.    Plaintiff contends that even if each of the ProLock 1 and ProLock 2 products did not literally infringe claim 1 of the '691 patent, each of the ProLock 1 and ProLock 2 products infringes under the doctrine of equivalents because the clamping member of each of the ProLock 1 or ProLock 2 products moves *substantially* between the first and second flanges, and performs substantially the same function in substantially the same way to achieve the same result (Trial Transcript, p.1-7, line 16 – p.1-8, line 1).

60.    The uncontroverted evidence also showed that the jaw of the ProLock products was designed to swing outside of the first flange by a distance of 30/1000 of an inch on either side of the first flange if perfectly centered (Trial Exhibit 91 and Trial Transcript, p.1-85, line 17 – p.1-86, line 16, and p.2-44, line 11 – p.2-46, line 4).

61.    Defendant also provided no corroborating evidence that the space of 30/1000 of an inch was sufficient to cause any bending of a meter box wall, or any functionality other than clamping the meter box wall.

62.     The court finds that the distance of 30/000 of an inch in the context of the '691

patent and the accused ProLock products is insubstantial.

63.     The court further finds that the jaw of the ProLock 1 and 2 products does move

substantially within the space that separates the first and second flanges.  In fact, to find

that such a distance is substantial would effectively prohibit the application of the

doctrine of equivalents to the accused language of claim 1.

64.     The evidence also showed that the function of the jaw of the lock assembly of

claim 1 of the '691 patent is to press against the side wall of the meter box.  In particular,

the function of the jaw 38 of Figures 2 and 3 is to be a moveable member that is urged

toward the inside of the wall (Trial Transcript, p.1-54, lines 1 – 3).  The function of the

jaw 38a of Figure 4 is the same (Trial Transcript, p.1-54, lines 21 – 23).  The function of

the jaw 38b of Figures 5A and 5B is also the same (Trial Transcript, p.1-55, lines 5 – 7).

The function of the jaw 80 of Figures 6A and 6B is also the same (Trial Transcript, p.1-

55, lines 10 – 13).

65.     The evidence further showed that the way (or structure) by which this function is

achieved in the '691 patent is by a rigid element that attaches to the bracket and is

movable toward the side wall of the meter box.  In particular, the evidence showed that

this structure in the embodiment of Figures 2 and 3 is the jaw 38 (Trial Transcript, p.1-

53, lines 23 – 25).  The evidence also showed that the structure in the embodiment of

Figure 4 is the jaw 38a (Trial Transcript, p.1-54, lines 15 – 20).  The evidence also

showed that the structure in the embodiment of Figures 5A and 5B is the jaw 38b (Trial

Transcript, p.1-54, line 24 – p.1-55, line 4).  The evidence also showed that the structure

in the embodiment of Figures 6A and 6B is the jaw 80 (Trial Transcript, p.1-55, lines 8 – 13).

66.    The evidence further showed that the result achieved by the jaw in claim 1 of the '691 patent is to cooperate with the first flange to grip the wall there-between.  In particular, the evidence showed that the result achieved by the jaw 38 of the embodiment of Figures 2 and 3 is to grip the wall between the jaw and the first flange (Trial Transcript, p.1-54, lines 4 – 14).  The evidence showed that the result achieved by the jaw 38a of Figure 4, and the jaw 38b of Figures 5A and 5B, as well as the jaw 80 of Figures 6A and 6B was the same (Trial Transcript, p.1-54, lines 21 – 23, p.1-55, lines 4 – 7 and 9 – 13).

67.    Defendant refers to the jaw of its product as a clamping member in each of the ProLock 1 and ProLock 2 products, but this clamping member is a rigid element that attaches to the bracket and is movable toward the side wall of the meter box (Trial Exhibits 101 and TX 102, and Trial Transcript, p.2-63, lines 14 – 25, and p.2-69, lines 10 – 12)

68.    The evidence showed that the jaw of each of the ProLock 1 and ProLock 2 products presses against the side wall of a meter box (Trial Exhibits 2 and 3, and Trial Transcript, p.1-64, lines 4 – 13).  Again, the uncontroverted evidence confirmed that the shortest distance between the non-directly opposing forces is at most 30/1000 of an inch (Trial Exhibit 91 and Trial Transcript, p.1-85, line 17 – p.1-86, line 16, and p.2-44, line 11 – p.2-46, line 4).

69.    The evidence also showed that the result thereby achieved by the clamping member (i.e., jaw) of each of the ProLock 1 and ProLock 2 products is to secure the

bracket to the meter box side wall using the force exerting means (Trial Transcript, p.2-66, lines 17 - 23).  The defendant maintained that all ProLock products engage meter box walls above the ledge, but plaintiff presented evidence that the ProLock products are not consistent with regard to whether they engage a meter box wall above and/or below the ledge (Trial Exhibits 97 and 98, and Trial Transcript, p.1-80, line 13 – p.1-82, line 4).

70.     The court finds, therefore, that the jaw of each of the ProLock 1 and ProLock 2 products achieves substantially the same function in substantially the same way to achieve the same result as the jaw of claim 1 of the '691 patent.

71.     The court finds that each of the ProLock 1 and ProLock 2 products infringes claim 1 of the '691 patent under the doctrine equivalents.

**IV.     CONCLUSIONS OF LAW**

72.     During trial defendant sought to elicit testimony from Mr. Rafferty that an election requirement that occurred during prosecution of the patent application that issued as the '691 patent amounted to some sort of substantive surrender of certain embodiments of the invention (Trial Transcript, p.1-97, line 21 – p.1-101, line 21).  Claim 1 as issued in the '691 patent was admitted to be generic to all such species by the examiner in an office action dated (Trial Exhibit 50, p.IT 00066).  Section 1.146 of Tile 37 of the Code of Federal Regulations states that an invention will be restricted to an elected species "if ***no claim*** to the ***genus*** is found to be ***allowable***". 37 C.F.R. §1.146 (***emphasis added***).  In this case, the genus claim 1 was found to be allowable, so there is no restriction.  As the court in *Michaels of Oregon v. Clean Gun*, 2002 U.S. District LEXIS 20371 (D.Or. 2002) observed, this process is not a substantive claim interpretation doctrine.

73.    During closing, defendant mentioned a new case (without a citation) regarding an issue of claim construction (Trial Transcript, p.2-119, lines 13 – 24).  During trial however, defendant provided no challenge to the court's prior construction of the claim language (Trial Exhibit 85, p.10), nor any reason why the claim construction adopted by the court is incorrect or inconsistent with the record.

74.    Defendant also asserts that arguments made by the plaintiff during prosecution of the patent application that issued as the patent in suit (the '691 patent) result in an estoppel in this case preventing plaintiff from relying on the doctrine of equivalents to establish patent infringement (Trial Transcript, p.2-121, line 10 – p.2-122, line 19). Defendant further asserts that plaintiff is precluded from relying on the doctrine of equivalents to establish patent infringement due to the doctrine of claim vitiation (Trial Transcript, p.2-122, line 19 – p.2-125, line 1).

### A.    Prosecution History Estoppel Does Not Apply

75.    The essence of prosecution history estoppel is that a party may not disavow certain subject matter during prosecution, and then seek to recapture the relinquished subject matter through the doctrine of equivalents.  Such an estoppel typically arises where an amendment is made to overcome a prior art reference.  The estoppel, however, may also apply where an applicant for a patent makes statements that clearly surrender certain subject matter in such statements.  See *Cordis Corp., supra,* 339 F.3d at 1363 ("To invoke argument-based estoppel, the prosecution history must evince a clear and unmistakable surrender of subject matter").  The estoppel does not arise, as argued by defendant, any time that language of a claim is asserted to distinguish an invention from the prior art.

76.     During prosecution of the patent application that issued as the '691 patent, the

U.S. Patent and Trademark Office examiner stated that the locking assembly of a prior art

patent (U.S. 4,080,811), which did not include a jaw, could have been modified to

include a movable jaw as disclosed in another prior art patent (U.S. 4,414,829) (Trial

Exhibits 50, pp. IT 00045 – IT 00046, 51 and 52).  In response, the applicant pointed out

that the parts identified by the examiner in the prior art patents were non-moving parts,

and that the claim required movement of the jaw with respect to the bracket (Trial Exhibit

50, pp. IT 00057 – IT 00058).  The scope of claim 1 was not narrowed in any way by this

argument over the prior art.  See *Cybor Corporation v. FAS Technologies, Inc.*, 138 F.3d

1448, 46 U.S.P.Q.2d 1169, 1460 (Fed. Cir. 1998) ("The inventor's statements to the PTO

regarding the Storkebaum reference, given the marked differences between the reference

and the patented and accused devices, do not show the deliberate, unequivocal surrender

of all external reservoirs"); and *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 824, 23

U.S.P.Q.2d 1426, 1433 (Fed. Cir. 1992) ("Every statement made by a patentee during

prosecution to distinguish a prior art reference does not create a separate estoppel.

Arguments must be viewed in context.").

77.     Defendant argues that because the applicant used the language "movement

between" to distinguish the cited prior art from the claims rather than simply arguing that

the prior art components did not move, that this creates an estoppel that prevents plaintiff

from arguing ***any*** range of equivalents for the term "between" in claim 1.  In support of

this, defendant cites *Southwall Technologies, Inc. v. Cardinal IG Company*, 54 F.3d

1570, 34 U.S.P.Q.2d 1673 (Fed. Cir. 1995).  In *Southwall*, however, the patentee

presented arguments that clearly provided a ***more narrow*** definition of specific claim

terms.  This effected a clear **surrender** of certain subject matter, and the court held that "the surrender was quite deliberate and express [and] can hardly be termed inadequate or ambiguous" (*Id.*, 54 F.3d at 1580).  In the present case, the applicant did not provide a narrow definition of the word "between", and did not surrender any subject matter by simply referencing this claim language in the arguments.

78.    Defendant also argues that the dictionary definition of the term "jaw" provided in response to an office action results a complete estoppel with regard to the term "jaw".  By referencing the ordinary meaning of the term "jaw" however, the applicant did not **surrender** any subject matter.  If, on the other hand, the applicant had presented a definition that was more narrow than the ordinary meaning of this term, then subject matter would have been surrendered, but that is not the case here.

79.    In 2002, the Supreme Court of the United States rejected the concept that rigid complete estoppels should flow from any amendment to the claims.  *Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002).  Instead, the Court confirmed that even with regard to language that is added to a claim, the estoppel exists only with regard to the subject matter actually surrendered.  The Court, in fact, rejected the Federal Circuit's effort to create such a complete bar to all ranges of equivalents.  Estoppels do not flow from every statement made during prosecution.  *Read Corp., supra*, 970 F.2d at 824, 23 U.S.P.Q.2d at 1433 ("Every statement made by a patentee during prosecution to distinguish a prior art reference does not create a separate estoppel").

80.    Defendant's ProLock 1 and ProLock 2 products each include a jaw that is carried by the bracket for movement with respect to both the bracket.  There is no estoppel with

regard to the language *between* or *jaw* in claim 1 of the '691 patent that would prevent claim 1 being applied under the doctrine of equivalents to cover movement of a jaw that is substantially between the first and second flanges.

81.    The doctrine of prosecution history estoppel, therefore, does not bar the application of the doctrine of equivalents to defendant's ProLock 1 and ProLock 2 products.

### B.    Claim Vitiation Does Not Apply

82.    Plaintiff asserts that the disputed language of claim 1 should be applied under the doctrine of equivalents as follows:

> a jaw mechanically interengaged with and carried by said bracket for movement ***substantially*** between said first and second flanges.

83.    Plaintiff asserts that such an application of claim 1 under the doctrine of equivalents does not remove any element from the claims.  Plaintiff does not contend that *any* movement of the jaw with respect to the first and second flanges would infringe, only that movement *substantially between* the first and second flanges infringes.  Such an application of the doctrine of equivalents to claim 1 has not been shown to be inconsistent with any of the remaining language of claim 1, has not been shown to cause any language of the claims to become meaningless, and has not been shown to cause claim 1 to read on any prior art.

84.    Defendant relies on *Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.2d 1317 (Fed. Cir. 2002), in which the court affirmed a finding of no infringement under the doctrine of equivalents on summary judgment.  In this case, the products at issue were devices for oil wells placed under the sea.  The devices were heads that

protected the oil wells during repair and maintenance.  The claim element at issue was directed to a wellhead, and the claim language at issue was a "workover port extending laterally through the wall of the spool tree from between two plugs".

85.    In the accused product in *Cooper*, the workover port did not extend between the two plugs or substantially between the two plugs.  Rather, the workover port extended significantly above the two plugs.  The workover port in the accused device, in fact, was positioned well above the plugs, and it could not have been argued to be substantially between the two plugs.  In *Cooper*, the patentee argued that simply having a workover port is enough, even if it is located nowhere near the area between the two plugs.  In this case, Inner-Tite asserts that the jaw of the accused devices is mounted for movement *substantially* between the first and second flanges.  In fact, the evidence showed that the space that separates the jaw from this area from the jaw is at most 30/1000 of an inch (Trial Exhibit 91, and Trial Transcript, p.1-85, line 17 – p.1-86, line 16 and p.2-44, line 11 – p.2-46, line 4).

86.    Defendant also relies on *Freedman Seating Company v. American Seating Company*, 420 F.3d 1350, 76 U.S.P.Q.2d 1001 (Fed. Cir. 2005), in which the court held that a claim limitation to a stowable seat requiring a "movable end slidably mounted to said seatbase" was not met by a device that included a movable end that did not slide or otherwise move along the seatbase.  *Id*, 420 F.3d at 1353, 1354.  The court held that such a difference was substantial.  The court in *Freedman* stated that:

> There is no set formula for determining whether a finding of equivalence would vitiate a claim limitation, and thereby violate the all elements rule.  Rather courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an ***insubstantial change***

> from the claimed subject matter without rendering the pertinent
> limitation meaningless.

*Id.*, 420 F.3d at 1359 (***emphasis added***).

87.    Defendant further relies on *Sage Products, Inc. v. Devon Industries, Inc.*, 126

F.3d 1420, 44 U.S.P.Q.2d 1103 (Fed. Cir. 1997).  In *Sage Products*, the court held that a

claim to a disposable container (for hazardous medical waste) that included the language

"an elongated slot at the top of the container body" could not be met under the doctrine of

equivalents by a device that included a space between elements (argued to be a slot) that

was not "substantially 'at the top of the container body'" *Sage Products*, 126 F.2d at

1424.  The court in *Sage Products* confirmed that the doctrine of equivalents is concerned

with the ***substantiality*** of the differences.

88.    In the present case, the Court finds that the difference between *movement between*

as literally claimed in claim 1, and *movement substantially between* is ***insubstantial***.

This is supported by a review of further cases as follows.

89.    In *Ethicon Endo-Surgery, Inc. v. United States Surgical Corporation*, 149 F.3d

1309, 47 U.S.P.Q.2d 1272 (Fed. Cir. 1998), the court held that an assertion of

infringement of a claim relating to a staple cartridge requiring an element (a lockout) to

be connected to a longitudinal slot could not be met by a device having a lockout at an

opposite end of the device.  The court, in fact, stated that the lockout in the accused

device was "nowhere near the longitudinal slots which are located in the staple cartridge

at the front end of the stapler" *Ethicon*, 149 F.3d at 1318.  The court concluded that the

accused lockout was "not even close to the longitudinal slots" *Ethicon*, 149 F.3d at 1319.

90.     The *Ethicon* case also involved a second patent, and the court decided that the district court's determination of non-infringement under the doctrine of equivalents was improper with regard to the second patent.  The second patent included a claim to a surgical stapler and required "a restraining structure for blocking said barrier assemblage *... during staple firing*".  *Id*., 149 F.3d at 1312 (*emphasis added*).  The court held that this language may be met under the doctrine of equivalents by a restraining structure that loses contact with the barrier just prior to staple firing.  The court noted that the physical difference between the claimed and accused devices "translates into a 'very slight', 'very quick' temporal difference, a period that is perhaps as short as a few thousandths of a second." *Id*., 149 F.3d at 1321.

91.     The court in *Ethicon* made it clear that an infringement analysis depends on the *substantiality of the differences*, not whether the claim language literally reads on the accused device as this is the province of the literal infringement analysis.  If this rule were applied in any instance where the accused device did not literally meet every limitation of the claim, then the claim vitiation doctrine would "swallow the doctrine of equivalents, reducing the application of the doctrine to nothing more than a repeated analysis of literal infringement".  *Ethicon, supra*, 149 F.3d at 1317.

92.     Infringement actions such as this, however, where the accused device substantially meets the literal language of the claims, are entirely appropriate for application of the doctrine of equivalents, which the Supreme Court of the United States has repeatedly upheld as an important viable doctrine.  *Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002), *Warner-Jenkinson Company, Inc. v. Hilton Davis Chemical*, 520 U.S. 17, 117

S.Ct. 1040, 137 L.Ed.2d 146 (1997), and *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed.2d 1097 (1950).

93.     The present action is, in fact, more analogous to *Ericsson, Inc. v. Harris Corporation*, 352 F.3d 1369, 69 U.S.P.Q.2d 1109 (Fed. Cir. 2003) (reversing a finding that the all-elements rule bars the application of the doctrine of equivalents, and determining that the record supports a finding of infringement under the doctrine of equivalents).  The claim limitation at issue in *Ericsson* involved to a telephone power supply apparatus that required that speech signal amplifiers *only* supply power to the telephone set when the receiver is off its cradle.  *Id*, 352 F.3d at 1374.  The accused device supplied some power to the telephone set in the on-hook position under certain conditions that amounted to approximately 0.1% of the time.  The court explained that while the doctrine of equivalents could not be stretched to cover a device that *always* supplied some power, it could be applied to cover the accused device.

94.     The present case is also more analogous to *Wright Medical Technology, Inc. v. Osteonics Corporation*, 122 F.3d 1440, 43 U.S.P.Q.2d 1837 (Fed. Cir.1997).  In *Wright Medical*, the court held that a claim to a distal femur surface shaping guide that required "an intramedullary rod portion adapted to closely fit in and extend through the narrowest portion of the human femur" could be met under the doctrine of equivalents by a device that included a rod portion that did not tightly fit into and extend all the way through the isthmus of the femur.  The action was remanded for a determination of whether the accused rod portion was equivalent, i.e., substantially the same.

95.     Again, plaintiff is not asserting that claim 1 should be applied under the doctrine of equivalents to cover lock assemblies in which a jaw does not move with respect to the

flanges, or in which a jaw moves nowhere near the flanges. Instead, plaintiff is asserting that the claim covers lock assemblies in which the jaw moves **substantially between** the flanges. The claim vitiation doctrine, therefore, also does not bar the application of the doctrine of equivalents to defendant's ProLock 1 and ProLock 2 products.

## V.    CONCLUSION

96.    The court, therefore, finds that each of the ProLock 1 and ProLock 2 products literally infringes claim 1 of U.S. Patent No. 6,763,691 by satisfying the disputed claim language (as well as the remaining limitations of claim 1 of the '691 patent by stipulation).

97.    The court also finds that each of the ProLock 1 and ProLock 2 products infringes claim 1 of U.S. Patent No. 6,763,691 by satisfying the disputed claim language (as well as the remaining limitations of claim 1 of the '691 patent by stipulation) under the doctrine of equivalents.

98.    The court further concludes that the doctrine of prosecution history estoppel does not preclude the plaintiff from relying on the doctrine of equivalents in this case to establish infringement of plaintiff's '691 patent by the ProLock 1 and ProLock 2 products.

99.    The court further concludes that the doctrine of claim vitiation does not preclude the plaintiff from relying on the doctrine of equivalents in this case to establish infringement of plaintiff's '691 patent by the ProLock 1 and ProLock 2 products.

Date:    _____, 2008        _____

                                                The Honorable F. Dennis Saylor, IV

Respectfully submitted,

Inner-Tite Corp.

By Plaintiff's attorneys,


\_\_\_/s/ William E. Hilton_____

Dated: March 21, 2008

William E. Hilton, BBO# 559515
Maurice E. Gauthier, BBO# 187340
Gauthier & Connors LLP
225 Franklin Street, Suite 2300
Boston, Massachusetts  02110
(617) 426 - 9180   Ext. 111


CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper copies will be sent to persons indicated as non-registered participants on March 21, 2008 by First Class Mail.

_____/s/William E. Hilton_____
William E. Hilton